# EXHIBIT A

JUDGE McKENNA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**07 CIV 4640**

DANIEL JUNK

                Plaintiff,

- against -

AON CORP., AON SERVICE CORPORATION
and AON CONSULTING, INC.

                Defendants.

Case No.:

**COMPLAINT**

Jury Trial Requested

Plaintiff, by his attorneys, Decker Decker Dito & Internicola, LLP, for his Complaint, alleges as follows:

## NATURE OF THE ACTION

1. The complaint sets forth claims and causes of action for breach of contract, fraud and fraudulent inducement in connection with numerous misrepresentations and knowingly false statements made by the Defendants in connection with Plaintiff's offer of employment, employment and wrongful termination.

## THE PARTIES

2. At all times mentioned herein, Plaintiff was and remains a resident of the State of South Carolina.

3. Upon information and belief, at all times relevant herein, defendant AON Corp. is a Delaware Corporation with a principal place of business located in New York.

4. Upon information and belief, at all times relevant herein, defendant AON Service Corporation is a Illinois corporation with a principal place of business located in New York.

5. Upon information and belief, AON Service Corporation is a subsidiary of AON Corp.

6. Upon information and belief, defendant AON Consulting, Inc. is a New York corporation with a principal place of business located in New York.

7. Upon information and belief, AON Consulting, Inc. is a subsidiary of AON Corp.

## JURISDICTION AND VENUE

8. The matter in controversy in this action, exclusive of interest and costs, exceeds $75,000. The Court has jurisdiction of this action by virtue of 28 U.S.C. §1332.

9. Venue is predicated upon 28 U.S.C. §1391(a)(c).

## THE PLAINTIFF, AON AND THE ELECTRONIC DISCOVERY MARKET

10. Since 2001, subsequent to graduating from New York Law School, Plaintiff has been engaged in the marketing, sales and business development of "electronic discovery" services and software utilized by law firms and third parties to retrieve, preserve, document and produce electronic communications, records and files.

11. As a result of Plaintiff's extensive experience with electronic discovery ("e-discovery") and the e-discovery marketplace, the Plaintiff has been employed in and retained executive and managerial positions as Vice President of Sales, National and Regional Sales Director of Sales for e-discovery software and service providers.

12. Immediately prior to Plaintiff's employment with AON, Plaintiff was employed as Regional Sales Director for Renew Data Corp., an established e-discovery vendor and technology leader in the area of electronic data recovery and production. Primary to the services and

2

technology of Renew Data Corp. is back-up tape and "native file" data searching and data recovery.

13. Once relevant data is identified and recovered "viewing" software is required to permit third parties (such as attorneys) to view the data in a neutral non-altering format that preserves the integrity of the data. Within the e-discovery market place "File Control" and "iConect" were and remain common industry standard "viewers" utilized by most e-discovery practitioners.

14. Upon information and belief defendants AON Corp., AON Service Corporation and AON Consulting, Inc. (collectively referred to as the "Defendants" or "AON") have been engaged, primarily in the insurance, risk assessment and management consulting industries.

15. Upon information and belief, AON is not an established provider of litigation support and e-discovery software and services.

16. Upon information and belief, AON recently entered the litigation support and e-discovery market place after soliciting and securing the employment of key management (including Jerry Barbanel) and staff of Kroll, Inc, an experienced litigation support and e-discovery provider.

17. Upon information and belief Kroll, Inc. has commenced a lawsuit against Jerry Barbanel and AON respecting Mr. Barbanel's and AON's alleged misappropriation of Kroll, Inc's. litigation and e-discovery assets and business.

## AON'S FRAUDULENT STATEMENTS AND MISREPRESENTATIONS AND PLAINTIFF'S EMPLOYMENT AND WRONGFUL TERMINATION

18. In or about May, 2006 Plaintiff was contacted by a recruiter to inquire about Plaintiff's interest in employment with AON and AON's litigation and e-discovery division. When Plaintiff was advised (after Plaintiff's inquiry) that AON was still in the development phase with their e-discovery software and technology, Plaintiff advised AON's agent that he would not be

3

interested in a position until he could determine the seasoning and development of AON's technology.

19. In or about October, 2006 Plaintiff was again solicited by a recruiting agent of AON wherein Plaintiff was advised that AON had developed and was in the process of completing and rolling out an end-to-end e-discovery software suite and solution within the next three months.

20. Upon information and belief the product development information was provided to AON's recruiter by Jerry Barbanel, an executive vice president of AON and a former officer of Kroll, Inc.

21. In a May 22, 2006 public AON Press Release, Jerry Barbanel, among other things announced that "... *To broaden [AON's] capabilities, AON is in the process of developing proprietary E-Discovery solutions that will further enhance our value-added service offerings...*"

22. Based on AON's product and software development representations, Plaintiff agreed to meet with AON's management to discuss AON's technology and consider a business development position with AON.

23. In or about October, 2006 at AON's offices located at 55 East 52nd Street, New York, New York, Plaintiff met with Jerry Barbanel to discuss AON's technology and to consider accepting a business development management position respecting the licensing and sale of AON's e-discovery software, services and support.

24. At the October, 2006 meeting after inquiring about AON's proprietary e-discovery software and Plaintiff's concern as to software development delays, Jerry Barbanel made the following statements and representations to Plaintiff:

> "Right now we [AON] have the best developers working on and completing our complete end-to-end e-discovery solutions".
>
> "We [AON] are in the final stages of developing and completing a

4

> complete end-to-end proprietary e-discovery system ranging from data extraction to viewing to production."

> "The proprietary software technology that we are developing right now will turn the industry on its ear and offer a completely integrated proprietary solution. Within the next three months we will have the only true end-to-end solution in the industry"

After Plaintiff expressed concern as to a delay in developing the technology, Jerry Barbanel stated to Plaintiff:

> "No. no. no. I have guys working on it as we speak and it will be done in three weeks."

25. Upon information and belief, each and every one of the foregoing statements and representations (unknown to Plaintiff) were false and known by Jerry Barbanel to be false at the time they were made. Among other things, at the time of the meeting between Plaintiff and Jerry Barbanel (unknown to Plaintiff but known to AON and Jerry Barbanel), AON had not yet received authorization to commence the programming and/or development of AON's proprietary e-discovery software systems.

26. In accepting employment with AON and relinquishing Plaintiff's then current position, commission opportunities Plaintiff relied on the foregoing misrepresentations.

27. Since Plaintiff's compensation was set at an annual base salary of $200,000.00 (a sum significantly lower than Plaintiff's then current incentive based compensation) with the remaining portion based on sales commissions for a software system not yet rolled out, Jerry Barbanel promised Plaintiff that if "[Plaintiff] accept[ed] employment with AON, [Plaintiff] would have a guaranteed position at least until AON rolled out its end-to-end proprietary software solution

5

and obtained the dominant market leading position in e-discovery software solutions". This offer was made to Plaintiff during the October 2006 meeting and subsequent phone conversations. Jerry Barbanel further advised Plaintiff that in exchange for this guarantee, Plaintiff had to agree to sell his home in South Carolina and move to the New York within a year after starting with AON.

28.  Based on all of the foregoing representations, statements and promises, in or about October, 2006 Plaintiff advised Jerry Barbanel that he accepted his offer and agreed to work for AON. Within a few weeks of accepting employment with AON, Plaintiff engaged a licensed real estate broker to market and sell Plaintiff's home in South Carolina.

29.  Upon accepting employment with AON, Plaintiff relinquished his position with Renew Data Corp., advised his contacts and colleagues in the e-discovery marketplace that he was working with AON and would be selling and offing AON's proprietary e-discovery systems and relinquished his sales commission agreements and assigned regional sales territory. Plaintiff further relied on AON's fraudulent misrepresentations to his detriment since AON's failure to deliver the promised and represented proprietary software solutions would prevent Plaintiff from selling and impact the incentive sales based portion of Plaintiff's agreed upon compensation with AON.

30.  Upon information and belief, the foregoing representations and statements respecting AON's e-discovery proprietary software and solutions were false and were known by AON to be false at the time they were made in that, among other things:

    (a)    AON had not yet commenced the development and programming of the proprietary software systems represented by Jerry Barbanel;

    (b)    AON had not yet even approved the allocation of funds and resources for the development and completion of AON's own proprietary e-discovery software solutions;

    (c)    At conferences and roll-out parties, AON's executives misrepresented to current and prospective customers that AON developed proprietary e-discovery software when, in fact, the software being offered was rebranded software already commonly available and utilized within the industry;

    (d)    In many instances Jerry Barbanel instructed Plaintiff and other AON employees to lie to customers about the proprietary nature of AON's software and never to admit that AON's software was simply rebranded third-party applications.

31.    A portion of AON's e-discovery software was branded under the "AON E Docs" trade name. In or about December, 2006, Plaintiff and his sales counterparts were instructed to attend the "kick off" dinner announcing AON's proprietary "AON E Docs" software. At the dinner (presented to prospective customers at the California Club in Los Angeles) Jerry Barbanel and AON senior management presented "AON E Docs" as a revolutionary proprietary e-discovery viewing tool when in fact it was simply a rebadged version of the common and industry standard review tool known as "File Control".

32.    When Plaintiff expressed concern to Jerry Barbanel about lying to customers within the industry (an industry in which Plaintiff has a long established and favorable reputation) Plaintiff and his sales counterparts at AON were ordered by Jerry Barbanel to never disclose that AON's E-Docs was simply File Control.

33.    Upon information and belief, at the time of offering AON E Docs (a rebranded copy of File Control) Jerry Barbanel and AON had yet to secure the required license to even utilize File Control.

34. Upon information and belief, without the promised proprietary end-to-end software solutions, sales were almost non-existent and AON's management failed to establish any sales criteria or quotas for Plaintiff and other sales executives.

35. After Plaintiff, again, expressed concern about lying to customers and the "non-existent" but promised software solutions, in or about January, 2007 Jerry Barbanel emailed Plaintiff and advised him to "stick with [him]" and that AON was working on and would have the greatest technology in the industry.

36. In or about March, 2007, during a meeting with Lee Curtis, an AON executive committee member, Plaintiff again expressed concern about AON's non-existent e-discovery software and complained about the actions and misstatements of Jerry Barbanel. In particular Plaintiff complained that at the direction of Jerry Barbanel, Plaintiff and other AON employees were being instructed to lie to customers, prospective customers, the public and shareholders about technology that AON did not possess. Plaintiff advised Mr. Barbanel that he was not comfortable with this situation and that the issue must be addressed by AON's management.

37. Upon information and belief, immediately after Plaintiff's meeting with Lee Curtis, Mr. Curtis reported Plaintiff's statements to Jerry Barbanel.

38. On or about April 5, 2007, during a meeting with Michael Gulotta, AON Consulting, Inc.'s Chairman of U.S. Operations, Plaintiff again expressed concern about AON's non-existent e-discovery software and complained about the actions and misstatements of Jerry Barbanel. In particular Plaintiff complained that at the direction of Jerry Barbanel, Plaintiff and other AON employees were being instructed to lie to customers, prospective customers, the public and shareholders about technology that AON did not possess.

39. On or about April 17, 2007, Plaintiff was copied on and received an email from

8

Anne Kemp (an AON employee and a west-coast business development counterpart to Plaintiff) to AON's top executive management and human resources titled "Client Misrepresentation" about "AON's Non-Existent Technology Solutions" wherein Ms. Kemp informs human resources and top executive management about the fraudulent activities and misrepresentations of Jerry Barbanel and his management staff.

40. Upon information and belief, although contrary to AON's stated policy, Ms. Kemp's email and the fact that she copied Plaintiff on the email was delivered to Jerry Barbanel.

41. On or about April 18, 2007, Plaintiff is contacted by Steve Britton (a Senior Vice president of Business Development) who inquires about the Anne Kemp email and asks Plaintiff to forward him a copy. After Plaintiff refuses to forward a copy of the email Mr. Britton advises Plaintiff that Jerry Barbanel already knows about it and that there would be no investigation.

42. On or about April 19, 2007 Plaintiff receives notice of termination.

43. Upon information and belief, Plaintiff was terminated, in breach of his contract and stated AON company policy, in retaliation for reporting the fraudulent, illegal and wrongful activities of Jerry Barbanel and for refusing to lie to customers about AON's E-Docs software.

## COUNT I
(Breach of Contract – Employment Agreement)

44. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 43 above, as if more particularly set forth at length herein.

45. As a result of the foregoing, Defendants have wrongfully breached Plaintiff's employment agreement in that said employment was terminated prior to the development and rollout of AON's proprietary end-to-end e-discovery software solutions.

46. As a result of the foregoing, Defendants have wrongfully breached Plaintiff's

employment agreement in that said employment was terminated prior to AON achieving the dominant market position in e-discovery software.

47. Plaintiff relied on the foregoing representations and employment agreement.

48. Plaintiff has suffered damages as a result of said defendants' actions, in an amount to be determined at trial but believed to be in excess of Three Million ($3,000,000.00) Dollars.

### COUNT II
(Breach of Contract – Stated Employment Agreement)

49. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 43 above, as if more particularly set forth at length herein.

50. In reporting the wrongful and fraudulent actions of Jerry Barbanel and executive management, Plaintiff relied on AON's stated policies and procedures about reporting wrongful activities and procedures.

51. Prior to accepting employment with AON, Plaintiff relied upon AON's stated policies and procedures.

52. Said policies and procedures constitute a contract between Defendants and Plaintiff.

53. As a result of Defendants' termination of Plaintiff, Defendants' breached their agreement with Plaintiff in that Plaintiff was discharged for reporting wrongful activities and refusing to participate in same.

54. Plaintiff has suffered damages as a result of said defendants' actions, in an amount to be determined at trial but believed to be in excess of Three Million ($3,000,000.00) Dollars.

## COUNT III
(Fraudulent Inducement)

55. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 43 above, as if more particularly set forth at length herein.

56. As a result of the foregoing, Defendants have wrongfully, knowingly and intentionally made fraudulent statements and misrepresentations of present facts to induce Plaintiff to relinquish Plaintiff's established position and Commission Structure at Renew Data Corp, to accept employment with Defendant's and utilize Plaintiff's long-established nationally renowned reputation and connections within the e-discovery marketplace.

57. As a result of the foregoing, Plaintiff detrimentally relied on Defendants' fraudulent statements and misrepresentations and has lost commissions associated with Renew Data Corp and Plaintiff's nationally renowned reputation and standing within the e-discovery market place has been damaged and impaired as a result of Plaintiff's association with Defendant's fraudulent, non-existent and failed delivery of AON proprietary e-discovery software.

58. Plaintiff has suffered damages as a result of said defendants' actions, in an amount to be determined at trial but believed to be in excess of Three Million ($3,000,000.00) Dollars.

## COUNT IV
(Promissory Fraud)

59. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 43 above, as if more particularly set forth at length herein.

60. As a result of the foregoing, Defendants have wrongfully, knowingly and intentionally made fraudulent statements and misrepresentations of present facts to induce

Plaintiff to relinquish Plaintiff's established position and Commission Structure at Renew Data Corp, to accept employment with Defendant's and utilize Plaintiff's long-established nationally renowned reputation and connections within the e-discovery marketplace.

61.  As a result of Defendants' fraudulent statements and promises, Plaintiff accepted employment with AON and attempted to sell e-discovery software and services that were undeliverable, non-existent and/or misrepresented.

62.  As a result of the foregoing, Plaintiff detrimentally relied on Defendants' fraudulent statements and misrepresentations and has lost commissions associated with Renew Data Corp and Plaintiff's nationally renowned reputation and standing within the e-discovery market place has been damaged and impaired as a result of Plaintiff's association with Defendant's fraudulent, non-existent and failed delivery of AON proprietary e-discovery software.

63.  Plaintiff has suffered damages as a result of said defendants' actions, in an amount to be determined at trial but believed to be in excess of Three Million ($3,000,000.00) Dollars.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, individually and jointly, as follows:

A.  on Counts I through IV, awarding plaintiff damages in an amount to be determined at trial but believed to be in excess of Three Million ($3,000,000.00) Dollars together with interest as provided by law, attorneys' fees and costs;

B.  On Counts I through IV, awarding plaintiff punitive damages.

C.  Awarding plaintiff such other and further relief as the Court may deem equitable

and proper.

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38(b), plaintiff demands a trial by jury.

DECKER DECKER DITO & INTERNICOLA, LLP

By: _____
Charles N. Internicola (CNI4059)
Attorneys for Plaintiff
1610 Richmond Road
Staten Island, NY 10304
T. 718. 979. 4300