UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DANIEL JUNK,

      Plaintiff,

   - against -

AON CORP., AON SERVICE CORPORATION
and AON CONSULTING, INC.,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Electronically Filed

No. 07-CIV-4640 (LMM) (GWG)


# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS


WINSTON & STRAWN LLP
200 PARK AVENUE
NEW YORK, NEW YORK  10166


*Attorneys for Defendants*
*Aon Corp., Aon Service Corporation*
*and Aon Consulting, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................ 3

    A.    The Parties ........................................................................ 3

    B.    Plaintiff Accepts A Position With Aon ................................. 3

    C.    Plaintiff's Complaints ........................................................ 5

    D.    Plaintiff's Claims In This Action ......................................... 7

ARGUMENT ........................................................................................... 7

    I.    Plaintiff's Breach Of Contract Claim Is Barred By The Plain And Unambiguous Terms Of His Offer Letter ......................................................... 7

        A.    Plaintiff Was An Employee At-Will Who Could Be Terminated At Any Time For Any Reason .................................................. 7

        B.    Plaintiff's Breach Of Contract Claim Is Barred By The Merger Clause In His Offer Letter .......................................... 9

    II.    Plaintiff Has Failed To And Cannot Allege A Viable Breach Of Contract Claim Based Upon Aon's Corporate Policies And Procedures .......................................... 10

        A.    Plaintiff Has Failed To Allege Any Facts To Support This Breach Of Contract Claim ........................................ 10

        B.    Plaintiff Has No Contract Rights Based Upon The Terms Of Aon's Employee Handbook ............................................ 11

    III.    Plaintiff Has Failed To Allege A Valid Claim For Fraudulent Inducement ............. 13

        A.    Plaintiff's Claim For Fraudulent Inducement Should Be Dismissed Because It Is Merely Duplicative Of Plaintiff's Breach Of Contract Claim ............... 14

        B.    Plaintiff's Claim For Fraudulent Inducement Is Barred By The Merger Clause In His Offer Letter .......................................... 15

        C.    Plaintiff Has Failed To And Cannot Plead The Essential Elements Of A Claim For Fraudulent Inducement ........................................ 15

## TABLE OF CONTENTS
### (continued)

Page

1.      The Alleged Misrepresentations Are Statements Of Future Intent That Cannot Form The Basis Of A Fraudulent Inducement Claim ... 17

2.      The Alleged Representations Amount To Nothing More Than Non-Actionable Opinions And Puffery ............................................ 19

3.      Plaintiff Fails To Allege Sufficient Facts To Show That The Statements Were Made With Fraudulent Intent ............................... 20

4.      Plaintiff Cannot Establish That He Reasonably Relied Upon Any Of The Alleged Misrepresentations ........................................... 21

5.      Plaintiff Cannot Allege Injury As A Result Of His Alleged Reliance ........................................................................................ 22

IV.      Plaintiff Has Failed To Allege A Claim For Promissory Fraud ............................. 22

CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ............................................... 20

*Alter v. Bogoricin*, No. 97 Civ. 0662, 1997 WL 691332 (S.D.N.Y. Nov. 6, 1997) ......... 14

*Apsan v. Gemini Consulting, Inc.*, No. 98 Civ. 1256, 1999 WL 58679 (S.D.N.Y.
      Feb. 4, 1999) ................................................................................................................ 9

*Arias v. Women in Need, Inc.*, 274 A.D.2d 353, 712 N.Y.S.2d 103 (1st Dep't 2000)…...21

*ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*, Nos. 05 Civ. 5132, 05 Civ. 2593, 2007
      WL 1989336 (2d Cir. July 11, 2007)……………………………………………...24

*Baron v. Port Authority of N.Y. & N.J.*, 271 F.3d 81 (2d Cir. 2001).......................... 8, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955 (2007) ............. 7, 11, 16, 24

*Berger v. Roosevelt Investment Group, Inc.*, 28 A.D.3d 345, 813 N.Y.S.2d 419
      (1st Dep't 2006)........................................................................................................15, 21

*Bridgestone/Firestone Inc. v. Recovery Credit Sevcs. Inc.*, 98 F.2d 13 (2d Cir.
      1996).............................................................................................................................. 14

*Chill v. General Electric Co.*, 101 F.3d 263 (2d Cir. 1996)............................................ 20

*Chimarev v. TD Waterhouse Investor Servcs., Inc.*, 280 F. Supp. 2d 208
      (S.D.N.Y. 2003), *aff'd*, 99 Fed. Appx. 259 (2d Cir. 2004)......................................... 8

*Cunnison v. Richardson Greenshields Sec., Inc.*, 107 A.D.2d 50, 485 N.Y.S.2d
      272 (1st Dep't 1985) ................................................................................................... 10

*Gambello v. Time Warner Commc'ns. Inc.*, 186 F.Supp.2d 209 (E.D.N.Y. 2002) .......... 10

*Granite Ptrs., L.P. v. Bear, Stearns & Co., Inc.*, 58 F.Supp.2d 228 (S.D.N.Y.
      1999), *quoting Ryder Energy District Corp. v. Merrill Lynch Commodities,
      Inc.*, 748 F.2d 774 (2d Cir. 1984) ...........................................................3, 16, 19, 21

*Hawkins-El v. AIG Savings Bank*, No. 05 Civ. 3222, 2006 WL 2008573
      (E.D.N.Y. July 13, 2006), *aff'd*, No. 06 Civ. 3534, 2007 WL 642952 (2d Cir.
      Feb. 27, 2007) ......................................................................................... 16, 20-21

*Highlands Insurance Co. v. PRG Brokerage Inc.*, No. 01 Civ. 2272, 2004 WL
      35439 (S.D.N.Y. Jan. 6, 2004)................................................................................. 11

*International Audiotext Network, Inc. v. American Telegraph and Telegraph Co.*,
62 F.3d 69 (2d Cir. 1995) .................................................................................. 3

*Iqbal v. Hasty*, No. 05-5768-cv, 2007 WL 1717803 (2d Cir. June 14, 2007).................. 7

*Kempf v. Mitsui Plastics, Inc.*, No. 96 Civ. 1106, 1996 WL 673812 (S.D.N.Y.
Nov. 20, 1996) ............................................................................................. 9

*LaBozzo v. Brooks Brothers, Inc.*, No. 120538/01, 2002 WL 1275155 (Sup. Ct.
N.Y.Co. Apr. 25, 2002) ................................................................................ 21

*Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76
(1996) ...................................................................................................16, 22

*Lanzi v. Brooks*, 54 A.D.2d 1057, 388 N.Y.S.2d 946 (3d Dep't 1976)................17, 18, 19

*Lobosco v. NYNEX*, 96 N.Y.2d 312, 727 N.Y.S.2d 383 (2001)................................12, 13

*Mendali v. Pay-Per-View Network, Inc.*, No. 97 Civ. 6451, 1998 WL 230994
(S.D.N.Y. May 5, 1998), *aff'd*, 182 F.3d 900 (2d Cir. 1999) ................................... 21

*Meyercord v. Curry*, 38 A.D.3d 315, 832 N.Y.S.2d 29 (1st Dep't 2007) ...................... 22

*Minton v. Lenox Hill Hospital*, 160 F. Supp. 2d 687 (S.D.N.Y. 2001) ........................... 8

*Montchal v. Northeast Savings Bank*, 243 A.D.2d 452, 663 N.Y.S.2d 64 (2d Dep't
1997)........................................................................................................15, 21

*Murphy v. America Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232
(1983) ...................................................................................................... 8, 11

*Murray v. Xerox Corp.*, 811 F.2d 118 (2d Cir. 1987).........................................17, 20, 23

*Odunmbaku v. New York Blood Center*, No. 95 Civ. 6747, 1996 WL 514867
(S.D.N.Y. Sept. 10, 1996) ............................................................................... 13

*Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154 (S.D.N.Y. 1996) ................14, 23

*Press v. Marvalan Industrial, Inc.*, 468 F. Supp. 1072 (S.D.N.Y. 1979) ...................... 23

*Primex International Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 657
N.Y.S.2d 385 (1997) ..................................................................................... 9

*Quasha v. American Natural Bev. Corp.*, 171 A.D.2d 537, 567 N.Y.S.2d 257 (1st
Dep't 1991) ................................................................................................ 19

*Radin v. Albert Einstein College of Medical*, No. 04 Civ. 704, 2005 WL 1214281
(S.D.N.Y. May 20, 2005) ........................................................................... 13

*Rocanova v. Equitable Life Assurance Society of U.S.*, 82 N.Y.2d 603, 612
N.Y.S.2d 339 (1994) ............................................................................... 14

*Roney v. Janis*, 77 A.D.2d 555, 430 N.Y.S.2d 333 (1st Dep't 1980), *aff'd,* 53
N.Y.2d 1025, 442 N.Y.S.2d 484 (1981)..........................................................23, 24

*Ryder Energy Dist. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779
(2d Cir. 1984)…………………………………………………………..............3

*Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 514 N.Y.S.2d 209 (1987)...................... 8

*Saleemi v. Pencom Systems Inc.*, No. 99 Civ. 667, 2000 WL 640647 (S.D.N.Y.
May 17, 2000), *aff'd,* 242 F.3d 367 (2d Cir. Dec. 7, 2000)...................................... 19

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris
Cos., Inc.*, 75 F.3d 801 (2d Cir. 1996).......................................................... 20

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994)……………………......20-21

*Silver v. N.L. Industries, Inc.*, No. 82 Civ. 6875, 1985 WL 241 (S.D.N.Y. Jan. 28,
1985)...................................................................................................17, 18, 19

*Stillman v. Townsend*, No. 05 Civ. 6612, 2006 WL 2067035 (S.D.N.Y. July 26,
2006)...................................................................................................10, 14

*Stuart Lipsky, P.C. v. Price*, 215 A.D.2d 102, 625 N.Y.S.2d 563 (1st Dep't 1995)......... 24

*Sud v. Sud*, 211 A.D.2d 423, 621 N.Y.S.2d 37 (1st Dep't 1995).................................... 11

*Tannehill v. Paul Stuart, Inc.*, 226 A.D.2d 117, 640 N.Y.S.2d 505 (1st Dep't
1996).................................................................................................. 21

*Wegman v. Dairylea Co-op., Inc.*, 50 A.D.2d 108, 376 N.Y.S.2d 728 (4th Dep't
1975).................................................................................................. 18

*Wurtsbaugh v. Banc of America Securities LLC*, No. 05 Civ. 6220, 2006 WL
1683416 (S.D.N.Y. June 20, 2006)...............................................................15, 21

## FEDERAL STATUTES

Fed. R. Civ. P. 9(b) ........................................................................................1, 2, 16, 25

Fed. R. Civ. P. 12(b)(6) ...................................................................................1, 7, 11, 25

## STATE STATUTES

N.Y. Gen. Oblig. Law § 5-701(a)(1) (McKinney 2001) ................................................. 10

Defendants Aon Corp., Aon Service Corporation, and Aon Consulting, Inc. (collectively "Aon") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b), to dismiss the complaint filed by plaintiff Daniel Junk ("Plaintiff").[1]

## PRELIMINARY STATEMENT

Plaintiff, a former at-will employee of Aon Consulting, Inc., was terminated less than six months after he was hired for blatantly violating company policy by committing acts of employee dishonesty. In short, Plaintiff's wife accompanied him on an Aon business trip to Barbados. In direct violation of written Aon policy, Plaintiff submitted his *wife's expenses* for reimbursement without disclosing such fact to the company. Plaintiff was terminated once Aon obtained copies of the hotel receipts, several of which had been signed by Plaintiff's wife, and confirmed this deception and policy violation. Plaintiff, as an attorney and officer of the court, has made no mention of these facts in his complaint.

Instead, apparently seeking a measure of vengeance or an opportunity to "save face," Plaintiff claims that he was wrongfully terminated and seeks damages based on theories of fraud and breach of contract. As set forth below, even giving Plaintiff's allegations the benefit of every favorable inference, his claims are deficient on their face and should be dismissed.

Plaintiff's first claim based on breach of his alleged employment agreement is barred by the plain and unambiguous terms of his offer letter. That letter, in writing and countersigned by Plaintiff, makes it unmistakably clear that Plaintiff was an employee at-will who could be terminated at any time and for any reason.[2] Consistent with his penchant for

---

[1] A true and correct copy of Plaintiff's complaint, dated June 1, 2007 (cited herein as "Compl."), is attached to the Affirmation of Lori J. Van Auken, dated August 6, 2007, as Exhibit A.

[2] A true and correct copy of Aon's offer letter dated November 7, 2006, countersigned by Plaintiff on November 9, 2006, is attached to the Affidavit of Leonora Galletti, dated August 3, 2007 ("Galletti Aff.") as Exhibit A.

deception, Plaintiff has neither attached his offer letter to his complaint, nor mentioned its "at-will" terms. The notion that Plaintiff was orally guaranteed employment for an unspecified and indefinite period of time is belied by the merger clause in his offer letter, barred by the Statute of Frauds, and far too vague and uncertain to be remotely enforceable.

Plaintiff's second claim, for breach of Aon's employment policies and procedures, fares no better. Nothing in such policies creates a binding contract between the parties or alters Plaintiff's at-will employee status. New York law is clear that employment policies such as those set forth in Aon's Employee Handbook cannot serve as a basis for a breach of contract claim.

Plaintiff's third claim—for fraudulent inducement—is deficient on several grounds. First, New York courts have long held that in order to be actionable, a claim for fraudulent inducement must state fraud independent of a contract. Plaintiff's fraud claim simply does not meet this test. Second, the merger clause in Plaintiff's offer letter forecloses any claim based upon prior oral representations such as those alleged by Plaintiff here. Third, even if that were not sufficient, Plaintiff has failed to allege the essential elements of a fraudulent inducement claim, or done so with the particularity required by the heightened pleading requirements of Fed. R. Civ. P. 9(b).

For nearly identical reasons, Plaintiff's promissory fraud claim should be dismissed. It is based entirely upon principles of contract, duplicative of Plaintiff's breach of contract claim and barred by the merger clause in his offer letter. In addition, Plaintiff has failed to allege the essential elements of the claim or satisfy the heightened pleading requirements for fraud claims under Rule 9(b).

## STATEMENT OF FACTS

The following allegations contained in the complaint, except those rebutted by documentary evidence, are accepted as true solely for purposes of this motion to dismiss.[3]

### A.    The Parties

Plaintiff Daniel Junk is a resident of South Carolina.  Compl. ¶ 2.  Defendant Aon Corp. (incorrectly named as "AON Corp."), is a Delaware corporation with a principal place of business in New York.  Compl. ¶ 3.  Defendant Aon Service Corporation (incorrectly named as "AON Service Corporation"), a subsidiary of Aon Corp., is an Illinois corporation with a principal place of business in New York.  Compl. ¶¶ 4, 5.  Defendant Aon Consulting, Inc. (incorrectly named as "AON Consulting, Inc."), also a subsidiary of Aon Corp., is a New York corporation with a principal place of business in New York.  Compl. ¶¶ 6, 7.

### B.    Plaintiff Accepts A Position With Aon

Plaintiff is a graduate of New York Law School.  Compl. ¶ 10.  Since 2001, he has been engaged in the "marketing, sales, and business development of 'electronic discovery' services" and has held "executive and managerial positions" with various e-discovery and software service providers.  Compl. ¶¶ 10, 11.  As such, Plaintiff is familiar with various "common industry standard" software programs used for viewing electronic data.  Compl. ¶ 13.

In May 2006, Plaintiff was contacted by a recruiter who inquired about Plaintiff's interest in joining Aon's litigation and e-discovery division.  Compl. ¶ 10.  At or about the same time, on May 22, 2006, Aon issued a press release concerning the launch of its e-discovery

---

[3]    *See Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995).  Aon in no way concedes the accuracy or admits the truth of the allegations set forth in Plaintiff's complaint.  In deciding a motion to dismiss, the court's consideration is limited "to the factual allegations in the complaint, 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff had knowledge and relied on in bringing suit.'" *Granite Ptrs., L.P. v. Bear, Stearns & Co., Inc.,* 58 F. Supp. 2d 228, 236 (S.D.N.Y. 1999), *quoting Ryder Energy Dist. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir. 1984) (citations omitted).

practice in which Aon announced that it "is in the process of developing proprietary e-discovery solutions that will further enhance our value-added service offerings."  Compl. ¶ 21.  Plaintiff alleges he advised the recruiter that "he would not be interested in a position until he could determine the seasoning and development of AON's technology."  Compl. ¶ 18.

In or about October, 2006, Plaintiff alleges that he met with Jerry Barbanel, executive vice president and co-head of Aon's financial accounting and litigation consulting services group, to discuss a potential business development position involving the sale of Aon's "e-discovery software, services and support."  Compl. ¶¶ 20, 22, 23.  During that meeting, Plaintiff alleges that he inquired "about AON's proprietary e-discovery software" and "Plaintiff's concern as to software development delays."  Compl. ¶ 24.  In response, Plaintiff alleges that Mr. Barbanel made the following "statements and representations:"

- "Right now we [AON] have the best developers working on and completing our complete end-to-end solutions."

- "We [AON] are in the final stages of developing and completing a complete end-to-end proprietary e-discovery system ranging from data extraction to viewing to production."

- "The proprietary software technology that we are developing right now will turn the industry on its ear and offer a completely integrated proprietary solution. Within the next three months we will have the only true end-to-end solution in the industry."

Compl. ¶ 24.  In addition, Plaintiff alleges, after he expressed "concern as to a delay in developing the technology," Mr. Barbanel told him, "No. no. no.  I have guys working on it as we speak and it will be done in three weeks."  *Id.*

Plaintiff alleges that in reliance upon these representations, he relinquished his then current position at Renew Data Corp. and accepted employment with Aon.  Compl. ¶ 26. Plaintiff alleges that he accepted this position and the commission-based salary offered to him based upon Mr. Barbanel's promise that if he "accept[ed] employment with AON, [he] would

have a guaranteed position at least until AON rolled out its end-to-end proprietary software solution and obtained the dominant market leading position in e-discovery software solutions." Compl. ¶ 27. In exchange for this guarantee, Plaintiff alleges that he "had to agree to sell his home in South Carolina and move to New York within a year after starting with AON." *Id.*

Plaintiff alleges "upon information and belief" that the foregoing "representations concerning AON's e-discovery proprietary software and solutions were false" and "known by AON to be false at the time they were made." Compl. ¶¶ 25, 30. Among other things, Plaintiff alleges that at the time of Mr. Barbanel's representations, Aon had not yet commenced the development and programming of proprietary software systems or even approved the allocation of funds and resources for the development of such solutions. Compl. ¶ 30. In addition, Plaintiff alleges, Aon's "executives misrepresented to current and prospective customers that Aon had developed proprietary e-discovery software when, in fact, the software being offered was rebranded software commonly available and utilized within the industry," known as File Control. Compl. ¶¶ 30, 31. Moreover, "[i]n many instances," Plaintiff alleges, "Mr. Barbanel instructed Plaintiff and other AON employees to lie to customers about the proprietary nature of AON's software and never admit" that it was "rebranded third-party applications." Compl. ¶ 30. Plaintiff further alleges "[u]pon information and belief," that at the time it was offering Aon E-Docs, Aon had yet to secure the required license to utilize File Control. Compl. ¶ 33.

C.    **Plaintiff's Complaints**

Plaintiff alleges that during December 2006, he attended a "'kick-off' dinner" for prospective customers of the e-discovery practice group at the California Club in Los Angeles. Compl. ¶ 31. There, Plaintiff alleges, Mr. Barbanel and other senior management presented Aon E-Docs "as a revolutionary proprietary e-discovery viewing tool when in fact it was simply a

rebadged version of the common and industry standard review tool" "'File Control.'"  *Id.*
Plaintiff alleges that when he expressed concerns "about lying to customers" and "the 'non-
existent' but promised software solutions," Mr. Barbanel told him to "'stick with [him]' and that
AON was working on and would have the greatest technology in the industry."  Compl. ¶ 35.

Plaintiff alleges that in or about March 2007, he had a meeting with an Aon
executive committee member, Lee Curtis.  Compl. ¶ 36.  During that meeting, Plaintiff alleges,
he "again expressed concern" about Aon's "non-existent e-discovery software and complained
about the actions and misstatements" of Mr. Barbanel.  *Id.*  In particular, Plaintiff alleges, he
complained to Mr. Curtis that "he and other AON employees were being instructed to lie to
customers, prospective customers, the public and shareholders about technology that AON did
not possess."  *Id.*  Plaintiff alleges, upon information and belief, that Mr. Curtis reported these
statements to Mr. Barbanel.  Compl. ¶ 37.  Plaintiff alleges that he expressed similar concerns
during a meeting on or about April 5, 2007, with Michael Gulotta, Aon Consulting's Chairman
of U.S. Operations.  Compl. ¶ 38.

On or about April 17, 2007, Plaintiff alleges that he was copied on an email sent
by another Aon employee, Anne Kemp, to Aon's senior management.  Compl. ¶ 39.  In that
email, Plaintiff alleges that Ms. Kemp advised them of the "fraudulent activities and
misrepresentations of Jerry Barbanel and his management staff."  Upon information and belief,
"contrary to AON's stated policy," Plaintiff alleges that "Ms. Kemp's email and the fact that she
copied Plaintiff" was delivered to Mr. Barbanel.  Compl. ¶ 40.  On or about April 18, 2007,
Plaintiff alleges that he was contacted by another Aon employee, Steve Britton, who told him
that Mr. Barbanel was aware of the email.  Compl. ¶ 41.  The following day, on or about
April 19, 2007, Plaintiff alleges that he received notice of his termination.  Compl. ¶ 42.

D.     **Plaintiff's Claims In This Action**

On or about June 1, 2007, Plaintiff filed his complaint in this action.  In his complaint, Plaintiff asserts two claims against Aon based on breach of contract and two claims based on fraud.  For the reasons set forth below, Plaintiff's complaint fails to state a claim upon which relief may be granted and, therefore, should be dismissed.[4]

## ARGUMENT

I.     **Plaintiff's Breach Of Contract Claim Is Barred By The Plain And Unambiguous Terms Of His Offer Letter.**

In Count I, Plaintiff contends that Aon breached his alleged employment agreement when it terminated him in April 2007, "prior to the development and roll-out of AON's proprietary end-to-end e-discovery software solutions" and "prior to AON achieving the dominant market position in e-discovery software." Compl. ¶¶ 27, 44-48.  Plaintiff's breach of contract claim should be dismissed.

A.     **Plaintiff Was An Employee At-Will Who Could Be Terminated At Any Time For Any Reason.**

Plaintiff's claim for breach of contract is barred by the very terms of his offer letter itself.  Plaintiff's offer letter, duly executed by him on November 9, 2006, clearly and unambiguously provides that Plaintiff was an employee "at-will" who could be terminated at any time for any reason.  The letter reads:

> Nothing in this letter is intended or should be construed as a contract or guarantee of indefinite employment.  *Employment with Aon Consulting is for no specified period and constitutes at-will employment.*  As a result, you are free to resign at any time, for any reason or for no reason.  Similarly, [Aon] is free to conclude its

---

[4]  As the U.S. Supreme Court recently explained, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S.Ct. 1955, 1960 (2007).  This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 165.  Rather, the plausibility standard "obligates a pleader to amplify a claim with some factual allegation in those contexts where such amplification is needed to render the claim plausible." *See Iqbal v. Hasty, 05 Civ. 5768* 2007 WL 1717803 (2d Cir. June 14, 2007).

employment relationship with you at any time, with or without cause.

Galletti Aff., Ex. A at 3.  (Emphasis added.)[5]

New York courts have long held that where an employee signs an offer letter or employment agreement expressly providing for at-will employment, no breach of contract action challenging termination can be maintained.  *Chimarev v. TD Waterhouse Investor Servcs., Inc.*, 280 F. Supp. 2d 208, 216 (S.D.N.Y. 2003), *aff'd,* 99 Fed. Appx. 259 (2d Cir. 2004) (where employment agreement specified "at-will" employment, breach of contract action must be dismissed); *Minton v. Lenox Hill Hosp.*, 160 F. Supp. 2d 687, 699 (S.D.N.Y. 2001) (at-will employee cannot maintain a breach of contract action); *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 332, 514 N.Y.S.2d 209, 210-11 (1987) (same).[6]

Here, nothing in Plaintiff's offer letter limits Aon's right to terminate Plaintiff. Indeed, it says just the opposite—that Aon had the right to terminate Plaintiff "at any time" "with or without cause."   Nothing in Plaintiff's offer letter provides that Plaintiff "would have a guaranteed position" "until AON rolled out its end-to-end proprietary software solution" or until Aon "obtained the dominant market leading position in e-discovery software solutions."  Compl.

---

[5]  At or about the same time, Plaintiff also executed a Non-Solicitation Agreement which confirms Plaintiff's status as an employee terminable at-will.  Galletti Aff., Ex. B at 1, 4.  The Employment Application Plaintiff submitted to Aon also makes this abundantly clear.  It provides:

> In consideration of my employment, I agree to conform to the rules and regulations of the Aon subsidiary for which I am hired and agree that my employment may be terminated, with or without cause, and with or without notice, at any time at either the company's or my option.  I also understand that I am not being hired for any specified period of time.  In addition, I understand and agree that the terms and conditions of my employment may be changed by the company at any time with or without notice.  I also understand that any company manuals or handbooks which may be provided to me during the course of my employment shall not be construed as a contract of employment for any specified period of time.

Galletti Aff., Ex. C at 12.

[6]  *See also Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 85 (2d Cir. 2001); *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304-305, 461 N.Y.S.2d 232, 237 (1983).

¶¶ 27, 45-46.   Accordingly, Plaintiff has failed to state a claim for breach of employment agreement and Count I should be dismissed.

      **B.**    **Plaintiff's Breach Of Contract Claim Is Barred By The Merger Clause In His Offer Letter.**

      The merger clause in Plaintiff's offer letter also compels dismissal of this claim.

That clause provides:

> This letter supersedes any prior representation or agreements between you and Aon Consulting, whether written or oral.  This employment letter may not be modified or amended except by a written agreement, signed by the President of the Company for which you work, or his or her designee.

Galletti Aff., Ex. A at 3.

      Plaintiff alleges that he was promised a "guaranteed position" with Aon by company executive, Mr. Barbanel, "during [an] October 2006 meeting and subsequent phone conversations."  Compl. ¶ 27.  Plaintiff executed his offer letter weeks later, on November 9, 2006.  *Id.*  Nowhere does Plaintiff allege that this "promise" was ever reduced to writing.

      New York courts have long recognized that the parole evidence rule operates to exclude "evidence of a contemporaneous oral agreement that modifies or contradicts the terms of an integrated written agreement."  *Kempf v. Mitsui Plastics, Inc.*, No. 96 Civ. 1106, 1996 WL 673812, at *7 (S.D.N.Y. Nov. 20, 1996); s*ee Apsan v. Gemini Consulting, Inc.,* No. 98 Civ 1256, 1999 WL 58679 (S.D.N.Y. Feb. 4, 1999); *Primex Int'l Corp. v. Wal-Mart Stores, Inc.,* 89 N.Y.2d 594, 599-600, 657 N.Y.S.2d 385, 388 (1997).  Here, Plaintiff's reliance upon an alleged oral representation made to him prior to his acceptance of employment is completely at odds with the

plain and unambiguous terms of his fully-integrated, written offer letter. Count I of his Complaint should be dismissed.[7]

## II. Plaintiff Has Failed To And Cannot Allege A Viable Breach Of Contract Claim Based Upon Aon's Corporate Policies And Procedures.

In Count II of his Complaint, Plaintiff asserts another claim for breach of contract, this time based upon Aon's corporate policies and procedures. Specifically, Plaintiff alleges, his termination violated Aon's corporate policies and procedures because he was discharged for reporting the allegedly "wrongful and fraudulent actions" of Mr. Barbanel and executive management. Compl. ¶¶ 49-54. Plaintiff's allegations are wholly inadequate on their face.

### A. Plaintiff Has Failed To Allege Any Facts To Support This Breach Of Contract Claim.

Plaintiff does not attach a copy of the "policies and procedures" upon which his claim is based, nor does he identify any policy language that supports his claim. In contrast, Count II is based solely upon bald, conclusory allegations that Plaintiff reported certain actions in reliance upon "AON's stated policies and procedures about reporting wrongful activities and procedures;" that such "policies and procedures constitute a contract" between Plaintiff and Aon; and that Aon breached such contract when it terminated Plaintiff. Compl. ¶¶ 50-53. Indeed, there are no allegations suggesting that Plaintiff was ever aware of any such policy either before he commenced employment with Aon, or at any time thereafter.

---

[7] Count I of Plaintiff's complaint also should be dismissed because it is barred by the Statute of Frauds. Under New York law, every agreement, promise or undertaking which by its terms cannot be performed within one year of its making is void and unenforceable unless such agreement, promise or undertaking is in writing signed by the party to be charged. *See* N.Y. Gen. Oblig. Law § 5-701(a)(1) (McKinney 2001). *See Stillman v. Townsend,* No. 05 Civ 6612, 2006 WL 2067035 (S.D.N.Y. July 26, 2006); *Cunnison v. Richardson Greenshields Sec., Inc.* 107 A.D.2d 50, 485 N.Y.S.2d 272 (1st Dep't 1985). Here, Plaintiff alleges that he had a guaranteed position "at least until AON rolled out its end-to-end proprietary software solution and obtained the dominant market leading position in e-discovery software solutions." Compl. ¶ 27. Based upon Plaintiff's own allegations, such a promise was not capable of being performed within one year. Compl. ¶¶ 25, 30. Moreover, such a promise is entirely too vague and indefinite to convert Plaintiff's status from an at-will employee to one in which he could be terminated solely for cause. *Gambello v. Time Warner Commc'ns. Inc.*, 186 F.Supp. 2d 209, 225-26 (E.D.N.Y. 2002); *Apsan,* 1999 WL 58679 at * 13.

Under New York law, a breach of contract claim will be dismissed "where the plaintiff fails to allege, in non-conclusory fashion, 'the essential terms of the parties purported contract, including the specific provisions of the contract upon which liability is predicated.'" *Highlands Ins. Co. v. PRG Brokerage Inc.*, No. 01 Civ. 2272, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004) (*citing Sud v. Sud*, 211 A.D.2d 423, 424, 621 N.Y.S.2d 37, 38 (1st Dep't 1995)). As the Supreme Court in *Twombly* recently held, the bare-bones recitation of the elements of a claim, without more, is insufficient to state a claim under Fed. R. Civ. P. 12(b)(6). *Twombly*, 127 S.Ct. at 1969. Because Plaintiff has failed to meet this minimal threshold burden, Count II should be dismissed.

**B.    Plaintiff, An At-Will Employee, Has No Contract Rights Based Upon The Terms of Aon's Employee Handbook.**

Under New York law, corporate employment policies generally cannot be read to create a contract right and may not serve as the basis for a breach of contract claim. *Murphy*, 58 N.Y.2d at 305-06, 461 N.Y.S.2d at 237-38. This is especially true where, as here, the party seeking to enforce a contract based on company policies is an employee at-will who may be terminated at any time and for any reason. *Lobosco v. NYNEX*, 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 388 (2001). In such situations, to survive a motion to dismiss, a plaintiff must show that the policies and procedures upon which his or her claim is based expressly limited and curtailed [the employer's] right to terminate at will. *Baron*, 271 F.3d at 85 (dismissing claim where "none of the writings identified by the parties…constitutes a written express limitation on the [defendant's] right to hire, fire, promote, demote, transfer, or take any other employment action it deems otherwise appropriate").

Here, Plaintiff fails to point to any language in any Aon policy limiting Aon's right to terminate Plaintiff's employment at any time.  Nor could he.  Aon's Employee Handbook clearly provides:

> This handbook has been prepared as a general statement of Company policy and as a guide to set forth those matters that affect you and your job.  It should be read and interpreted in conjunction with the Code of Business Conduct and the applicable HR Policies.
>
> *                   *                   *
>
> Nothing in this handbook, including the presence of any disciplinary procedure, is intended or should be construed as a contract or guarantee of employment for any period.  You are free to terminate your employment relationship with the Company at any time, for any reasons, and likewise the Company is free to terminate its employment relationship with you at any time for any reason.  Therefore, no officer, supervisor, or other employee of the Company, other than the President of the Company for which you work, has the authority to alter, orally or in writing, the terminable-at-will status of employment.

Galletti Aff., Ex. D at 1.[8]  Aon's Code of Business Conduct likewise provides:

> Our Code of Business Conduct sets the standard for all Aon employees outlining the fundamental requirements for how we conduct business.  It is not a compilation of company policies and procedures, but a broad overview of how we must approach our work, our relationships, our decisions and our actions.
>
> *                   *                   *
>
> [I]t is very important to note that this Code is not a contract of employment and does not create any contractual rights between Aon and any employees.

Galletti Aff. Ex. E at 1, 3.[9]  *See also* Galletti Aff., Ex. C at 12 (Plaintiff's Employment Application provides that company manuals and handbooks "shall not be construed as a contract of employment for any specified period of time.").

---

[8]  A true and correct copy of Aon's Employee Handbook is attached to the Galletti Affidavit as Exhibit D.

[9]  A true and correct copy of Aon's Code of Business Conduct is attached to the Galletti Affidavit as Exhibit E.

As Aon's Employee Handbook makes clear, nothing in the Handbook or Code of Business Conduct (expressly referred to and incorporated in the Handbook) is intended to or constitutes a limitation upon the at-will terms of Plaintiff's employment.  Galletti Aff., Ex. D at 1.  The Employee Handbook and Code of Business Conduct also make clear that neither should be construed as a guarantee or contract of employment or to create any contractual rights. *Id.*; Galletti Aff. Ex. E at 3.  Moreover, Plaintiff's offer letter provides in unmistakable terms that it may not be modified or amended except by a written agreement signed by the President of Aon Consulting—something the Handbook and Code of Conduct clearly are not.  Galletti Aff., Ex. A at 3; Exs. D, E.  As such, Plaintiff's breach of contract claim based upon Aon's policies and procedures fails to state a claim and should be dismissed.[10]  *See Lobosco,* 96 N.Y.2d at 317.

### III.    Plaintiff Has Failed To Allege A Valid Claim For Fraudulent Inducement.

In Count III of his complaint, Plaintiff alleges that he was fraudulently induced by misrepresentations made to him concerning Aon's e-discovery software to leave his job with Renew Data Corp. and accept a position with Aon.  Compl. ¶ 55-58.  In addition, Plaintiff alleges, he was injured as a result of his alleged reliance upon such misrepresentations in that he lost commissions that he would have earned from his prior employer, lost commissions that he would have earned from Aon pursuant to the incentive based compensation formula in his offer letter and suffered damage to his "nationally renowned reputation and standing within the e-

---

[10]  Aon's Code of Business Conduct includes a section entitled "Protection Against Retaliation," which states, in its entirety:  "Aon strictly prohibits retaliating against someone for making a good faith report of an ethical or legal concern.  In many instances retaliation is against the law.  However, if a report is made in 'bad faith' . . . the person making the report may be subject to disciplinary action."  Galletti Aff., Ex. E at 5.  Nothing in this language, however, creates an exception to the at-will employee doctrine, particularly where, as here, the Handbook and Code of Business Conduct contain explicit disclaimers.  *Lobosco,* 96 N.Y.2d at 317.  *See also Odunmbaku v. New York Blood Center,* No. 95 Civ. 6747, 1996 WL 514867, at *3 (S.D.N.Y. Sept. 10, 1996) ("general statement . . . [which] is nothing more than a statement of existing law concerning discrimination, may not serve as a basis for a breach of contract claim."); *Radin v. Albert Einstein Coll. of Med.,* No. 04 Civ. 704, 2005 WL 1214281, at *11 (S.D.N.Y. May 20, 2005) (granting motion to dismiss contract claims based on defendant's alleged breach of its own antidiscrimination policies).

discovery market place."  Compl. ¶¶ 29, 57.  Plaintiff's fraudulent inducement claim is seriously flawed and should be dismissed.

A.    **Plaintiff's Claim For Fraudulent Inducement Should Be Dismissed Because It Is Nothing More Than A Breach Of Contract Claim.**

It is well-established that "no cause of action for fraud is stated or exists where the only fraud charged relates to a breach of contract."  *Alter v. Bogoricin*, No. 97 Civ. 0662, 1997 WL 691332, at *9 (S.D.N.Y. Nov. 6, 1997);  *Rocanova v. Equitable Life Assurance Soc'y of U.S.*, 82 N.Y.2d 603, 612 N.Y.S.2d 339 (1994).  Rather, in order to survive a motion a dismiss, a plaintiff must "(i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; (iii) seek special damages that are caused by misrepresentation and are unrecoverable as contract damages."  *Stillman v. Townsend*, 2006 WL 2067035, at *6 (*citing Bridgestone/Firestone Inc. v. Recovery Credit Sevcs. Inc.*, 98 F.2d 13, 20 (2d Cir. 1996) (dismissing fraudulent inducement claims because no collateral representations were pled)); *Papa's-June Music, Inc. v. McLean*, 921 F.Supp. 1154, 1160-61 (S.D.N.Y. 1996) (dismissing complaint where fraud alleged arises out of same facts that form basis for breach of contract claim).  Plaintiff's claim for fraudulent inducement fails to satisfy any one of these criteria.

Here, Defendants did not owe Plaintiff any legal duty separate and apart from that arising out of the offer letter, nor does Plaintiff allege any such duty.  In addition, Plaintiff seeks the same damages for his breach of contract claims as he does for his fraud claim and thus no special damages are alleged.  Moreover, none of the oral representations allegedly made by Aon are collateral to Plaintiff's offer letter; to the contrary, they are directly related to it.

In his complaint, Plaintiff contends that he accepted a position with Aon in reliance upon various representations concerning Aon's alleged intention to develop proprietary

e-discovery software, and with the promise that "if '[he] accept[ed] employment with AON, [he] would have a guaranteed position at least until AON rolled out its end-to-end proprietary software solution and obtained the dominant market leading position in e-discovery software solutions.'" Compl. ¶¶ 24, 29. These very representations also form the basis for Plaintiff's claim for breach of contract. Compl. ¶¶ 44-48. Plaintiff also alleges that the representations allegedly made impaired his ability to perform. Compl. ¶¶ 29, 34, 56-57. Plaintiff's fraud claim, thus, is nothing more than a recast breach of contract claim and, as such, should be dismissed.

### B. Plaintiff's Claim For Fraudulent Inducement Is Barred By The Merger Clause In His Offer Letter.

As set forth above, Plaintiff's offer letter contains a merger clause which explicitly provides that the terms of the letter "supersede[] any prior representation or agreements between [the parties] whether written or oral" and also requires that all modifications or amendments be in writing and signed by the President of Aon Consulting. Galletti Aff., Ex. A at 3. Plaintiff's claim for fraudulent inducement is based entirely upon oral representations allegedly made to him by Aon (Compl. ¶¶ 24-29, 35, 55-58), and, as such, should be dismissed. *See Wurtsbaugh v. Banc of America Securities LLC,* No. 05 Civ. 6220, 2006 WL 1683416 (S.D.N.Y. June 20, 2006) (fraudulent inducement claim based on alleged oral misrepresentations barred by merger clause); *Berger v. Roosevelt Inv. Group, Inc.,* 28 A.D.3d 345, 813 N.Y.S.2d 419 (1st Dep't 2006) (any promises allegedly made by defendant to induce employee to sign agreement superseded by merger clause in written agreement); *Montchal v. Northeast Savings Bank,* 243 A.D.2d 452, 663 N.Y.S.2d 64 (2d Dep't 1997) (same).

### C. Plaintiff Has Failed To And Cannot Plead The Essential Elements Of A Claim For Fraudulent Inducement.

Count III also should be dismissed because Plaintiff has failed to adequately allege the elements of a fraudulent inducement claim. Under New York law, to state a claim for

fraudulent inducement, a plaintiff must allege a representation of material fact that was false and known to be false by the defendant, which representation was made for the purpose of inducing plaintiff to rely upon it, that the plaintiff justifiably relied upon it and suffered injury as a result. *See Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80 (1996). Bald, conclusory allegations that are nothing more than a "formulaic recitation of the elements of a cause of action" are insufficient, *Twombly,* 127 S.Ct. at 1965, as are allegations based solely "upon information and belief." *Granite Partners, L.P.,* 58 F.Supp. 2d at 258.  Rather, to survive a motion to dismiss, a plaintiff must come forward with sufficient facts to state a claim for relief that is plausible on its face. *Twombly,* 127 S. Ct. at 1965, 1969.

A party alleging fraud also must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).  That provision requires a plaintiff to (1) specify the statements plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.  *Hawkins-El v. AIG Savings Bank,* No. 05 Civ. 3222, 2006 WL 2008573 (E.D.N.Y. July 13, 2006), *aff'd,* No. 06 Civ. 3534, 2007 WL 642952 (2d Cir. Feb. 27, 2007).

Here, Plaintiff's fraudulent inducement claim fails on multiple counts.  First, the misrepresentations allegedly made to Plaintiff amount to nothing more than statements of future intent, not misrepresentations of present fact.  Second, the alleged misrepresentations constitute non-actionable "puffery" or statements of opinion.  Third, Plaintiff has failed to demonstrate that any such representations were made with fraudulent intent.  Fourth, Plaintiff has failed to establish that he justifiably relied upon any such representations.  Finally, Plaintiff has not alleged sufficient injury as a result of his alleged reliance.

1.     The Alleged Misrepresentations Are Statements of Future Intent That Cannot Form The Basis Of A Fraudulent Inducement Claim.

Plaintiff alleges that Aon "wrongfully, knowingly and intentionally made fraudulent statements and misrepresentations of *present fact*" to induce him to leave his former employer and work at Aon.  Compl. ¶ 56.  (Emphasis added.)  The precise misrepresentations upon which Plaintiff bases this claim, however, are not identified in Count III.  Nonetheless, for purposes of this motion, the representations upon which Plaintiff presumably relies appear to consist of the following:

- "[I]f [you] accept[ ] employment with Aon, [you] would have a guaranteed position at least until Aon roll[s] out its end-to-end proprietary software solution and obtain[s] the dominant market leading position in e-discovery software solutions."

- "Right now, we [AON] have the best developers working on and completing our end-to-end e-discovery solutions."

- "We [AON] are in the final stages of developing and completing a complete end-to-end proprietary e-discovery system ranging from data extraction to viewing to production."

- "The proprietary software technology that we are developing right now will turn the industry on its ear and offer a completely integrated proprietary solution.  Within the next three months we will have the only true end-to-end solution in the industry."

- "…I have guys working on it as we speak and it will be done in three weeks."

- "'[S]tick with [Mr. Barbanel]'…Aon was working on and would have the greatest technology in the industry."

Compl. ¶¶ 24, 27, 35.

It is well-established that mere promissory statements as to what will be done in the future cannot form the basis for a fraudulent inducement claim.  *Silver v. N.L. Industries, Inc.,* No. 82 Civ. 6875, 1985 WL 241, at *8 (S.D.N.Y. Jan. 28, 1985); *Lanzi v. Brooks,* 54 A.D.2d 1057, 1058, 388 N.Y.S.2d 946, 949 (3d Dep't 1976).  *See also Murray v. Xerox Corp.,*

811 F.2d 118 (2d Cir. 1987) (effort to frame broken promises as misrepresentations of present fact fruitless). Here, contrary to Plaintiff's conclusory allegation, the representations allegedly made by Aon are nothing more than statements reflecting Aon's plans to develop, roll-out and market an e-discovery solution at some point in the future. Statements to the effect that Plaintiff "'would have a guaranteed position at least until Aon rolled out its end-to-end...solution and obtained the dominant market leading position'" (Compl. ¶ 27) are clearly not present statements of fact upon which a claim for fraudulent inducement may properly be based. *See NL Industries*, 1985 WL 241, at *8. The same holds true of alleged representations such as "[w]ithin the next three months, we will have the only true end-to-end solution in the industry" or "it will be done in three weeks." Compl. ¶ 24. Even representations to the effect that Aon was "working on" or "in the final stages of" or "developing" "a complete end-to-end e-discovery system" (Compl. ¶¶ 24, 35), while cast as statements of present fact, in fact reflect statements of future intent.

In order to state a fraud claim based upon the failure to perform promises of future acts, a plaintiff must allege that the defendant, at the time it uttered the alleged representations, harbored "'a preconceived and undisclosed intention not to perform.'" *NL Industries*, 1985 WL 241, at *8. *See Lanzi,* 54 A.D.2d at 1058; *Wegman v. Dairylea Co-op., Inc.,* 50 A.D.2d 108, 376 N.Y.S.2d 728 (4th Dep't 1975). Plaintiff's complaint, however, is completely devoid of any such allegation. Indeed, no facts are alleged which show that Aon had an undisclosed plan not to develop the software. Moreover, nothing suggests that Aon had a preconceived intention to mislead Plaintiff or to hire him with the preconceived intention of terminating him–at any time. *Id.* Rather, the facts alleged in the complaint suggest quite the opposite was true, *i.e.*, that Plaintiff was hired in good faith and terminated (allegedly) for conduct that occurred long after the alleged misrepresentations were made. Compl. ¶¶ 35, 36,

38-43. Plaintiff's own allegations, thus, belie any notion that Aon had a preconceived intention not to perform and, as such, Plaintiff's claim for fraudulent inducement should be dismissed.[11]

       2.     The Alleged Representations Amount To Nothing More Than Non-Actionable Opinions And Puffery.

It is also well-established that a claim for fraudulent inducement cannot be based upon representations that amount to nothing more than "puffery" or "statements of opinion." *Saleemi v. Pencom Systems Inc.,* No. 99 Civ. 667, 2000 WL 640647, at *5 (S.D.N.Y. May 17, 2000), *aff'd,* 242 F.3d 367 (2d Cir. Dec. 7, 2000); *Quasha v. American Natural Bev. Corp.*, 171 A.D.2d 537, 567 N.Y.S.2d 257 (1st Dep't 1991); *Lanzi,* 54 A.D.2d at 1058. Rather, in order to state a claim for fraud, the misrepresentations allegedly made must be sufficiently clear and concrete, not vague and conditional. *Saleemi,* 2000 WL 640647, at *6.

Here, Plaintiff alleges, among other things, that he was told that Aon "[has] the best developers working on and completing our complete end-to-end e-discovery solutions" and that the "proprietary software technology that we are developing right now will turn the industry on its ear and offer a completely integrated proprietary solution…." Compl. ¶ 24. These representations are nothing more than "puffery" or, at best, reflect Mr. Barbanel's opinions. Indeed, as an attorney allegedly sophisticated in the e-discovery business (Compl. ¶¶ 10-13), Plaintiff could not have interpreted these statements in any other fashion. As such, they cannot form the basis for a fraud claim.

---

[11]  Plaintiff alleges "upon information and belief" that these representations were "false and known by AON to be false at the time they were made" because "upon information and belief," Aon "had not yet commenced the development and programming of the proprietary software systems" and "had not yet even approved the allocation of funds and resources for the development and completion of" such systems." (Compl. ¶¶ 25, 30)  As noted above, allegations based "upon information and belief" cannot form the basis of a fraud claim. *See Granite Partners,*, 58 F.Supp 2d at 258-59.  In any event, nothing about these allegations suggests that Aon had a preconceived and undisclosed intention not to develop the system and terminate Plaintiff for complaining about it; rather, all they reflect is that the promised e-discovery solution had not yet come to fruition.  Such allegations are insufficient to establish intent.  *NL Industries*, 1985 WL 241, at *8.

3.    Plaintiff Fails To Allege Sufficient Facts To Show That The Statements Were Made With Fraudulent Intent.

Plaintiff's fraudulent inducement claim also should be dismissed because Plaintiff fails to allege any facts that would suggest Aon made the alleged misrepresentations with the intent to harm Plaintiff.  Indeed Plaintiff's sole allegation of intent consists of the wholly conclusory statement that Aon "wrongfully, knowingly and *intentionally* made fraudulent statements and misrepresentations" to Plaintiff.  Compl. ¶ 56.

Although scienter need not be alleged with great specificity, there must be some factual basis supporting the allegation or giving rise to a "strong inference" of fraudulent intent. *Chill v. General Elec. Co.,* 101 F.3d 263, 268 (2d Cir. 1996).  As the Second Circuit has held, an inference of fraudulent intent may be stated where a plaintiff alleges facts showing defendant had "a motive for committing fraud and a clear opportunity for doing so" or "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 267. A general allegation of motive without more is insufficient.  *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 813-14 (2d Cir. 1996); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995).  Likewise, allegations of non-performance will not suffice.  *Murray v. Xerox Corp.,* 811 F.2d 118, 122 (2d Cir. 1987).

Here, however, no facts are alleged which demonstrate that Aon intended to defraud Plaintiff at the time the representations were allegedly made.  Plaintiff does not allege facts showing ill will, malice or bad motive on the part of Aon.  Rather, all that Plaintiff alleges is that the Aon failed to carry through on its alleged promise to develop and complete a proprietary end-to-end e-discovery solution.  Compl. ¶ 57.  Under New York law, a plaintiff may not satisfy the scienter requirement simply by showing that the future event never occurred." *Hawkins v. AIG Savings Bank*, 2006 WL 2008573 at *2 (*citing Shields v. Citytrust Bancorp, Inc.*,

25 F.3d 1124, 1128 (2d Cir. 1994) (upholding Magistrate's dismissal of fraud complaint because "it failed to specify, *inter alia*, why the statements were fraudulent")).  Plaintiffs' fraud claim, therefore, must fail.

> 4.    Plaintiff Cannot Establish That He Reasonably Relied Upon Any Of The Alleged Misrepresentations.

Plaintiff's fraudulent inducement claim cannot be sustained unless Plaintiff establishes that he reasonably relied upon the representations allegedly made to him by Aon. *Granite Partners,* 58 F. Supp. 2d at 259-61; *Berger,* 28 A.D.3d at 420-21.  Plaintiff cannot do so here.

First, as set forth above in Section III.B., the presence of a merger clause in Plaintiff's offer letter renders Plaintiff's alleged reliance on any of the oral representations made to him by Aon unreasonable as a matter of law.  *See Mendali v. Pay-Per-View Network, Inc.*, No. 97 Civ. 6451, 1998 WL 230994 (S.D.N.Y. May 5, 1998), *aff'd,* 182 F.3d 900 (2d Cir. 1999).

Second, it is well-established as a matter of law, that an employee at-will cannot reasonably rely upon statements or representations allegedly made as to his or her future or continued employment.  *See Wurtsbaugh,* 2006 WL 1683416 (plaintiff, employee at-will, failed to state claim for fraudulent inducement based on alleged oral misrepresentations made concerning defendant's intention to continue business that, in turn, would continue plaintiff's employment).[12]  Here, Plaintiff alleges that various representations were made by Aon concerning the prospects of Plaintiff's future and continued employment in connection with the sale of Aon's proprietary e-discovery software.  As an employee at-will, Plaintiff's alleged

---

[12]  *See Arias v. Women in Need, Inc.,* 274 A.D.2d 353, 354, 712 N.Y.S.2d 103, 104 (1st Dep't 2000); *Montchal,* 243 A.D.2d at 453; *Tannehill v. Paul Stuart, Inc.,* 226 A.D.2d 117, 118, 640 N.Y.S.2d 505, 506 (1st Dep't 1996); *LaBozzo v. Brooks Bros., Inc.*, No. 120538/01, 2002 WL 1275155 (Sup. Ct. N.Y.Co. Apr. 25, 2002).

reliance on such representations is unreasonable as a matter of law.  *See Meyercord v. Curry*, 38 A.D.3d 315, 316, 832 N.Y.S.2d 29, 31 (1st Dep't 2007).[13]

        5.      <u>Plaintiff Cannot Allege Injury As A Result Of His Alleged Reliance.</u>

Finally, to state a claim for fraudulent inducement, Plaintiff also must show that the alleged misrepresentations "directly caused the loss about which [he] complains."  *See Lama,* 88 N.Y.2d at 498; *Meyercord,* 38 A.D.3d at 316, 832 N.Y.S.2d at 30.  Moreover, the only damages that may be recovered in an action for fraud are the actual, pecuniary, out-of-pocket losses sustained as a direct result of the alleged wrong.  *Lama,* 88 N.Y.2d at 421-23.  Plaintiff alleges that he relied to his detriment on the allegedly fraudulent statements and misrepresentations made by Aon and, as a result, lost commissions that he would have earned had he remained with his former employer and suffered injury to his reputation in the industry by reason of his association with Aon and its allegedly non-existent software.  Compl. ¶¶ 56, 57.  Such losses, however, cannot be recovered in an action for fraud.  In addition, as an employee at-will, Plaintiff could have been terminated at any time, even if Aon had a proprietary software solution that Plaintiff could sell.  Absent any cognizable injury as a direct result of his alleged reliance, Plaintiff's claim for fraudulent inducement should be dismissed.

## IV. Plaintiff Has Failed To And Cannot Allege A Claim For Promissory Fraud.

In order to state a claim for promissory fraud under New York law, Plaintiff must satisfy the elements of a claim for fraud in the inducement, *see* Section III.C. *supra*, and further

---

[13]   Moreover, as Plaintiff alleges, in or about May 2006, he declined to consider a position with Aon because he learned that Aon "was still in the development phase with their e-discovery software and technology."  Compl. ¶ 18.  According to Plaintiff, he had "no interest in such a position" "until he could determine the seasoning and development of AON's technology."  *Id.*  Despite such concerns, several months later, Plaintiff accepted a position with Aon, even after being told that Aon was still in the process of developing a proprietary software solution.  Compl. ¶¶ 19-24, 28.  Given Plaintiff's allegedly extensive experience in the e-discovery industry, and his apparent ability to investigate the status of Aon's e-discovery software development efforts, he should not be heard to complain now that he was duped by any alleged misrepresentations concerning Aon's software.  *Wurtsbaugh*, 2006 WL 1683416, at *6; *Lanzi*, 54 A.D.2d at 1058.

allege that at the time defendant made the allegedly false representations, defendant had no intention of performing them. *Roney v. Janis,* 77 A.D.2d 555, 430 N.Y.S.2d 333 (1st Dep't 1980), *aff'd,* 53 N.Y.2d 1025, 442 N.Y.S.2d 484 (1981); s*ee Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir. 1987); *Press v. Marvalan Indus., Inc.,* 468 F. Supp. 1072 (S.D.N.Y. 1979). Plaintiff's promissory fraud claim is based upon allegations nearly identical to his fraudulent inducement claim. Compl. ¶¶ 59-63. Thus, for the very reasons set forth above in Section III, it also should be dismissed.[14]

First, Plaintiff's promissory fraud claim should be dismissed because it is nothing more than a recast breach of contract claim. *See* Section III.A., *supra*. It is premised upon representations that form the basis of Count I (*compare* Compl. ¶¶ 24-29 *with* Compl. ¶¶ 44-48), and allegedly impaired his ability to perform his job. Compl. ¶¶ 29, 62. *See Papa's-June Music,* 921 F.Supp. at 1160-61.

Second, Plaintiff's promissory fraud claim is barred by the merger clause in his written offer letter. *See* Section III.B., *supra.* That clause prohibits Plaintiff from relying upon any prior representations or agreements, whether written or oral, not reflected within the four corners of his offer letter or in a separate writing signed by the President of Aon Consulting. Galletti Aff., Ex. A at 3. Plaintiff, as an attorney, clearly must have understood the significance of that provision and his efforts to circumvent the plain and unambiguous terms of his offer letter should not be sustained.

Third, Plaintiff has failed to plead the essential elements of a promissory fraud claim or to have done so with the particularity required by Fed. R. Civ. P. 9(b). Like his claim for fraudulent inducement, Plaintiff here makes the same bald, conclusory allegations. Compl.

---

[14] Count IV differs from Count III only to the extent that Plaintiff has added the allegation that "[a]s a result of [Aon's] fraudulent statements and promises," he "accepted employment with AON and attempted to sell e-discovery software and services that were undeliverable, non-existent and/or misrepresented." Compl. ¶ 61.

¶¶ 60-62.  Nowhere does Plaintiff identify which, if any, alleged representations support his claim, nor does he allege facts sufficient to demonstrate Aon's intent not to perform.  Plaintiff's promissory fraud claim, thus, should be dismissed.  *See ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*, Nos. 05 Civ. 5132, 05 Civ. 2593, 2007 WL 1989336 (2d Cir. July 11, 2007); *Twombly,* 127 S.Ct. at 1964-69.

Fourth, Plaintiff has failed to plead all of the essential elements of a promissory fraud claim.  As discussed in Section III.C.2. *supra*, many of the alleged representations upon which he relies constitute statements of opinion or puffery which cannot form the basis of a valid fraud claim.  *Roney,* 53 N.Y.2d at 1027.  Moreover, Plaintiff has not alleged (as he cannot) that Aon had no intention of performing at the time the alleged representations were made, and his complaint is completely devoid of any factual allegations to support such a claim.  These omissions are fatal.  *See Stuart Lipsky, P.C. v. Price*, 215 A.D.2d 102, 103, 625 N.Y.S.2d 563, 564 (1st Dep't 1995) (affirming dismissal of "promissory" fraud claim where plaintiff failed "to plead any facts giving rise to an inference that the defendant, at the time the promissory representations were made, never intended to honor or act upon his statements").

Finally, Plaintiff cannot establish that he reasonably relied upon the alleged representations made to him by Aon.  By reason of the plain and unambiguous terms of his offer letter, Plaintiff was an employee at-will who could be terminated at any time for any reason, who disclaimed reliance upon any prior representations or agreements (whether written or oral) and who agreed that the terms of his written agreement could not be changed or modified in the absence of a writing signed by the President of Aon Consulting.  Furthermore, as Plaintiff's allegations concede, he was a sophisticated attorney, with connections to and a known expertise in the e-discovery industry who, prior to accepting a position with Aon, had the proven ability to

-24-

ascertain the truth of the representations he now claims were false.  For these reasons as well, Count IV should be dismissed.

## **CONCLUSION**

For the reasons set forth above, Aon respectfully requests that the Court issue an Order pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) dismissing Plaintiff's complaint in its entirety, with prejudice, and granting such other and further relief as the Court may deem just and proper.

Dated:   New York, York
             August 6, 2007

                                                    Respectfully submitted,

                                                    WINSTON & STRAWN LLP

                                                    By:       s/  Lori J. Van Auken         
                                                              Lori J. Van Auken (LV 2858)
                                                              Alexis J. Lury (AL 8672)

                                                              200 Park Avenue
                                                              New York, New York  10166
                                                              T:  (212) 294-6700
                                                              F:  (212) 294-4700
                                                              lvanauken@winston.com

Of Counsel:

Timothy J. Rooney
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
T:  (312) 558-5600
F:  (312) 558-5700

M. Carter DeLorme
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D. C.  20006
T:  (202) 282-5000
F:  (202) 282-5100