UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DANIEL JUNK

                          Plaintiff,                  Case No.: 07-CIV-4640 (LMM)(GWG)

    - against -


AON CORP., AON SERVICE CORPORATION
and AON CONSULTING, INC.

                          Defendants.
_____


**PLAINTIFF'S MEMORANDUM OF LAW IN
<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**










                          DECKER DECKER DITO & INTERNICOLA, LLP
                          1610 Richmond Road, Staten Island, NY 10304
                          *Attorneys for Plaintiff*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS .......................................................................................................2

ARGUMENT .............................................................................................................................5

POINT I

PLAINTIFF HAS STATED CLAIMS FOR BREACH OF CONTRACT....................................6

(a) THE COMPLAINT STATES A CLAM FOR BREACH OF AN ORAL
EMPLOYMENT AGREEMENT ..............................................................................................7

(b) THE COMPLAINT STATES A CLAM FOR BREACH OF A STATED
EMPLOYMENT AGREEMENT ..............................................................................................8

POINT II

PLAINTIFF HAS STATED CLAIMS FOR FRAUDULENT INDUCEMENT AND
PROMISSORY FRAUD .........................................................................................................11

CONCLUSION........................................................................................................................14

TABLE OF AUTHORITIES

STATUTES

Fed.R.Civ.P. 9(b) ..................................................................................................1, 5, 6, 13

Fed.R.Civ.P. 12(b)(6) ...........................................................................................1, 5, 6, 13

CASES

*Stewart v. Jackson & Nash,* 976 F.2d 86 (2d Cir. 1992) ................................................5, 11, 12, 13

*Padavan v. United States,* 82 F.3d 23 (2nd Cir. 1996) .....................................................................5

*Scheuer v. Rhodes,* 416 U.S. 232; 40 L.ed.2d 90 (1974) ...................................................................5

*Mills v. Polar Molecular Corp.,* 12 F.3d 1170 (2nd Cir. 1999) .........................................................6

*Hirsch v. Columbia University,* 293 F.Supp 2d. 372 (2003) .......................................................6, 13

*North Shore Bottling Co. v. Schmidt & Sons, Inc.*, 22 N.Y.2d 171 (1968) ......................................7

*Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83 (2nd Cir. 1998) .........................................................8, 9

*Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458; 457 N.Y.S.2d 195 (1982) ........................................8

*DiFilippo v. Hidden Ponds Associates*, 146 A.D.2d 737 (2nd Dept 1989) ......................................13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DANIEL JUNK

                     Plaintiff,                Case No.: 07-CIV-4640 (LMM)(GWG)

      - against -

AON CORP., AON SERVICE CORPORATION
and AON CONSULTING, INC.

                     Defendants.
_____

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

Plaintiff submits this memorandum of law in opposition to defendants' pre-answer, pre-discovery motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b).

In the complaint plaintiff sets forth and pleads, in detail, causes of action for breach of contract, fraud and fraudulent inducement arising from the alleged fraudulent statements and factual misrepresentations of the defendants (and in particular, the defendants' executive vice-president Jerry Barbanel) in connection with the executive recruitment and employment of the plaintiff. In their pre-answer, pre-discovery motion to dismiss, defendants argue (wrongfully) that plaintiff's contract claims are barred by a merger clause and that plaintiff's fraud claims are barred by his contract claims. In sum, defendants wrongfully assert that the plaintiff is an at-will employee and, as such, under no circumstance does the law afford plaintiff a remedy or relief for detrimentally relying on the defendants' fraudulent statements and for reporting defendants

1

illegal actions.

As will be demonstrated herein, the complaint sets forth, in complete detail, claims arising from the fraudulent statements and misrepresentations (as to the defendant's then existing e-discovery products and current product development) represented to the plaintiff in connection with his executive recruitment and relied upon by the plaintiff in connection with his acceptance of employment and active solicitation and sale of e-discovery software systems and solutions that, unknown to the plaintiff, did not exist and were not yet developed or even approved for future development.  Moreover, when the plaintiff, consistent with the mandate of the defendants' employee manual and policies, notified his superiors about the illegal nature of Jerry Barbanel's actions and instructions (*i.e.*, misrepresenting the authorship of Aon's e-discovery products and capabilities) he was terminated in retaliation[1].

**STATEMENT OF FACTS**

Since 2001, plaintiff, a graduate of New York law school, has been engaged in the marketing, sales and business development of "electronic discovery" services and software utilized by law firms and third parties in connection with preserving, searching and producing electronic data for regulatory compliance and litigation purposes[2].  Complaint ¶10.  During

---

1. In support of the instant motion, defendants' counsel makes the unsubstantiated and irrelevant accusation that plaintiff was terminated for violating AON reimbursement disclosures.  *See,* Defendants' Memorandum of Law in Support of Motion to Dismiss, pp. 1-2.  While counsel offers no citation or authority for her apparently personal assertion it is respectfully submitted that such speculation fails to recognize the standard of review presently before the Court.

2 . Electronic discovery or "e-discovery" refers to the regulatory and litigation maintenance, preservation and disclosure of data and information in its original and unaltered native format.  The e-discovery marketplace involves a broad range of hardware, software and consulting systems and services centered on enabling an end-user to reliably search, copy, view and produce electronic data in an unaltered native format admissible in legal and regulatory proceedings.

plaintiff's employment and active participation in the fledgling "e-discovery" marketplace plaintiff has been successfully employed and retained in highly compensated executive and managerial positions. Complaint ¶11. Prior to accepting employment with the defendants (collectively referred to as "Aon") the plaintiff was employed as Regional Sales Director for Renew Data Corp., an established e-discovery vendor and technology leader. Complaint ¶12.

After retaining Jerry Barbanel and other executives from Kroll, Inc., Aon, traditionally a provider of insurance products, sought to enter the e-discovery marketplace. Complaint ¶¶14-17. Subsequent to Aon's entrance in the e-discovery marketplace, plaintiff received various executive employment solicitations from Aon and its agents. Complaint ¶¶18-19. After various solicitations from Aon's agents and officers, in or about October, 2006 plaintiff met with Jerry Barbanel (executive vice-president of Aon) at Aon's offices located at 55 East 52nd Street, New York, New York to discuss plaintiff's potential employment and Aon's e-discovery products. Complaint ¶¶19-28. During plaintiff's October, 2006 meeting with Jerry Barbanel, Mr. Barbanel made the following statements and representations to plaintiff:

- "Right now we [Aon] have the best developers working on and completing our complete end-to-end e-discovery solutions".

- "We [Aon] are in the final stages of developing and completing a complete end-to-end proprietary e-discovery system ranging from data extraction to viewing to production."

- "The proprietary software technology that we are developing right now will turn the industry on its ear and offer a completely integrated proprietary solution. Within the next three months we will have the only true end-to-end solution in the industry"

After Plaintiff expressed concern as to a delay in developing the technology, Jerry Barbanel stated to Plaintiff:

- "No. no. no. I have guys working on it as we speak and it will be done in three weeks."

Complaint ¶¶23-24.  The foregoing representations and statements made by Mr. Barbanel were false and known by him to be false at the time they were made.  Complaint ¶25.  Among other things, the foregoing statements were false and known to be false since at the time they were made Aon had not yet even started nor even received approval to develop the represented e-discovery software systems. Complaint ¶25.

In response to and relying on the (knowingly false) statements and representations made by Mr. Barbanel, plaintiff accepted employment with Aon, relinquished his salaried and commissioned position with Renew Data, relinquished his Renew Data sales territory, advised his clients and colleagues in the e-discovery marketplace of his employment with Aon and Aon's new proprietary e-discovery systems. Complaint ¶¶26, 28-29.  To further induce plaintiff to accept employment with Aon, during the October, 2006 meeting, Jerry Barbanel offered to plaintiff that if plaintiff "accepted employment with Aon, [plaintiff] would have a guaranteed position at least until Aon rolled out its end-to-end proprietary e-discovery solution and obtained the dominant market leading position in e-discovery software solutions".  Mr. Barbanel further required that the guaranteed employment required plaintiff to sell his home in South Carolina and relocate to New York within a year. Complaint ¶27.  Based on the foregoing, after accepting employment with Aon, plaintiff hired a real estate broker and listed his South Carolina home for sale. Complaint ¶28.

At all times, prior to plaintiff's accepted employment with Aon, Jerry Barbanel was aware that Aon did not possess any proprietary e-discovery software systems and that Aon had not yet commenced development or even the requisite approval to develop the represented e-discovery systems.  Complaint ¶¶ 25, 30.  At all times, what was represented to customers and to the public as Aon's  own proprietary e-discovery software was simply rebadged and renamed

4

versions of the industry standard and readily available software known as "File Control".

Subsequent to accepting employment with Aon and after learning that Aon did not possess any proprietary or novel e-discovery systems and that Aon / Jerry Barbanel was instructing plaintiff and others to lie to customers and the public as to the source and authorship of Aon's rebadged "File Control" software, plaintiff notified his managers and superiors - other than Jerry Barbanel. Complaint ¶¶35, 36 – 41. In doing so plaintiff relied on Aon's policies and procedures respecting the reporting of wrongful activity (Complaint ¶51) and as a result plaintiff was terminated in retaliation. Complaint ¶¶41-43.

## ARGUMENT

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the allegations of the complaint must be accepted as true and all reasonable inferences inferred in favor of the plaintiff and the maintenance of his claims. *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2nd Cir. 1992). "The motion must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". *Id.; Padavan v. United States,* 82 F.3d 23, 26 (2nd Cir. 1996)("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In analyzing a motion to dismiss "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims". *Scheuer v. Rhodes*, 416 U.S. 232, 236; 40 L. Ed.2d 90 (1974).

Where fraud is alleged, to satisfy the pleading requirements of Fed. R. Civ. P. 9(b), the plaintiff need only (a) specify the statements that the plaintiff contends were fraudulent, (b) identify the speaker, (c) state where and when the statements were made, and (e) explain why the

statements were fraudulent. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2nd Cir. 1999). Malice, intent, knowledge and other condition of mind of a person may be averred generally. *Hirsch v. Columbia University*, 293 F.Supp 2d 372 (2003).

## POINT I

### PLAINTIFF HAS STATED CLAIMS FOR BREACH OF CONTRACT

Counts I and II of the complaint set forth and state claims for breach of contract. Count I is based on the oral agreement, promises and representations of Aon's executive vice-president Jerry Barbanel and Count II is based on the express written obligations and mandates set forth in Aon's employee handbook and mandated code of business conduct.

In the instant motion defendants seek dismissal of Counts I and II, not based on the sufficiency of the complaint, but rather based on the introduction of extraneous evidence transcending the standard of review of Fed.R.Civ.P. 12(b)(6). As will be demonstrated below, it is respectfully submitted that Counts I and II state claims for breach of contract.

**(a)    The Complaint States a Claim for Breach of an Oral Employment Agreement.**

As set forth in detail in the complaint, during plaintiff's October, 2006 meeting with defendants' executive vice-president, Jerry Barbanel, Mr. Barbanel promised, and plaintiff agreed that if "plaintiff accepted employment with Aon, [plaintiff] would have a guaranteed position at least until Aon rolled out its end-to-end proprietary software solution and obtained the dominant market leading position in e-discovery software solutions. Complaint ¶27. Said offer was further contingent upon plaintiff's agreement to sell his home in South Carolina and move to New York within a year of starting with Aon. Complaint ¶28. Plaintiff relied upon Mr.

Barbanel's representations, accepted employment with Aon and within a few weeks of his employment engaged a real estate broker and listed his South Carolina home for sale. Complaint ¶28-29.

Based on the foregoing allegations, it is respectfully submitted that the complaint establishes the existence of an offer, acceptance and reliance. Moreover, since the alleged agreement was capable of performance within one year (*viz.,* Aon's roll out of its own proprietary e-discovery solutions and market position) it is not barred by New York's statute of frauds. *See, North Shore Bottling Co. v. C. Schmidt & Sons, Inc.,* 22 N.Y.2d 171, 176, 292 N.Y.S.2d 86, 89, 239 N.E.2d 189, 191 (1968)

> The practice of the New York courts has been to construe this one-year provision of the [New York Statute of Frauds, *i.e.*, New York General Obligations Law § 5-701 (McKinney Supp. 1979-80)] narrowly to give effect to oral contracts which are capable of being performed within one year. Thus, the one-year provision has been held to bar enforcement of oral contracts only in those cases where the contract is 'by express stipulation, not to be performed within a year' and not to cases 'in which the performance of the agreement depends upon a contingency which may or may not happen within the year.

*Id.* To the extent that Aon's establishment of a "dominant market leading position" cannot be established or recognized as definitive, plaintiff's employment term would exist for a period of no less than the time upon which Aon established and rolled out its proprietary e-discovery software solutions – an event capable of performance within one year.

To the extent that defendants' wish to offer extrinsic evidence such as the possible existence of merger clauses and extraneous documents, it is respectfully submitted that such submissions go beyond the scope of the instant application and that plaintiff has sufficiently stated his claim and should be afforded the benefit of receiving an answer to his allegations and

7

to proceed with discovery concerning defendants' evidentiary submissions.

**(b)     The Complaint States a Claim for Breach of a Stated Employment Agreement.**

In the instant application, in the preliminary statement of defendants' Memorandum of Law, defendants' counsel goes out of her way to allege (improperly) that the plaintiff was terminated for violating the defendants' stated ethics policies and requirements regarding the methods and proprietary of submitting business reimbursements. In an apparent contradiction, defendants' counsel then asserts that under no conceivable facts or circumstance could Aon's stated policies and requirements give rise to a contractual obligation prohibiting plaintiff's retaliatory discharge. As demonstrated below, the complaint states a claim for breach of Aon's contractual obligations respecting the reporting of ethics violations and the treatment of "whistle blowers".

Under New York law the Second Circuit and the courts of this state have uniformly recognized that employee manuals and codes of conduct such as that of Aon may give rise to the existence of contractual obligations and the rebuttal of the at-will presumption. *See, Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83 (2nd Cir. 1998); *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458; 457 N.Y.S.2d 195 (1982). In each instance, the existence and establishment of contractual obligations is a fact sensitive determination involving an evaluation of the "course of conduct" of the parties and the "totality" of the circumstances. *Id.*

> An [at-will] employee may recover…by establishing that the employer made the employee aware of its express written policy limiting its right of discharge and that the employee detrimentally relied on that policy in accepting the employment. Where the employee can prove each of these elements – the existence of an "express written policy" and detrimental reliance upon that policy – "the employee in effect has a contract claim against the employer. We have explained that under New York law, "in determining whether [the presumption of employment at will] is

8

> overcome, the trier of facts will have to consider the totality of the circumstances, including the writings, the situation, the course of conduct of the parties and their objectives.

*Marfia,* 147 F.3d at 87-88 (Internal citations omitted).

The Aon "Employee Handbook" and "Code of Business Conduct" are attached as Exhibits "D" and "E", respectively, to the Affidavit of Leonora Galletti sworn to on the 3rd day of August, 2007 ("Galletti Aff.") and submitted with defendants' moving papers. At all times the Employee Handbook" referenced the Code of Business Conduct. With regard to ethics and whistle blowing, in the preface to Aon's Code of Business Conduct (p.1), Gregory C. Case, as President and CEO of Aon states, in pertinent part:

> *Our Code of Business Conduct sets the standard for all Aon employees outlining the fundamental requirements for how we conduct business.*
>
> *I am proud that Aon stands by the principals outlined in the Code of Business Conduct.*

The Introduction to the Code of Business Conduct (p.1) further states that "This code of Business Conduct sets out the standards of ethical behavior required of all employees and officers, as well as Aon directors and agents whenever they are acting on behalf of the Company." Moreover, as to whistle blowing the Code of Business Conduct (p.5) further mandates:

> *Protection Against Retaliation*
>
> *Aon strictly prohibits retaliating against someone for making a good faith report of an ethical or legal concern...*

Under the section titled "Speak Up" employees are further instructed: "If you are aware of any violations of this Code, our policies or the law you <u>must</u> report them. (Emphasis Added).

In the Complaint plaintiff alleges and states that he reported and "blew the whistle" on

9

the alleged fraudulent and illegal actions of Jerry Barbanel and other Aon executives respecting the fraudulent and deceptive marketing and sale of e-discovery software (Complaint ¶¶30-41); that in response to plaintiff's "whistle blowing" he was terminated (Complaint ¶¶42-43); that prior to accepting employment with Aon, plaintiff relied on Aon's stated policies and procedures about reporting wrongful activities (Complaint ¶¶50-51); and that Aon's policies and procedures constitute a contract relied upon by plaintiff (Complaint ¶¶52-54).

Based on the foregoing, it is respectfully submitted that the complaint states a cognizable and valid claim for relief in Count II and that pursuant to the Second Circuit's decision in *Marfia*, plaintiff should be entitled to proceed with discovery and be afforded the opportunity to establish his case.

## POINT II

### PLAINTIFF HAS STATED CLAIMS FOR FRAUDULENT INDUCEMENT AND PROMISSORY FRAUD

Counts III and IV of the complaint set forth and state claims for fraudulent inducement and promissory fraud. In each instance, the allegations relate to allegedly fraudulent statements made by Jerry Barbanel / Aon to plaintiff in an effort to recruit and induce plaintiff to leave his current position and accept employment with Aon. As demonstrated below, the allegations of the complaint relate to "issues of present fact" (as to the then existing status of Aon's e-discovery software and development), do not constitute future promises and are completely independent of any contractual obligations.

The issues presented in the instant motion have been considered by the Second Circuit in *Stewart,* 976 F.2d 86 (1992). In *Stewart,* although the plaintiff (an attorney) was an "at-will" employee of the defendant law firm, the Second Circuit reversed the district court's dismissal of the complaint and held than an at-will employee may state a claim for fraud and fraudulent

10

inducement in connection with misrepresentations made during the recruitment process. *Id.* Accordingly, where the defendant employer made false representations concerning (a) the size of the defendant's then existing environmental law practice and (b) the steps that the defendant was presently taking to expand its environmental law department, the *Stewart* plaintiff, raised and stated cognizable and actionable claims of fraud, independent of her at-will employment and termination. *Id.*

> Stewart contends that the firm's misrepresentations are actionable under a theory of fraud in the inducement. She correctly points out that under New
>
> York law it is elementary that where a contract or transaction was induced by false representations, the representations and the contract are distinct and separable… Thus fraud in the inducement of a written contract is not merged therein so as to preclude an action for fraud.

*Id.* at 88-89.

In recognizing the sufficiency of the plaintiff's fraud claims, the Second Circuit in *Stewart* held that statements involving present facts or actions – such as the size of the defendant law firms environmental law client base and their current actions to develop an environmental law department – were actionable representations of fact and not mere promises of future action. *Id. at 88-90* ("In this case Jackson & Nash's declarations that it "had recently secured a large environmental law client" and "was in the process of establishing an environmental law department" were not future promises, but representations of present fact."). Moreover, even where the alleged fraudulent statement relates to a future action, a cause of action for fraud will stand if the statement was made with an intention not to perform. *Hirsch,* 293 F.Supp.2d at 379-381 ("[The defendant's] alleged promise to recommend [the plaintiff] for tenure if she joined the faculty of the Medical School, although seemingly a mere promise of future action, is more accurately characterized as an integral component of the inducement to encourage [the Plaintiff]

11

to enter an employment contract with the Medical School").

Similar to the alleged "at-will" employee in *Stewart,* in the instant action the complaint alleges that Jerry Barbanel, in an effort to induce plaintiff to leave his current position, accept employment with Aon and to market and sell Aon's e-discovery solutions to the plaintiff's contacts in the industry, made material misrepresentations of "present" facts, *viz.,* Mr. Barbanel represented (Complaint ¶¶23-25):

> "Right now we [AON] have the best developers working on and completing our complete end-to-end e-discovery solutions".
>
> "We [AON] are in the final stages of developing and completing a complete end-to-end proprietary e-discovery system ranging from data extraction to viewing to production."
>
> "The proprietary software technology that we are developing right now will turn the industry on its ear and offer a completely integrated proprietary solution. Within the next three months we will have the only true end-to-end solution in the industry"
>
> "No. no. no. I have guys working on it as we speak and it will be done in three weeks."

The foregoing statements were not future promises but rather representations about Aon's then existing e-discovery software and Aon's then existing development efforts. The foregoing representations were made to induce plaintiff to accept employment with Aon (Complaint ¶22-24), were relied upon by plaintiff (Complaint ¶¶26, 28, 56, 57, 61, 62) and has resulted in alleged damages separate and apart from plaintiff's employment and based on plaintiff's reliance on the defendants' false representations and promises, *viz.,* among other things, Plaintiff, contracted with and engaged a real estate broker for the sale of his South Carolina home, relinquished his then current employment, relinquished his commission based sales territory, and utilized his efforts and reputation in the marketplace to offer and sell a product that did not exist and

amounted to a fraud. *See., Stewart*, 976 F.2d at 88 (plaintiff permitted to seek recovery for damages to her career). As to these allegations, the complaint clearly states and alleges that the defendants' fraudulent representations and promises were false and known to be false at the time they were made. Complaint ¶¶25, 30, 47, 56 and 61.

Moreover, any claim by the defendants (*See,* Defendants Memorandum of Law in Support of Motion to Dismiss, pp 9-10) that the merger clause (contained in an alleged agreement procured by fraud) precludes claims of fraudulent inducement are simply without merit and contrary to the law of New York. *DiFilippo v. Hidden Ponds Associates,* 146 A.D.2d 737 (2nd Dept 1989).

Based on the foregoing, and subject to the liberal and favorable inferences mandated by Fed. R. Civ. P. 12(b)(6), it is respectfully submitted that plaintiff has stated claims for fraud and that plaintiff should be afforded his day in court. Moreover, it is respectfully submitted that the complaint has satisfied the pleading requirements of Fed. R. Civ. P. 9(b) in that plaintiff has alleged, in detail, (a) the alleged fraudulent statements (Complaint ¶¶21-25), (b) the speaker (Complaint ¶¶23-25), (c) where and when the statements were made (Complaint ¶¶23-24) and (d) why the statements were fraudulent (Complaint ¶25). *See., Hirsch*, 293 F.Supp. 2d at 380-381. Any allegations as to the defendants' "malice, intent, knowledge or any other condition of mind" need only be alleged generally. *Id.* Moreover, the complaint establishes in detail factual allegations establishing strong circumstantial evidence of "conscious misbehavior and recklessness". Complaint ¶¶15, 16, 17, 19, 21-25, 30-35, 39, 41 and 43.

## CONCLUSION

The instant motion to dismiss should be denied in its entirety.

Dated: Staten Island, New York
September 12, 2007

        Respectfully Submitted,

        DECKER DECKER DITO & INTERNICOLA, LLP


 By: /s/  Charles N. Internicola
     Charles N. Internicola (CI 4059)

     1610 Richmond Road
     Staten Island, NY 10304
     T. 718. 979. 4300
     F. 718. 351. 3514
     cinternicola@dddilaw.com