UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
DANIEL JUNK,                        :
                                   :
          Plaintiff,       :
                                   :
        -against-        :  07 Civ. 4640(LMM)
                                 :  (GWG)
                                 :
                                 :  <u>MEMORANDUM AND</u>
                                 :  <u>ORDER</u>
AON CORP., AON SERVICE CORPORATION,:
and AON CONSULTING,INC.,       :
                                 :
          Defendants.      :
                                 :
-----------------------------------X

McKENNA, D.J.


      Plaintiff Daniel Junk ("Plaintiff") is a former employee of Aon Corporation and its subsidiaries Aon Service Corporation and Aon Consulting, Inc. (collectively, "Aon" or "Defendants"), who now brings suit against Defendants asserting (1) Breach of Contract, (2) Fraudulent Inducement, and (3) Promissory Fraud claims.  Defendants move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), citing Plaintiff's failure to state claims upon which relief can be granted.  For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part, and DENIED in part.

**1.**

Defendant Aon Corporation is incorporated in Delaware with a principal place of business in New York; its subsidiaries, Defendants Aon Service Corporation and Aon Consulting, Inc., are incorporated in Illinois and New York, respectively, with their principal places of business in New York. (Plaintiff's Complaint ("Compl.") ¶¶ 3, 4, 6.) In October 2006, Plaintiff, a South Carolina resident, relocated to New York City in order to begin his employment with Aon. (Id. ¶¶ 1, 28.)  A graduate of New York Law School, Plaintiff held various executive and managerial positions for electronic discovery software[1] and service providers prior to working for Aon, and had acquired substantial experience in electronic discovery-related matters.[2] (Id. ¶¶ 10, 11.)  According to the complaint, Plaintiff was persuaded to travel to New York City and meet with Aon's management "based on AON's [sic] product and software development representations" that were proffered by Jerry Barbanel, an executive vice president of Aon. (Id. ¶¶ 20, 22.)  The representations allegedly made by Barbanel

---

[1] In his complaint, Plaintiff defines electronic discovery software as software capable of "retriev[ing], preserve[ing], document[ing], and produc[ing] electronic communications, records and files." (Compl. ¶ 10.)

[2] The recently amended Federal Rule of Civil Procedure 26(f)(3) classifies electronic discovery as the "disclosure or discovery of electronically stored information, including the form or forms in which it should be produced ..."

gave Plaintiff the impression that Aon was in the final developmental stage for its "complete end-to-end e-discovery system" that would be completed in either "three weeks" or within "the next three months." (Id. ¶ 24.) Plaintiff also alleges that Barbanel promised, both in their October 2006 meeting and in subsequent phone conversations, that if he "accept[ed] employment with AON [sic], [Plaintiff] would have a guaranteed position at least until AON [sic] rolled out its end-to-end proprietary software solution and obtained the dominant market leading position in e-discovery software solutions." (Id. ¶ 27.) According to Plaintiff, this promise was made conditional upon his agreement to sell his home in South Carolina and move to New York "within a year after starting with AON [sic]." (Id.)

Plaintiff asserts that he relied upon these representations in deciding to accept employment with Aon, relinquish his current position with Renew Data Corporation, and sell his home in South Carolina. (Id. ¶¶ 28, 29.) Additionally, he now contends that the representations he relied upon were fraudulent, and that they were known by Defendants to be fraudulent at the time they were made. (Id. ¶¶ 26, 30.) Plaintiff also alleges that at the time his employment with Aon began: the company

had not yet commenced their development of the e-discovery software; the allocation of funds for such development had not yet been approved; in lieu of its own software, Aon was marketing a repackaged version of "File Control," an already established e-discovery tool[3]; and Barbanel frequently "instructed Plaintiff and other AON [sic] employees to lie to customers ... and never to admit that [the] software was simply rebranded third-party applications." (Id. ¶ 30.)

According to his complaint, Plaintiff grew increasingly concerned about these alleged misrepresentations and expressed his discomfort to Jerry Barbanel on several occasions. (Id. ¶¶ 32, 35.) In March and April of 2007, Plaintiff spoke to several members of Aon's management, informing them of the misrepresentations that Barbanel encouraged him (and his colleagues) to relay to customers, shareholders, and the public; he also articulated that his uneasiness was due in large part to the fact that development of Aon's software had yet to even begin. (Id. ¶¶ 36, 38.) Subsequent to these conversations, an email from Anne Kemp, a colleague of Plaintiff's, was sent to Aon's top executive management as well as to

---

[3] Plaintiff also alleges in ¶ 33 of his complaint, that Defendants had not yet obtained the license necessary to utilize "File Control" at the time of his employment with Aon. (Id.)

members of Defendants' human resources team.  (<u>Id.</u> ¶ 39.)
The correspondence, which was also copied to Plaintiff,
detailed "the fraudulent activities and misrepresentations
of Jerry Barbanel and his management staff." (<u>Id.</u>)  The
following day, Plaintiff was contacted by another member of
Aon's management who informed Plaintiff that Barbanel was
aware of the Kemp email and stating that "there would be no
investigation." (<u>Id.</u> ¶ 41.)  Two days after the Kemp email
was sent, Plaintiff received his notice of termination.
(<u>Id.</u> ¶ 42.)  Plaintiff now alleges and seeks compensation
from Defendants for: (1) Breach of Contract, (2) Fraudulent
Inducement, and (3) Promissory Fraud.  Defendants move to
dismiss under Rule 12(b)(6) of the Federal Rules of Civil
Procedure.

**2.**

Under Rule 12(b)(6) a complaint will be dismissed if
there is a "failure to state a claim upon which relief can
be granted." Fed. R. Civ. P. 12(b)(6).  The Court must read
the complaint generously, accepting the truth of and
drawing all reasonable inferences from well-pleaded factual
allegations. <u>See</u> <u>York v. Ass'n of Bar of City of New York</u>,
286 F.3d 122, 125 (2d Cir. 2002); <u>see</u> <u>also</u> <u>Mills v. Polar</u>
<u>Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993).  A
court should dismiss a complaint only "if 'it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Valmonte v. Bane, 18 F. 3d 992, 998 (2d Cir. 1994)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Jenkins v. McKeithen, 395 U.S. 411, 422 (1969) (citation omitted). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Atsi Communications, Inc. v. Shaar Fund Ltd., 493 F.3d 87 (2d Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)).

### 3.

Defendants move to dismiss Plaintiff's causes of action for breach of contract based upon his termination "prior to the development and rollout of AON's [sic] proprietary end-to-end software solutions." (Compl. ¶ 45.) Plaintiff contends that his termination constitutes a breach of the employment agreement between himself and Defendants, as well as a breach of Defendants' stated policies and procedures regarding the "reporting of wrongful activities and procedures," which Plaintiff argues was also a contract between himself and Defendants. (Id. ¶¶ 45, 50, 52.) First, the Court will consider Plaintiff's claim that Defendants' breached the terms of their

employment agreement.

**3a.**

Relevant case law dictates that an at-will employee, i.e., one whose employment can be terminated at any time, cannot maintain a claim for breach of contract. Chimarev v. TD Waterhouse Investor Services, Inc., 280 F.Supp.2d 208, 216 (S.D.N.Y. 2003)(citations omitted).; see also Minton v. Lenox Hill Hosp., 160 F.Supp.2d 687, 699 (S.D.N.Y. 2001) (an at-will employee cannot maintain a breach of contract claim).  Such an employee confirms his or her at-will status by signing an employment agreement "which explicitly indicate[s] that the terms of his employment were at-will." Chimarev, 280 F.Supp.2d 208 at 216.

Additionally, even without a signed agreement affirming at-will employment, New York law states that an indefinite period of employment "is presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason." Lobosco v. New York Telephone Company/NYNEX, 96 N.Y.2d 312, 316 (N.Y. 2001)(citation omitted).  Courts have only found exceptions where a Plaintiff can show that there was reliance upon an "express written policy limiting the right of discharge." Id. (emphasis added).

In the instant litigation Plaintiff signed an

employment offer letter from Defendants on November 9,
2006. (<u>See</u> Galletti Aff., Ex. B.)  The offer letter reads
in pertinent part:

> Nothing in this letter is intended or should be
> construed as a contract of guarantee of indefinite
> employment.  Employment with Aon Consulting is for no
> specified period and constitutes at-will employment.
> As a result, you are free to resign at any time, for
> any reason or for no reason.  Similarly, the Company
> is free to conclude its employment relationship with
> you at any time, for any reason or for no reason.

(<u>Id.</u>)

By signing this letter, Plaintiff agreed to the terms
therein – including his status as an at-will employee of
Defendants.  Further, even without this offer letter, in
the absence of a written agreement specifying the length of
employment, Plaintiff is presumed to be an at-will employee
who may be terminated at any time.  <u>See</u> <u>Chimarev</u>, <u>supra</u>, at
216.

Here, Plaintiff does not rely upon a written
agreement.  Instead, he cites an alleged oral agreement
that he would be guaranteed employment with Defendants "at
least until AON [sic] rolled out its end-to-end proprietary
software solution and obtained the dominant market leading
position in e-discovery software solutions." (Compl. ¶ 27.)
This reliance is problematic primarily because oral
assurances are insufficient to alter an employee's at-will

status.  See Cucchi v. NYC Off-Track Betting Corp., 818 F.Supp. 647, 652 (S.D.N.Y. 1993); Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329 (N.Y. 1987).

Moreover, the offer letter signed by Plaintiff contained a merger clause[4] stating that "this letter supercedes any prior representations or agreements between you and Aon Consulting, whether written or oral." (Galletti Aff., Ex. B (emphasis added).)  By signing the offer letter, Plaintiff explicitly agreed to forfeit any prior oral agreement between himself and Defendants.

Finally, the parol evidence rule expressly forbids any consideration of "evidence of a contemporaneous or prior oral agreement that modifies or contradicts the terms of an integrated written agreement. A 'contract which appears complete on its face is an integrated agreement as a matter

---

[4] Plaintiff argues that any reference to the merger clause and other "extraneous documents" is "beyond the scope of the instant application." (Pl. Opp. Brief 7.)  This argument, however, is unsubstantiated as the merger clause is contained within the employment agreement, precisely the document upon which Plaintiff's breach of contract claim is based, and is therefore integral to the present case.
    Along these lines, the Second Circuit noted that "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2nd Cir. 1995). "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration [includes]...documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit," even if they are not attached to complaint. Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993).

of law.'" Kempf v. Mitsui Plastics, Inc., 1996 WL 673812,

*7 (S.D.N.Y. 1996)(citations omitted).  The offer letter

signed by Plaintiff and outlining the terms of his

employment with Aon, appears complete on its face and

therefore constitutes an integrated agreement between the

parties.  As such, any prior oral agreement between them is

effectively barred in accordance with the parol evidence

rule.

In light of the foregoing, Defendants' motion to

dismiss Plaintiff's breach of contract claim, based upon

the employment agreement between the parties, is hereby

granted.

### 3b.

Next, the Court will examine Plaintiff's claim that

his termination breached Defendants' stated employment

policies. In bringing this claim, Plaintiff relies upon the

whistleblower language in Aon's "Code of Business Conduct":

"Aon strictly prohibits retaliating against someone for

making a good faith report of an ethical or legal concern.

In many instances retaliation is against the law."

(Galletti Aff., Ex. E at 5.) Plaintiff asserts that his

termination as an Aon employee was in direct retaliation

for his reporting of Jerry Barbanel's alleged ethical

violations and, additionally, for his refusal to engage in

similar behavior. (Compl. ¶ 53.)  He further contends that

this retaliation was a violation of Aon's stated policy

language, that this language constituted a contract between

himself and Defendants, and that his termination is

therefore tantamount to a breach of contract on the part of

Defendants. (See Galletti Aff., Ex. E at 5.; Compl. ¶¶ 52,

53.)

New York law specifies that a plaintiff may maintain a

breach of contract claim by demonstrating that a company

policy exists that <u>expressly</u> limits an employer's right to

terminate an at-will employee.

'An employee may recover ... by establishing that the
employer made the employee aware of its express written
policy limiting its right of discharge and that the
employee detrimentally relied on that policy in accepting
the employment.' <u>De Petris v. Union Settlement Assoc.</u>, 633
N.Y.S.2d 274, 276(1995). Where the employee can prove each
of these elements-the existence of an 'express written
policy' and detrimental reliance upon that policy-'the
employee in effect has a contract claim against the
employer.' <u>Id.</u> We have explained that under New York law,
'in determining whether [the presumption of employment at
will] is overcome, the trier of the facts will have to
consider the totality of the circumstances, including the
writings, the situation, the course of conduct of the
parties and their objectives.' <u>Jones v. Dunkirk Radiator
Corp.</u>, 21 F.3d 18, 22 (2d Cir. 1994).


<u>Marfia v. T.C. Ziraat Bankasi</u>, 147 F.3d 83, 87-88 (2d Cir.

1998).  A whistleblower provision does serve to limit an

employee's at-will status.  See <u>Brady v. Calyon Securities

(USA)</u>, 406 F.Supp.2d 307, 317 (S.D.N.Y. 2005).  In

determining whether such a limit is sufficient to overcome
the presumption of at-will status, the existence of any
disclaimer language can be controlling. In <u>Baron v. Port
Authority of New York and New Jersey</u>, the Second Circuit
determined that:

> [T]he disclaimers at the front of both the Port
> Authority Guidebook and the PAIs expressly and
> specifically disavow any intent on the Port
> Authority's part to accept contractual limitations on
> its rights as an at-will employer ... These
> disclaimers plainly convey the Port Authority's
> intention that the provisions in the Guidebook and
> PAIs are non-binding. No understanding by the
> plaintiffs to the contrary would have been objectively
> reasonable.

271 F.3d 81, 85 -86 (2d Cir. 2001).

<u>Lobosco v. New York Telephone Company/NYNEX</u> , 96
N.Y.2d 312, 316 (N.Y. 2001), is a New York Court of Appeals
decision that is directly on point.  In that case, the
plaintiff brought a breach of contract claim against his
employer, citing his reliance upon a provision in the
employee manual and asserting that this language created a
contractual obligation, thereby altering his employee at-
will status.  The Court of Appeals explicitly disagreed
with the plaintiff's argument, particularly because of the
existence of disclaimer language:

> Routinely issued employee manuals, handbooks and
> policy statements should not lightly be converted into
> binding employment agreements ... It would subject
> employers who have developed written policies to

liability for breach of employment contracts upon the mere allegation of reliance on a particular provision. Clearly that cannot be, especially in light of conspicuous disclaiming language. An employee seeking to rely on a provision arguably creating a promise must also be held to reliance on the disclaimer.

Id. at 317.

In the present case, Plaintiff relies upon the whistleblower language in Aon's "Code of Business Conduct." In so doing, he must also rely upon any disclaimer language contained within the same. The "Code of Business Conduct" expressly forbids the creation of any contractual obligation, based upon the language of the Code itself: "[I]t is very important to note that this Code is not a contract of employment and does not create any contractual rights between Aon and any employees." (Galletti Aff., Ex. E at 3.) Plaintiff's reliance upon the whistleblower provision cannot be considered objectively reasonable, particularly because of the disclaimer within the same document that clearly expresses Defendants' intention that it not be taken as a binding, contractual agreement.

In light of the foregoing, Defendants' motion to dismiss Plaintiff's breach of contract claim, based upon the whistleblower provision in Aon's "Code of Business Conduct," is hereby granted.

**4.**

Plaintiff also brings a claim of fraudulent inducement against Defendants.  In his complaint, Plaintiff specifies that he "detrimentally relied on Defendants' fraudulent statements and misrepresentations and has lost commissions . . . [and his] nationally renowned reputation and standing within the e-discovery market place has been damaged and impaired..." (Compl. ¶ 57.)

### 4a.

Defendants argue that Plaintiff's claim cannot be sustained because it is merged within Plaintiff's breach of contract claim and thereby barred.  (Defs.' Br. 14-15.) "As a general rule, 'no cause of action for fraud is stated or exists where the only fraud charged relates to a breach of the employment contract.' However, as plaintiff points out, New York courts allow a litigant simultaneously to maintain a fraud and a breach of employment contract claim provided he either: '(i) demonstrate[s] a legal duty separate from the duty to perform under the contract ... or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract.'" Alter v. Bogoricin, 1997 WL 691332, *9 (S.D.N.Y. November 6, 1997)(citations omitted).  By definition, a collateral agreement "is one that is extraneous to the terms of the contract." Id.  The Second Circuit held in Stewart v.

<u>Jackson & Nash</u>, that "the plaintiff had stated a claim for fraud because the alleged fraud went to the inducement of the contract, not its breach.  There, [...] the false representations related not to the firm's intent to perform under an employment contract, but to opportunities beyond the scope of the contract that induced the plaintiff to enter into the contract."  <u>Saleemi v. Pencom Systems Inc.</u>, 2000 WL 640647, *5 (S.D.N.Y. May 17, 2000)(citing <u>Stewart v. Jackson & Nash</u>, 976 F.2d 86, 88-89 (2d Cir. 1992).

The facts of the <u>Stewart</u> case are directly on point with those of the instant litigation.  Here too, Plaintiff's fraudulent inducement claim refers to representations made regarding the development of Defendants' software, and alleges that these statements induced him to sign an employment contract. Plaintiff's claim does not relate to the terms of the contract itself, and as such, is considered "collateral" and survives this initial inquiry.[5]

---

[5] Contrary to Defendants' argument, the existence of a merger clause is not, on its face, a bar to Plaintiff's claim. (<u>See</u> Defs.' Br. 15.)  In order to be an outright bar to a fraudulent inducement claim, the merger clause must specify <u>which</u> oral representations it intends to bar liability for.  (<u>See</u> <u>Hakker v. Stratus Computer, Inc.</u>, 1996 WL 434565, *4 (S.D.N.Y. August 2, 1996); <u>see also</u> <u>Wurtsbaugh v. Banc of America Securities LLC</u>, 2006 WL 1683416 (S.D.N.Y. June 20, 2006). General merger clauses, such as the one referenced in the present case, do not in and of themselves bar these claims.

Also, Plaintiff relies upon statements of present fact and not future promises or puffery, as Defendants claim. (<u>See</u> Defs.' Br. 16-19.) The statements relied upon by Plaintiff bear striking similarity

**4b.**

Defendants contend that Plaintiff failed to adequately allege his fraudulent inducement claim, both under New York law, and under the heightened pleading requirement established under Federal Rule of Civil Procedure 9(b). The Court finds that Plaintiff met his burden with respect to both the federal and state law requirements.

Under New York law a plaintiff must successfully allege "(1) a knowingly false representation of a material fact and (2) detrimental reliance thereon. The false representation can be either a misrepresentation or the material omission of a fact. Reliance means 'reasonable' reliance." Wurtsbaugh v. Banc of America Securities LLC, 2006 WL 1683416, *6 (S.D.N.Y. June 20, 2006)(citation omitted). Plaintiff successfully meets this burden within Paragraphs 24, 25, 27, and 29 of his complaint. He provides specific statements made by Barbanel, alleges that Defendants knew that these statements were false, acknowledges reliance upon these statements, and indicates how this reliance proved detrimental to his career. (See Compl. ¶¶ 24, 25, 27, 29.) Plaintiff has adequately alleged a fraudulent inducement claim under New York law.

---

to the statements relied upon in Stewart (wording in both refers to work reportedly in progress or currently in the process of being completed, and not to future activities), and therefore, is likewise sustainable. (See Stewart at 89.)

The Federal Rules require that "[t]o satisfy Rule 9(b), a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Hirsch v. Columbia University, College of Physicians and Surgeons, 293 F.Supp.2d 372, 381 (S.D.N.Y. 2003)(quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993)). In addition to specifying the statements made, Plaintiff identified the speaker as Jerry Barbanel of Aon and provided that the statements were made in Aon's New York office in October of 2006. (Compl. ¶ 23.) He goes on to allege that the statements were fraudulent because, inter alia, Defendants had not yet commenced the development of the e-discovery software and because they were selling instead, a repackaged version of an already existing software package. (Compl. ¶ 30.) This Court finds that Plaintiff has adequately alleged his fraudulent inducement claim with respect to Federal Rule 9(b), as well.

## 4c.

Defendants also argue that Plaintiff will be unable to establish that his reliance upon the oral representations made by Jerry Barbanel was reasonable. (See Defs.' Br. 21-

22.) "In the appropriate circumstances, a claim of fraud may be dismissed on the pleadings because as a matter of law a plaintiff will not be able to establish that reliance on the alleged representation was reasonable." Wurtsbaugh v. Banc of America Securities LLC, 2006 WL 1683416, *6 (S.D.N.Y. June 20, 2006).

For various reasons, New York courts are typically reluctant to consider a plaintiff's reliance upon oral communications reasonable.

> When plaintiffs are sophisticated parties and the statement or omission relates to a business transaction that has been formalized in a contract, New York courts are generally reluctant to find reliance on oral communications to be reasonable. This reluctance stems from the view that "a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament."

Id. (quoting Emergent Capital Inv. Mgmt. LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003)).

Further, though not an outright bar to such a claim, the existence of a merger clause does increase a court's reluctance to determine that a plaintiff reasonably relied on an oral representation. "[T]he Merger Clause reflects the parties' intention to make the Agreement comprehensive, and further undermines as a matter of law the reasonableness of plaintiffs' asserted reliance on oral representations." Wurtsbaugh at *7 (quoting Harsco Corp. v.

_Segui_, 91 F.3d 337, 343 (2d Cir. 1996)); _see also_ _Montchal_
_v. Northeast Savings Bank_, 243 A.D.2d 452 (N.Y.App. Div.
1997)("the purported vague and speculative assurances
allegedly made by a representative of the defendant are
patently insufficient to sustain the cause of action
sounding in fraudulent inducement, especially in view of
the plaintiff's written disclaimer of reliance upon any
oral representations or promises regarding the conditions
of his employment").

        In spite of the fact that Plaintiff successfully
alleged his fraudulent inducement claim against Defendants,
based upon New York case law, he would be unable to
establish that he reasonably relied upon the oral
representations made by Jerry Barbanel. Plaintiff, by his
own admission, is an attorney, and therefore is considered
a sophisticated party within the eyes of this Court.
(Compl. ¶ 10.) As a sophisticated party he entered into a
formal agreement with Defendants.  What is more, the
existence of the merger clause communicates an intention
among the parties that the employment contract was to be
controlling, and Plaintiff is deemed to have signed the
document with this intent.  As such, Plaintiff's claim must
be dismissed.

In light of the foregoing, Defendants' motion to dismiss Plaintiff's fraudulent inducement claim is hereby granted.

**5.**

Plaintiff brings a promissory fraud claim against Defendants. (Compl. ¶¶ 59-63.)  Under New York law, "in order to state a claim for promissory fraud, it must be alleged that the 'promisor, at the time of making certain representations, lacked any intention to perform them.'" Clarence Beverage, Inc. v. BRL Hardy (USA), Inc., 2000 WL 210205, *3 (W.D.N.Y. February 8, 2000)(citation omitted). In order to survive a motion to dismiss, a plaintiff must set out <u>specific facts</u> in his complaint demonstrating that defendants never intended to make good on any of the promises made.  See <u>L-3 Communications Corp. v. OSI Systems, Inc.</u>, 2004 WL 42276, *4 (S.D.N.Y. January 8, 2004); <u>see also</u> <u>Leve v. Franklin Capital Corp</u>., 2003 WL 446807, *5 (S.D.N.Y. February 25, 2003)("The amended complaint sufficiently alleges promissory fraud, as it alleges that defendants fraudulently promised to pay a total purchase price of $4.5 million when they had no intention of performing the promise."). In <u>Clarence Beverage, Inc. v. BRL Hardy (USA), Inc.</u>, the District Court

noted that "[i]t [is] worth repeating here that, when considering a motion to dismiss, all factual allegations contained in the Amended Complaint are presumed to be true and such will only be dismissed if it appears beyond doubt that no set of facts in support of Clarence's claim will entitle it to relief.  The facts alleging promissory fraud satisfy this liberal standard." 2000 WL 210205 at *3.

In the present case, the Court finds that Plaintiff does sufficiently satisfy this liberal standard, based upon a review of the allegations made in his complaint.  First, Plaintiff cites the following representations made by Jerry Barbanel in October of 2006: (i) "Right now we [Defendants] have the best developers working on and completing our complete end-to-end e-discovery solutions"; (ii) "We [Defendants] are in the final stages of developing and completing a complete end-to-end proprietary e-discovery system ranging from data extraction to viewing to production"; (iii) "The proprietary software technology that we are developing right now will turn the industry on its ear and offer a completely integrated proprietary solution.  Within the next three months we will have the only true end-to-end solution in the industry"; and finally, after Plaintiff expressed concern regarding the delay in development, "No. no. no. I have guys working on

it as we speak and it will be done in three weeks." (Compl.
¶ 24.)  Next, Plaintiff alleges that each one of these
representations "were false and known by Jerry Barbanel to
be false at the time they were made."  (Id. ¶ 25.)

Further, Plaintiff provides specific facts within his
complaint establishing that Defendants had no intention of
actually following through with the statements made by
Barbanel.  These facts are that: Defendants "had not yet
commenced the development and programming of the
proprietary software systems represented by Jerry
Barbanel"; Defendants "had not yet even approved the
allocation of funds and resources for the development and
completion of [Defendants'] own proprietary e-discovery
software solutions"; "At conferences and roll-out parties,
[Defendants'] executives misrepresented to current and
prospective customers that [Defendants] developed
proprietary e-discovery software when, in fact, the
software being offered was rebranded software already
commonly available and utilized within the industry"; "In
many instances Jerry Barbanel instructed Plaintiff and
other employees to lie to customers about the proprietary
nature of [Defendants'] software and never admit that
[Defendants'] software was simply rebranded third-party
applications"; and "at the time of offering [Defendants'] E

Docs (a rebranded copy of File Control) Jerry Barbanel and [Defendants] had yet to secure the required license to even utilize File Control." (<u>Id.</u> ¶¶ 30, 33.)

By alleging that Defendants <u>knowingly</u> made false representations to Plaintiff, and by alleging specific facts which, if true, demonstrate repeatedly unethical and dishonest conduct on the part of Defendants (including the sale of a product created by another entity under its own name, while making no effort to give that entity credit or to create its own e-discovery product), Plaintiff has sufficiently met the liberal standard necessary to survive a motion to dismiss.

In light of the foregoing, Defendants' motion to dismiss Plaintiff's promissory fraud claim is hereby denied.

6.

Based upon the foregoing analysis, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to Plaintiff's Breach of Contract and Fraudulent Inducement claims; it is DENIED with respect to Plaintiff's Promissory Fraud claim.


SO ORDERED.



Dated: November 30 , 2007

Lawrence M. McKenna
U.S.D.J.


24