UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                        :
DANIEL JUNK,                                            :
                                                        :
                              Plaintiff,                :
                                                        :    No. 07-CIV-4640 (LMM) (GWG)
              - against -                               :
                                                        :
AON CORP., AON SERVICE CORPORATION and                  :
AON CONSULTING, INC.,                                   :    **ANSWER TO COMPLAINT**
                                                        :
                              Defendants.               :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

       Defendants Aon Corp., Aon Service Corp., and Aon Consulting, Inc. (collectively "Aon"), by and through their attorneys, Winston & Strawn LLP, as and for their answer to the Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

       1.     Paragraph 1 of the Complaint is a summary of the claims asserted by Plaintiff and contains legal conclusions rather than allegations of fact to which no response is required. In a Memorandum and Order dated November 30, 2007, this Court dismissed Counts I, II and III of the Complaint (the "Dismissal Order"). As such, a response to the allegations set forth in Paragraph 1, to the extent they relate to Counts I, II and III, is not required. To the extent, however, that a response is required, Aon denies the allegations set forth in Paragraph 1 of the Complaint.

## THE PARTIES

       2.     Aon denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint.

       3.     Aon admits the allegations set forth in Paragraph 3 of the Complaint.

4.      Aon denies the allegations set forth in Paragraph 4 of the Complaint.

5.      Aon admits the allegations set forth in Paragraph 5 of the Complaint.

6.      Aon denies the allegations set forth in Paragraph 6 of the Complaint, except admits that defendant Aon Consulting, Inc. ("Aon Consulting") has a principal place of business located in New York.

7.      Aon denies the allegations set forth in Paragraph 7 of the Complaint, but admits that Aon Consulting is an indirect subsidiary of Aon Corp.

## JURISDICTION AND VENUE

8.      Aon admits that this Court has jurisdiction of this action.

9.      Aon admits that this action is properly venued in this Court.

## THE PLAINTIFF, AON AND THE ELECTRONIC DISCOVERY MARKET

10.      Aon denies having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of the Complaint.

11.      Aon denies having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11 of the Complaint.

12.      Aon denies having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint.

13.      Aon denies having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of the Complaint.

14.      Aon denies the allegations set forth in Paragraph 14 of the Complaint, except admits that Aon Corp., directly and/or through its various subsidiaries and affiliates, is engaged, among other things, in the insurance, risk assessment and management consultant industries.

15.      Aon denies the allegations set forth in Paragraph 15 of the Complaint.

16.     Aon denies the allegations set forth in Paragraph 16 of the Complaint, except admits that it hired Jerry Barbanel and other employees who formerly worked at Kroll, Inc.

17.     Aon denies the allegations set forth in Paragraph 17 of the Complaint, except admits that Kroll, Inc. and Kroll Associates, Inc. commenced a lawsuit against Aon Consulting, Roger Seifert and Jerry Barbanel.

### AON'S FRAUDULENT STATEMENTS AND MISREPRESENTATIONS AND PLAINTIFF'S EMPLOYMENT AND WRONGFUL TERMINATION

18.     Aon denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint.

19.     Aon denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Complaint.

20.     Aon denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20 of the Complaint, except admits that Jerry Barbanel is an executive vice president of Aon Consulting and was formerly employed by Kroll, Inc.

21.     Aon admits that it issued a press release on or about May 22, 2006, in which Mr. Barbanel is quoted, in part, in the manner set forth in Paragraph 21 of the Complaint.

22.     Aon denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of the Complaint.

23.     Aon denies the allegations set forth in Paragraph 23 of the Complaint, except admits that Mr. Barbanel met with Plaintiff at Aon's offices located at 55 East 52nd Street, New York, New York during the fall of 2006.

24.     Aon denies the allegations set forth in Paragraph 24 of the Complaint.

25.     Aon denies the allegations set forth in Paragraph 25 of the Complaint.

26.     Aon denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the Complaint, except admits that Plaintiff accepted employment with Aon Consulting and denies that any misrepresentations were made to Plaintiff by Mr. Barbanel.

27.     Aon denies the allegations set forth in Paragraph 27 of the Complaint, except admits that Plaintiff's annual base salary was set at $200,000, and that additional compensation was to be awarded based upon a formula set forth in Plaintiff's offer of employment letter, dated November 7, 2006 (the "Employment Letter").

28.     Aon denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28, except admits that Plaintiff accepted employment with Aon on or about November 9, 2006.

29.     Aon denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29, except denies that any misrepresentations or promises were made by Aon or that Plaintiff relied upon them to his detriment.

30.     Aon denies the allegations set forth in Paragraph 30 of the Complaint.

31.     Aon denies the allegations set forth in Paragraph 31 of the Complaint, except admits that pursuant to a license agreement with File Control Partners, Aon Consulting sold e-discovery software created for Aon by File Control under the name Aon E-Docs and that there was an event involving Aon Consulting's E-Discovery Practice Group, among others, in Los Angeles, California during December 2006.

32.     Aon denies the allegations set forth in Paragraph 32 of the Complaint.

33.     Aon denies the allegations set forth in Paragraph 33 of the Complaint.

34.     Aon denies the allegations set forth in Paragraph 34 of the Complaint.

35.     Aon denies the allegations set forth in Paragraph 35 of the Complaint.

36.     Aon denies the allegations set forth in paragraph 36 of the Complaint, except admits that Lee Curtis spoke with Plaintiff in or around March 2007.

37.     Aon denies the allegations set forth in Paragraph 37 of the Complaint.

38.     Aon denies the allegations set forth in Paragraph 38 of the Complaint, except admits that Michael Gulotta met with Plaintiff in early April 2007.

39.     Aon denies the allegations set forth in Paragraph 39 of the Complaint, except admits that Anne Kemp sent an email to certain Aon employees and that she later forwarded her email to Plaintiff.

40.     Aon denies the allegations set forth in Paragraph 40 of the Complaint.

41.     Aon denies the allegations set forth in Paragraph 41 of the Complaint, except admits that Plaintiff spoke with Steve Britton regarding the email Plaintiff had received from Anne Kemp.

42.     Aon admits the allegations set forth in Paragraph 42 of the Complaint.

43.     Aon denies the allegations set forth in Paragraph 43 of the Complaint.

### <u>COUNT I</u>
(Breach of Contract—Employment Agreement)

44.     In response to Paragraph 44 of the Complaint, Aon repeats, reiterates and re-alleges each and every response set forth in Paragraphs 1 through 43 of this Answer, as if fully set forth herein.

45.     Aon respectfully declines to respond to the allegations set forth in Paragraphs 45 through 48 of the Complaint for the reasons set forth in this Court's Dismissal Order.

**COUNT II**
(Breach of Contract—Stated Employment Agreement)

46.    In response to Paragraph 49 of the Complaint, Aon repeats, reiterates and re-alleges each and every response set forth in Paragraphs 1 through 45 of this Answer, as if fully set forth herein.

47.    Aon respectfully declines to respond to the allegations set forth in Paragraphs 50 through 54 of the Complaint for the reasons set forth in this Court's Dismissal Order.

**COUNT III**
(Fraudulent Inducement)

48.    In response to Paragraph 55 of the Complaint, Aon repeats, reiterates and re-alleges each and every response set forth in Paragraphs 1 through 47 of this Answer, as if fully set forth herein.

49.    Aon respectfully declines to respond to the allegations set forth in Paragraphs 56 through 58 of the Complaint for the reasons set forth in this Court's Dismissal Order.

**COUNT IV**
(Promissory Fraud)

50.    In response to Paragraph 59 of the Complaint, Aon repeats, reiterates and re-alleges each and every response set forth in Paragraphs 1 through 49 of this Answer, as if fully set forth herein.

51.    Aon denies the allegations set forth in Paragraph 60 of the Complaint.

52.    Aon denies the allegations set forth in Paragraph 61 of the Complaint, except admits that Plaintiff accepted employment with Aon.

53.    Aon denies the allegations set forth in Paragraph 62 of the Complaint.

54.    Aon denies the allegations set forth in Paragraph 63 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

55.    The Complaint fails to state a claim against Aon.

### SECOND AFFIRMATIVE DEFENSE

56.    Plaintiff's claim is barred by the statute of frauds.

### THIRD AFFIRMATIVE DEFENSE

57.    Plaintiff's claim is barred by the terms of Plaintiff's Employment Letter.

### FOURTH AFFIRMATIVE DEFENSE

58.    Plaintiff's claim is barred by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

59.    Plaintiff's claim is barred by the doctrine of laches and/or estoppel.

### SIXTH AFFIRMATIVE DEFENSE

60.    Plaintiff's claim is barred by the doctrine of waiver.

### SEVENTH AFFIRMATIVE DEFENSE

61.    To the extent that Plaintiff's claim is based upon information that has been lost, destroyed, stolen or otherwise unavailable due in whole or in part to Plaintiff's conduct including, but not limited to, Plaintiff's handling of the laptop computer, printer and/or other Aon property, such claim should be stricken.

### EIGHTH AFFIRMATIVE DEFENSE

62.    The complained-of statements, in whole or in part, are non-actionable puffery.

### NINTH AFFIRMATIVE DEFENSE

63.    The complained-of statements, in whole or in part, are statements of opinion.

### TENTH AFFIRMATIVE DEFENSE

64.     Plaintiff has not suffered any injury or damage as a direct and proximate result of any act or omission of Aon.  Rather, to the extent that Plaintiff has lost customers and/or commissions, such losses are due to factors and events over which Aon had no control and/or were due to factors attributable solely to Plaintiff.

### ELEVENTH AFFIRMATIVE DEFENSE

65.     Plaintiff's claim fails to allege special damages.

### TWELFTH AFFIRMATIVE DEFENSE

66.     Defendants have insufficient knowledge or information upon which to form a belief as to whether there may be additional affirmative defenses available to them, and therefore reserve the right to assert such additional defenses.

### AON'S COUNTERCLAIMS

### Factual Background

A.     Plaintiff's Employment

1.     During the fall of 2006, Plaintiff submitted an application for employment in which Plaintiff sought a position as a business developer with Aon Consulting.  A copy of Plaintiff's application is attached hereto as Exhibit A.  In his application, Plaintiff represented, among other things, that he had obtained a law degree from New York Law School and had worked for approximately seven years as an associate with the New York law firm of Simpson, Thacher & Bartlett.

2.     During the fall of 2006, Mr. Barbanel met with Plaintiff to discuss Plaintiff's candidacy for a business development position with Aon Consulting.

8

3.      During Plaintiff's meeting with Mr. Barbanel, Plaintiff reiterated the representations made in his application which, among other things, were that he had obtained a law degree from New York Law School and had worked for many years as an associate with the New York law firm of Simpson, Thacher & Bartlett.

4.      During Plaintiff's meeting with Mr. Barbanel, Plaintiff also represented that he had several years of experience and had held various business development positions with a number of firms in the electronic discovery and litigation support industries.

5.      During Plaintiff's meeting with Mr. Barbanel, Plaintiff further represented that he had a book of business which generated fees of at least $10 million.

6.      In reliance upon the various representations made by Plaintiff in his employment application, and to Mr. Barbanel during his meeting with Plaintiff in the fall of 2006, and in other communications between and/or among Plaintiff, Mr. Barbanel and others, Aon Consulting offered Plaintiff a business development position with Aon Consulting at a base salary of $175,000 per year.

7.      Upon information and belief, Plaintiff rejected Aon Consulting's initial offer because he believed that the compensation offered was inadequate, particularly given the $10 million or more worth of business Plaintiff represented that he had and would generate if he were employed as a business developer by Aon Consulting.

8.      Upon further consideration of the matter and in further reliance upon Plaintiff's representations concerning his prior employment experience and his $10 million or more worth of business, Aon Consulting offered to pay Plaintiff base compensation of $200,000 per year, along with generous sales commissions and a signing bonus of $25,000.

9.      The terms of Aon Consulting's offer are set forth in an offer of employment letter addressed to Plaintiff, dated November 7, 2006 (the "Employment Letter"), a copy of which is attached hereto as Exhibit B.

10.     On or about November 9, 2006, Plaintiff executed the Employment Letter, agreeing to the terms of employment proposed by Aon Consulting.

11.     Pursuant to the Employment Letter, Plaintiff agreed, among other things, to return the $25,000 signing bonus in the event that Aon were to terminate him within the first year of his employment.

12.     On or about November 20, 2006, Plaintiff commenced work with Aon Consulting.

13.     At or about the same time, in mid-November 2006, Plaintiff executed a Non-Solicitation Agreement, a copy of which is attached hereto as Exhibit C.

14.     Pursuant to the Non-Solicitation Agreement, Plaintiff agreed, among other things, that upon the termination of his employment, he would not disclose or use any trade secrets or confidential or proprietary information relating to the business of Aon of which Plaintiff became aware by reason of his employment by Aon Consulting.

15.     In addition, pursuant to the Non-Solicitation Agreement, Plaintiff agreed that "[a]ll records and equipment and other materials relating in any way to any confidential information relating to [Aon's] clients or . . .business" "shall be and remain the sole property of [Aon] during and after the end of employment."

16.     Plaintiff further agreed, pursuant to the Non-Solicitation Agreement, that upon the termination of his employment, he would "promptly return to [Aon Consulting] all materials and

all copies or tangible embodiments of materials involving any confidential information in [Plaintiff's] possession or control."

17.    Also on or about the same time in mid-November 2006, Plaintiff executed a Confidentiality Agreement pursuant to which Plaintiff also agreed not to disclose to third parties any confidential and proprietary information (as defined therein) to which he had access during the course of his employment with Aon Consulting.  A copy of the Confidentiality Agreement is attached hereto as Exhibit D.

18.    Plaintiff also agreed, pursuant to the Confidentiality Agreement, not to "remove any documents from the office or premises of Aon Consulting for any purpose other than for a purpose directly related to the business of Aon Consulting and within the scope of [Plaintiff's] employment with Aon Consulting."

19.    In addition, pursuant to the Confidentiality Agreement, Plaintiff agreed "that all materials and things embodying or reflecting [confidential and proprietary information (as defined therein)] are the sole property of Aon Consulting and its Aon affiliates."

20.    Plaintiff further agreed, pursuant to the Confidentiality Agreement, that "[u]pon the termination of [Plaintiff's] employment with Aon Consulting," Plaintiff would "immediately deliver to Aon Consulting all the materials and things embodying any of the [confidential and proprietary information (as defined therein)] disclosed to [Plaintiff] in the course of [his] employment" and neither "retain any copies or reproductions thereof" nor "dispose of any such materials and things or copies or reproductions thereof to any third party."

21.    During the course of his employment with Aon Consulting, Plaintiff was provided by Aon Consulting with, among other things, a laptop computer and printer for the purpose of conducting business on behalf of Aon.

22.    In addition, during the course of his employment by Aon Consulting, Plaintiff was provided access to confidential and proprietary information including, but not limited to, information concerning Aon's clients, prospective clients and products, Aon's internal records, systems, policies, practices and procedures, as well as Aon's financial, pricing and cost information.

B.    Plaintiff's Termination

23.    In January 2007, Plaintiff was invited to represent Aon Consulting at an electronic discovery and litigation technology conference being sponsored by Lex Mundi and held in Barbados in early February 2007.

24.    Plaintiff agreed to attend the Lex Mundi conference on behalf of Aon Consulting and on or about January 31, 2007, traveled to Barbados for the purpose of attending the conference.

25.    Plaintiff's wife accompanied him on the trip to Barbados and stayed with Plaintiff at the hotel where the Lex Mundi conference was being held.

26.    Aon Consulting paid for the cost of Plaintiff's air fare, hotel and incidental travel expenses.  Aon Consulting also paid a conference registration fee on behalf of Plaintiff which included, among other things, the cost of Plaintiff's meals during his stay.

27.    Following Plaintiff's return from the Lex Mundi conference, Plaintiff submitted expense reports seeking reimbursement for various business expenses that Plaintiff allegedly incurred while attending the Lex Mundi conference.

28.    Among the items for which Plaintiff sought reimbursement were several meals that had already been paid for by Aon Consulting as part of Plaintiff's conference registration fee.

29.    When Plaintiff was questioned about his expense reports from the Lex Mundi conference, he advised Aon Consulting that he had purchased several additional meals because those provided at the conference were inadequate.

30.    When Aon Consulting requested copies of Plaintiff's receipts in order to verify the nature of the charges, Plaintiff claimed that he did not have them.  Upon further inquiry and discussion, Plaintiff ultimately agreed to send a letter to the Barbados hotel in which he and his wife had stayed, authorizing the hotel to furnish Aon Consulting with a copy of the hotel bill and receipts reflecting charges incurred by Plaintiff during his stay.

31.    On or about April 13, 2007, Aon Consulting received from the Barbados hotel copies of the hotel bill issued to Plaintiff and receipts for the various charges reflected on the Plaintiff's bill.

32.    The receipts revealed that many of the expenses for which Plaintiff sought reimbursement from Aon Consulting were meals for two people and/or were room service charges for meals that had been signed for by Plaintiff's wife.

33.    Plaintiff did not have permission from anyone at Aon to obtain reimbursement of any expenses incurred during the trip for or on behalf of his wife.

34.    Aon's Travel & Expense Policy ("T&E Policy") provides that travel expenses for a spouse or family member accompanying an employee are "non-reimbursable" unless "approved in advance" by the business unit CFO.  The T&E Policy further provides that "in all other situations," "[e]mployees are expected to segregate and document personal reimbursable expenses from those relating to the family member(s)."

35.    Aon's T&E Policy also provides that a failure to comply with such Policy "and/or falsifying reimbursement requests may result in . . . [c]orrective action, up to and including termination of employment."

36.    On or about April 19, 2007, Plaintiff was terminated for violating Aon's T&E Policy due to his submission of false requests for reimbursement of expenses that were not incurred in connection with his business for Aon Consulting, but were incurred for and on behalf of his wife.

37.    At or about the same time, on April 19, 2007, Plaintiff was told that he would be sent packing materials via overnight mail which he should use to return to Aon Consulting his laptop computer, printer and any other Aon property then in his possession.

38.    On or about April 25, 2007, Plaintiff was sent via overnight mail, packing materials and return overnight mail address labels for his use in returning to Aon Consulting the Aon laptop computer, printer and any other Aon property then in his possession.

39.    By letter dated December 14, 2007, Plaintiff's counsel advised counsel for Aon that Plaintiff had returned the laptop computer to Aon Corp. "months ago" by "regular mail."

40.    Upon information and belief, Plaintiff has not returned to Aon Consulting the laptop computer, printer or any other Aon property in his possession at the time of his termination.

## FIRST COUNTERCLAIM
### (Declaratory Judgment—Signing Bonus)

41.    Aon repeats, reiterates and re-alleges the allegations set forth in Paragraphs 1 through 40 of its Counterclaims as if fully set forth herein.

42.    On or about March, 2007, Aon paid Plaintiff a $25,000 signing bonus.

43.     Pursuant to Plaintiff's Employment Letter, Plaintiff is required to return the $25,000 signing bonus to Aon in the event that Aon terminates Plaintiff for cause within the first year of employment.

44.     On or about April 19, 2007, Plaintiff was terminated for cause based upon Plaintiff's violations of Aon's T&E Policy.

45.     Notwithstanding the terms of his Employment Letter, Plaintiff has failed to return the $25,000 signing bonus to Aon.

46.     As a result of Plaintiff's conduct, Aon has suffered and continues to suffer harm for which it is entitled to an award of damages in an amount to be determined at trial but not less than $25,000.

## SECOND COUNTERCLAIM
### (Unjust Enrichment)

47.     Aon repeats, reiterates and re-alleges the allegations set forth in Paragraphs 1 through 46 of its Counterclaims as if fully set forth herein.

48.     By reason of Plaintiff's failure to return the $25,000 signing bonus paid to him by Aon, as is required pursuant to the terms of Plaintiff's Employment Letter, Plaintiff has been unjustly enriched.

49.     As a result of Plaintiff's wrongful conduct, Aon has suffered and continues to suffer harm for which it is entitled to an award of damages in an amount to be determined at trial, but not less than $25,000.

## THIRD COUNTERCLAIM
### (Promissory Fraud)

50.     Aon repeats, reiterates and re-alleges the allegations set forth in Paragraphs 1 through 49 of its Counterclaims as if fully set forth herein.

51.    Prior to receiving an offer of employment from Aon Consulting, Plaintiff represented to Mr. Barbanel, among others, that he had a book of business worth at least $10 million.

52.    Prior to receiving an offer of employment from Aon Consulting, Plaintiff represented in his employment application and, upon information and belief, to Mr. Barbanel, among others, that he had been employed for approximately seven years as an associate with the New York law firm of Simpson, Thacher & Bartlett.

53.    In reliance upon Plaintiff's representations that he had a book of business worth at least $10 million and/or had worked for approximately seven years as an associate with the New York law firm of Simpson, Thacher & Bartlett, Aon Consulting offered Plaintiff a business development position at a base salary of $200,000, plus sales commissions, and a signing bonus of $25,000.

54.    Upon information and belief, Plaintiff's representation that he had a book of business worth at least $10 million was false, in that, among other things, during the five month period that Plaintiff was employed by Aon Consulting, he generated nothing close to $10 million worth of business.

55.    Upon information and belief, Plaintiff's representation that he was an associate for approximately seven years with the New York law firm of Simpson, Thacher & Bartlett also was false, in that, among other things, Plaintiff was attending law school during a portion of the time he represented that he was an attorney.

56.    Upon information and belief, the representations made by Plaintiff concerning his $10 million or more worth of business and employment for approximately seven years as an

attorney at Simpson, Thacher & Bartlett were known by Plaintiff to be false at the time such representations were made.

57.     Upon information and belief, at the time Plaintiff made the representations concerning his $10 million or more worth of business, Plaintiff knew that he did not have and would not be able to generate at least $10 million worth of business for Aon Consulting.

58.     Upon information and belief, the representations made by Plaintiff concerning his $10 million or more worth of business and employment for approximately seven years as an associate at Simpson, Thacher & Bartlett were made for the purpose of inducing Aon to offer Plaintiff a business development position and a generous compensation package.

59.     Aon relied to its detriment upon Plaintiff's representations that he had a book of business worth at least $10 million and had been employed for approximately seven years as an associate with the New York law firm of Simpson, Thacher & Bartlett in that, among other things, Aon Consulting agreed to pay Plaintiff a generous compensation package and ceased interviewing additional candidates for the business development position ultimately filled by Plaintiff.

60.     Accordingly, as a direct and proximate result of Plaintiff's misrepresentations, Aon has suffered and continues to suffer harm for which it is entitled to an award of damages in an amount to be determined at trial.

## FOURTH COUNTERCLAIM
### (Breach of Contract—Non-Solicitation Agreement)

61.     Aon repeats, reiterates and re-alleges the allegations set forth in Paragraphs 1 through 60 of its Counterclaims as if fully set forth herein.

62.     Pursuant to the Non-Solicitation Agreement, Plaintiff agreed that all records and equipment relating in any way to any confidential information concerning the clients or business

of Aon shall remain the sole property of Aon following the termination of Plaintiff's employment.

63.     Pursuant to the Non-Solicitation Agreement, Plaintiff agreed upon his termination to return promptly to Aon all records, equipment and other materials involving any confidential information in Plaintiff's possession or control.

64.     Upon information and belief, Plaintiff has failed to return to Aon the laptop computer, printer and/or other records and materials provided to him by Aon during the course of his employment.

65.     Plaintiff's failure to return the laptop computer, printer and/or other records and materials provided to him by Aon during the course of his employment constitutes a breach of the Non-Solicitation Agreement.

66.     As a direct and proximate result of Plaintiff's breach of the Non-Solicitation Agreement, Aon has suffered and continues to suffer harm for which it is entitled to an award of damages in an amount to be determined at trial.

## FIFTH COUNTERCLAIM
### (Injunctive Relief)

67.     Aon repeats, reiterates and re-alleges the allegations set forth in paragraphs 1 through 66 of its Counterclaims as if fully set forth herein.

68.     Plaintiff has failed to return the laptop computer, printer, and/or other records and materials provided to him by Aon during the course of his employment.

69.     Plaintiff's failure to return the laptop computer, printer and/or other records and materials provided to him by Aon has resulted and will continue to result in irreparable and continuing harm to Aon.

70.    Pursuant to the Non-Solicitation Agreement, by reason of Plaintiff's failure to return the laptop computer, printer and/or other records and materials provided to him during the course of his employment, Aon is entitled to an injunction compelling Plaintiff to turn over to Aon Consulting the Aon laptop computer, printer and/or other records and materials provided to him by Aon.

## SIXTH COUNTERCLAIM
### (Breach of Contract—Confidentiality Agreement)

71.    Aon repeats, reiterates and re-alleges the allegations set forth in Paragraphs 1 through 70 of its Counterclaims as if fully set forth herein.

72.    Pursuant to the Confidentiality Agreement, Plaintiff agreed that "safeguarding" all confidential and proprietary information (as defined therein) regarding Aon Consulting was "critical" to Aon Consulting's business and, as such, that Plaintiff would not disclose such confidential and proprietary information (as defined therein) to third parties or permit any third party to have access to such confidential and proprietary information.

73.    Pursuant to the Confidentiality Agreement, Plaintiff also agreed that he would not remove any documents from the office or premises of Aon Consulting for any purpose other than a purpose directly related to the business of Aon Consulting and within the scope of his employment.

74.    In addition, pursuant to the Confidentiality Agreement, Plaintiff agreed that upon his termination, he would "immediately deliver to Aon Consulting all the materials and things embodying any confidential and proprietary information disclosed" to him, and "not retain any copies or reproductions thereof" nor "dispose of any such materials and things or copies or reproductions thereof to any third party."

75.     Upon information and belief, the laptop computer provided by Aon to Plaintiff contained confidential and proprietary information (as defined in the Confidentiality Agreement) to which Plaintiff had access during the period of his employment by Aon Consulting.

76.     Plaintiff's failure to return to Aon the laptop, printer and/or other records and materials provided to him by Aon immediately following his termination constitutes a breach of the Confidentiality Agreement.

77.     In addition, Plaintiff's failure to use the packing materials provided to him by Aon to return the laptop, printer and/or other records and materials to Aon and Plaintiff's decision, instead, to return such laptop, printer and/or other records and materials to Aon via "regular mail" or in a manner that would protect the laptop, printer and/or other records and materials and ensure their proper return to Aon constitutes a breach of the Confidentiality Agreement.

78.     As a result of Plaintiff's breaches of the Confidentiality Agreement, Aon has suffered and continues to suffer harm for which it is entitled to an award of damages in an amount to be determined at trial.

## SEVENTH COUNTERCLAIM
### (Conversion)

79.     Aon repeats, reiterates and re-alleges the allegations set forth in paragraphs 1 through 78 of its Counterclaims as if fully set forth herein.

80.     At the time of his termination, Plaintiff was in possession of a laptop computer, printer and/or other records and materials that were the sole property of Aon.

81.     At the time of his termination, Plaintiff was asked to return to Aon Consulting the laptop computer, printer and/or other records and materials that were the sole property of Aon.

82.     Despite Aon Consulting's request, Plaintiff has failed to return Aon's property.

20

83.    By reason of Plaintiff's failure to return Aon's property, Aon has converted said property.

84.    As a direct and proximate result of Plaintiff's wrongful actions, Aon has suffered and continues to suffer harm for which it is entitled to an award of damages in an amount to be determined at trial.

WHEREFORE, Defendants Aon Corp., Aon Service Corp. and Aon Consulting, Inc., respectfully request that this Court enter judgment:

a.    dismissing Plaintiff's Complaint in its entirety with prejudice;

b.    on the First Counterclaim, declaring, pursuant to the terms of the Employment Letter, that Plaintiff is required to return his $25,000 signing bonus to Aon;

c.    on the Second Counterclaim, awarding damages against Plaintiff in an amount to be proven at trial, but not less than $25,000;

d.    on the Third and Fourth Counterclaims, awarding damages against Plaintiff in an amount to be proven at trial;

e.    on the Fifth Counterclaim, compelling Plaintiff to return the laptop computer, printer and/or other records and materials belonging to Aon Consulting;

f.    on the Sixth and Seventh Counterclaims, awarding damages against Plaintiff in an amount to be proven at trial;

g.    pursuant, in part, to the Non-Solicitation Agreement, awarding Defendants their costs, disbursements, and reasonable attorneys' fees incurred in defending against this action; and

h.    awarding Defendants such other and further relief as this Court may deem just and proper.

Dated:  January 16, 2008
        New York, New York


                                        WINSTON & STRAWN LLP


                                        By:  ___s/Lori J. Van Auken____
                                            Lori J. Van Auken (LV 2858)
                                            Alexis A. Lury (AL 8672)

                                        200 Park Avenue
                                        New York, New York 10166
                                        T:  (212) 294-6700
                                        F:  (212) 294-4700
                                        lvanauken@winston.com

                                        *Counsel for Defendants Aon Corp., Aon
                                        Service Corp. and Aon Consulting, Inc.*


Of Counsel:

Timothy J. Rooney
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
T:  (312) 558-5600
F:  (312) 558-5700


TO:

Charles N. Internicola, Esq.
DECKER DECKER DITO & INTERNICOLA, LLP
1610 Richmond Road
Staten Island, New York 10304

*Attorneys for Plaintiff*