UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DANIEL JUNK,

                Plaintiff,

- against -

AON CORP., AON SERVICE CORPORATION
and AON CONSULTING, INC.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No. 07-CIV-4640 (LMM) (GWG)

ECF CASE

### DECLARATION OF LORI J. VAN AUKEN IN SUPPORT OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER, THE RETURN OF DEFENDANTS' PROPERTY AND SANCTIONS

LORI J. VAN AUKEN, an attorney at law duly admitted to practice before the Courts of the State of New York and the United States District Court for the Southern District of New York, hereby declares pursuant to 28 U.S.C.§ 1746:

1. I am a member of the law firm of Winston & Strawn LLP, counsel for Defendants Aon Corp., Aon Service Corp. and Aon Consulting, Inc. ("Defendants") in the above-captioned matter. I submit this Declaration in support of Defendants' Motion For A Protective Order, The Return of Defendants' Property and Sanctions. I am fully familiar with the facts and circumstances set forth herein and make this statement based on my personal knowledge and review of the documents attached hereto.

2. In early November 2006, Plaintiff accepted a business development position with the Financial Advisory and Litigation Consulting Services practice group of Defendant, Aon Consulting, Inc. ("ACI"). As a condition of his employment, Plaintiff was

required to and did sign Non-Solicitation and Confidentiality Agreements. Attached hereto as Exhibit 1 is a true and correct copy of the Affidavit of Leonora Galletti, dated August 3, 2007, attaching as Exhibits A and B, respectively, true and correct copies of Plaintiff's Employment Letter, dated November 6, 2006, and Non-Solicitation and Confidentiality Agreements, dated November 9, 2006.

3. On April 19, 2007, five months after he was hired, Plaintiff was terminated for employee dishonesty and violations of Defendants' Travel & Expense Policy, after it was discovered that Plaintiff had submitted as business expenses, several personal expenses incurred by his wife. Attached hereto as Exhibit 2 are true and correct copies of Plaintiff's expense report, hotel receipts and the relevant sections of Aon's Travel and Expense Policy.

4. On April 25, 2007, ACI sent Plaintiff via Federal Express, packing materials that he could use to return his laptop computer along with two, pre-paid return Federal Express labels. The packages were delivered to Plaintiff the following day, April 26, 2007. Attached hereto as Exhibit 3 are true and correct copies of emails from Theresa Gogger to Jim Sheridan and Daryk Rowland, dated May 16, 2007, and Federal Express online tracking reports obtained from www.fedex.com.

5. Upon information and belief, it appears that since Plaintiff's termination on April 19, 2007, he has held senior positions with several companies who are competitors of the Defendants, including Merrill Corporation and Onsite[3], which, according to their websites, www.merrillcorp.com and www.onsite3.com, are leading providers of litigation support services for law firms and corporations.

6. On June 1, 2007, Plaintiff commenced this action against Defendants claiming that he was wrongfully terminated and asserting claims based on breach of contract, fraudulent inducement and promissory fraud. On August 6, 2007, Defendants filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In a Memorandum and Order dated November 30, 2007, the Court granted Defendants' motion to dismiss the breach of contract and fraudulent inducement claims, but denied the motion as to Plaintiff's claim for promissory fraud.

7. A conference was held following the Court's decision, on December 11, 2007. During the conference, among other things, Defendants' counsel inquired about Plaintiff's possession of Aon property including, in particular, the laptop computer. Plaintiff's Counsel said he knew nothing about the laptop, but would discuss the matter with his client.

8. Two days later, having received no response, Defendants' counsel sent Plaintiff's Counsel a letter demanding the immediate return of the laptop computer. Attached hereto as Exhibit 4 is a true and correct copy of a letter from Lori J. Van Auken to Charles N. Internicola, dated December 13, 2007.

9. In a letter later that day, Plaintiff's Counsel advised that Plaintiff had returned the laptop computer to Defendant Aon Corp. by "regular mail" "several months ago." Attached hereto as Exhibit 5 is a true and correct copy of a letter from Charles N. Internicola to Lori J. Van Auken, dated December 13, 2007.

10. The following day, Defendants' counsel sent a follow-up letter requesting detailed information concerning the manner in which Plaintiff supposedly returned the laptop, including the date upon which Plaintiff supposedly returned it and the person to whom the package was addressed. Attached hereto as Exhibit 6 is a true and correct copy of a letter from

Lori J. Van Auken to Charles N. Internicola, dated December 14, 2007. No response to this letter was received.

11. On January 16, 2008, Defendants filed and served their Answer and Counterclaims. In their Counterclaims, Defendants, among other things, seek damages and injunctive relief based upon Plaintiff's failure to return the laptop computer, including claims based upon breach of his Non-Solicitation and Confidentiality Agreements, and common law conversion.

12. On March 30, 2008, this Court granted Plaintiff's motion to file and serve a Reply *nunc pro tunc* as of February 20, 2008.

13. Several weeks after this action was commenced, on or about July 5, 2007, Plaintiff also filed a Complaint with the Occupational Safety and Health Administration ("OSHA").

14. In early October 2007, an OSHA representative instructed the parties to work out a confidentiality agreement that would preserve the confidentiality of information being submitted to OSHA in connection with that proceeding.

15. On October 19, 2007, pursuant to OSHA's request, Defendants' counsel sent a draft confidentiality agreement to Plaintiff's counsel. Attached hereto as Exhibit 7 is a true and correct copy of a facsimile from Lori J. Van Auken to Charles N. Internicola dated October 19, 2007, attaching a draft confidentiality agreement.

16. Defendants' counsel followed up by telephone on November 5, 2007, and by letter on November 8, 2007. Attached hereto as Exhibit 8 is a true and correct copy of a letter from Lori J. Van Auken to Charles N. Internicola, dated November 8, 2007.

17. Several weeks later, Plaintiff's Counsel advised Defendants' counsel that he had never received a copy of the proposed confidentiality agreement. Accordingly, on November 29, 2007, Defendant's counsel sent another copy of the agreement to Plaintiff's Counsel along with a facsimile confirmation reflecting his receipt of the initial October 19, 2007 fax. No response was received. Attached hereto as Exhibit 9 is a true and correct copy of a facsimile from Lori J. Van Auken to Charles N. Internicola, dated November 29, 2007.

18. Defendants' counsel next raised the matter at the December 11, 2007 conference, but Plaintiff and his Counsel continued to ignore the matter for several more months. They finally responded on March 19, 2008—some five months after the draft agreement was first sent. Attached hereto as Exhibit 10 is a true and correct copy of a letter from Charles N. Internicola to Lori J. Van Auken, dated March 19, 2008.

19. On March 12, 2008 Plaintiff's Counsel served his Rule 26 Initial Disclosures. His Disclosures were accompanied by a large volume of documents which he described as "copies of documents in Plaintiff's possession, custody or control that Plaintiff may use to support his claims or defenses, unless solely for impeachment" adding that "these documents include AON E-Docs literature and print-outs of extensive communications between defendants' employees and officers." Attached hereto as Exhibit 11 is a true and correct copy of Plaintiff's Rule 26(a)(1) Initial Disclosures, dated March 12, 2008.

20. Upon examination, it appeared that many documents contained Defendants' trade secrets, confidential and/or proprietary information. Several documents also appeared to reflect attorney-client privileged and/or work product communications, including communications relating to an internal investigation. In addition, several emails had been manipulated in such a way so as to conceal their source.

21. Accordingly, Defendants undertook an investigation to ascertain the source of the documents and the manner in which they may have come into Plaintiff's possession. Among other things, Defendants served several discovery demands upon Plaintiff. Attached hereto as Exhibits 12, 13 and 14, respectively, are true and correct copies of Defendants' First Request For Admissions, dated May 6, 2008, Defendants' First Set of Interrogatories, dated May 8, 2008, and Defendants' First Request for the Production of Documents, dated May 7, 2008.

22. On April 2, 2008, Plaintiff served his first set of discovery demands upon each of the three Defendants. Attached hereto as Exhibit 15 and 16, respectively, are true and correct copies of Plaintiff's First Request for the Production of Documents dated April 2, 2008, and Plaintiff's First Set of Interrogatories, dated April 2, 2008.

23. In his discovery demands, Plaintiff seeks an extensive amount of information of a privileged, confidential and proprietary nature, including information concerning Defendants' development of proprietary software Ex. 15, ¶¶ 3, 11-16, 31-35; Ex. 16, Interrogatories No. 4-7) and negotiations with third party software vendors regarding various software licensing agreements. Ex. 15, ¶¶ 11-15; Ex. 16, Interrogatories No. 3-5. Plaintiff also requests extensive information concerning Defendants' sales and marketing practices. Ex. 15, ¶¶ 13-14 Ex. 16, Interrogatory No. 3. Many of these negotiations were subject to confidentiality and non-disclosure agreements.

24. Defendants provided their written responses to Plaintiff's discovery demands, on May 5, 2008. Attached hereto as Exhibits 17 and 18 are, respectively, true and correct copies of Defendants' Responses to Plaintiff's First Set of Document Requests, dated

May 5, 2008, and Defendants' Answers to Plaintiff's First Set of Interrogatories, dated May 5, 2008.

25. In their responses, Defendants asserted objections, among other things, to the production of any "confidential business, trade secret and/or proprietary information," as well as "documents, information and/or things protected from disclosure by the attorney-client privilege, the attorney work product doctrine and/or any other admissible privilege or protection." Ex. 17, ¶¶ 1, 2; Ex. 18, Response to Interrogatories No. 1-2. In several instances, Defendants stated their intention to produce non-privileged documents subject to the entry of an appropriate protective order. Ex. 17, ¶¶ 3-4, 9, 11, 15-16.

26. Defendants also made their position unequivocally clear in the weeks prior to and following the service of their written responses to Plaintiff's discovery demands. For example, Defendants' position is reflected in a letter to Plaintiff's Counsel, dated April 11, 2008, and the draft discovery plan they prepared pursuant to this Court's Order, and sent to Plaintiff's Counsel on April 28, 2008. Defendants' counsel also reiterated this position during a conference call with Defendants' counsel, on April 16, 2008, a fact acknowledged by Plaintiff's Counsel in follow-up correspondence dated April 17, 2008. Attached hereto as Exhibit 19 are true and correct copies of: (1) a letter from Lori J. Van Auken to Charles N. Internicola, dated April 11, 2008; (2) a letter from Charles N. Internicola to Lori J. Van Auken, dated April 17, 2008; and (3) a letter from Lori J. Van Auken to Charles N. Internicola, dated April 29, 2008.

27. During a telephone conference call that took place on May 15, 2008, Defendants' counsel again made it clear that Defendants objected to the production of any privileged, confidential and/or proprietary information absent an appropriate protective order. Plaintiff's Counsel did not object and expressed his willingness to proceed in accordance with

the approach. He never once took the position that any of Defendants' documents in his possession would be excluded from this protection.

28. On June 1, 2008, in connection with a joint letter then being prepared for submission to this Court, Defendants' counsel sent a proposed Stipulated Protective Order ("Protective Order") to Plaintiff's Counsel, via email. The draft was accompanied by a note advising Plaintiff's Counsel of Defendants' intention to submit the proposed protective order to the Court along with the joint letter being prepared. Plaintiff's Counsel did not respond. On June 2, 2008, Defendants' Counsel sent another copy of the protective order to Plaintiff's Counsel via facsimile, but again received no response. The next day, Plaintiff's Counsel responded, stating he needed time to review the agreement with his client. Attached hereto as Exhibit 20, are true and correct copies of: (a) an email from Lori J. Van Auken to Charles N. Internicola, dated June 1, 2008; (b) a facsimile from Lori J. Van Auken to Charles N. Internicola, dated June 2, 2008; and (c) emails between Charles N. Internicola and Lori. J. Van Auken, dated June 3, 2008.

29. Several days later, Plaintiff produced, purportedly in response to Defendants' discovery demands, 1,835 pages of documents. Plaintiff also produced (in a large box sent to Defendants' counsel via Federal Express), a Blackberry, Dell computer monitor, and other miscellaneous materials. Attached hereto as Exhibit 21, are true and correct copies of the cover letters from Charles N. Internicola to Lori J. Van Auken, dated June 9, 2008.

30. At or about the same time, Plaintiff provided answers to Defendants' Interrogatories and responses to their Requests for Admission. Attached hereto as Exhibits 22 and 23, are true and correct copies of Plaintiff's Answers to Defendants' Interrogatories and Requests for Admission, dated June 5, 2008 and June 9, 2008, respectively.

31.     Review of the documents produced by Plaintiff revealed that the vast majority of his production consists of materials belonging to Defendants and apparently taken from Defendants' files. Moreover, the documents appeared to contain several attorney-client and work product communications concerning this litigation, including a copy of the litigation hold notice sent by Defendants' in-house counsel to one of ACI's employees and an email which also was sent to Defendants' outside counsel, Winston & Strawn LLP. Plaintiff's production also included multiple attorney-client and work product communications relating to an internal investigation.

32.     The email concerning this lawsuit which specifically mentions Defendants' counsel, Winston & Strawn LLP, appears to have been deliberately Bates-stamped 000001, and placed at the top of Plaintiff's production. Another copy of this same email, however, was buried deeper in the stack, and bears Bates-number 001796. The other privileged communications were interspersed throughout the 1,835 page production.

33.     Plaintiff's production also included a large volume of Defendants' trade secret, confidential and proprietary information. These materials consist of confidential business, proprietary and trade secret communications concerning ACI's (a) negotiation and the acquisition of licenses to use and sell various computer software programs; (b) development of its own proprietary e-discovery computer software; (c) marketing and sales activities; (d) prices; and (e) clients and prospective clients. They also included copies of Defendants' corporate policy manuals and communications regarding Plaintiff's expense reports.

34.     Plaintiff's production also included copies of several documents which Plaintiff had produced with his Rule 26 Initial Disclosures, with the forwarding address cut-off, so as to conceal their source. In Plaintiff's June 2008 document production, however, some of

these very same emails were produced with forwarding addresses, which revealed the sources to be two ACI former employees, Anne Kemp and William Cunningham. Still other documents appear to have been supplied to Plaintiff by another former employee, Cliff Shnier, while others came from a third party, Steven Fried.

35.  In one email, Ms. Kemp advises Plaintiff that she had just sent him "the emails" she could find and promises that she "will speak with [him] tomorrow." Shortly thereafter, Plaintiff responds, "Great. Thx" to which Kemp replies, "You are welcome – I will look for additional info in one of my other computers. Best, AK." Attached hereto as Exhibit 24 is a true and correct copy of the emails exchanged between Ms. Kemp and Plaintiff, dated January 16, 2008 and January 17, 2008.

36.  Several of the documents Plaintiff produced also make clear that he acquired them over an extended period of time beginning in late April 2007 and continuing through May of this year. By November 11, 2007, Plaintiff even had obtained the privileged litigation hold memorandum Defendants had issued for this litigation.

37.  Another document shows that on December 14, 2007—the same day Defendants' counsel requested information concerning the whereabouts of Plaintiff's laptop—Plaintiff received additional data concerning Defendants from Ms. Kemp. Other emails show that on the very day Defendants served and filed their Counterclaims seeking, among other things, the return of all Defendants' property within Plaintiff's possession, Plaintiff again received from the same former employee a copy of a license agreement between ACI and a third party vendor. This agreement contains several confidentiality provisions which, among other things, make clear that the agreement, along with all communications among the parties thereto shall be and, at all times, remain confidential.

38. Following an initial review of Plaintiff's discovery responses, Defendants' counsel sent a letter to Plaintiff's Counsel on June 13, 2008, demanding that Plaintiff and his Counsel return all Defendants' documents that one or both of them obtained outside the discovery process. Attached hereto as Exhibit 25 is a true and correct copy of a letter from Lori J. Van Auken to Charles N. Internicola, dated June 13, 2008.

39. Plaintiff's Counsel responded by letter dated June 16, 2008. In his letter, he ignored Defendants' demand for the return of their documents and, instead, asked for additional information concerning Defendants' documents to evaluate the proposed protective order. Attached hereto as Exhibit 26 is a true and correct copy of a letter from Charles N. Internicola to Lori J. Van Auken, dated June 16, 2008.

40. On June 17, 2008, Defendants responded, pointing out that Section 2 of the proposed Protective Order already contained a detailed list of the types of information covered by the Order. Attached hereto as Exhibit 27 is a true and correct copy of a letter from Lori J. Van Auken to Charles N. Internicola, dated June 17, 2008.

41. Defendants' counsel attempted to contact Plaintiff's Counsel on multiple occasions on June 18, 2008 and June 19, 2008. Later that evening, Plaintiff's Counsel responded, but only to say he would not be available, until the following week. Although Defendants' Counsel repeatedly requested that Plaintiff's Counsel call, he declined to do so, and expressed confusion as to the nature of Defendants' request. Attached hereto as Exhibit 28 is a true and correct copy of emails between Charles N. Internicola to Lori J. Van Auken, dated June 18 and 19, 2008.

42. The following day, June 20, 2008, Defendants' counsel sent a letter to the Court requesting a pre-motion conference for the purpose of seeking a protective order, the

return of Defendants' documents and sanctions. Attached hereto as Exhibit 29 is a true and correct copy of Defendants' letter to the Court dated June 20, 2008. Plaintiff did not respond to the substance of the letter and declined to discuss the matter further.

43. The pre-motion conference was held on July 2, 2008. During the conference, the Court granted Defendants' permission to file its motion. The Court also asked if Plaintiff's Counsel had any substantive problem with the proposed Protective Order, to which Plaintiff's Counsel responded:

> *Mr. Internicola*: I don't believe there is one.
>
> *The Court*: Oh.
>
> *Mr. Internicola*: I don't, Your Honor.
>
> *The Court*: Good. So we'll have all this all solved next week. Wonderful.

Attached hereto as Exhibit 30 is a true and correct copy of the transcript of the conference held on July 2, 2008.

44. The following Monday, July 7, 2008, Defendants' counsel sent Plaintiff's Counsel yet another copy of the proposed Protective Order. In an email later that day, Plaintiff's Counsel advised that he was "reviewing" the protective order and "would respond shortly." Attached hereto as Exhibit 31 are true and correct copies of emails between Lori J. Van Auken and Charles N. Internicola, dated July 7-8, 2008.

45. Plaintiff's Counsel also asked Defendants' counsel to provide him with the Bates numbers of the documents to be returned, offering to "enter into some type of agreement" whereby Plaintiff would "divest himself of these documents (to the extent that he may be in possession of same) and that [his] firm would sequester the same pending your information." *Id*.

46. On July 8, 2008, Defendants' counsel replied, noting that his offer to sequester the information merely until they learned the identity of the Bates numbers of the documents at issue fell far short of Plaintiff's obligations. *Id.*

47. The following day, July 9, 2008, Plaintiff's Counsel followed up with another email in which he advised that he and his client would not agree to an order that would preclude them from disclosing information to the United States Department of Labor, on the theory that they have some "obligation" to do so. Defendants' counsel replied, pointing out that Section 15 of the Protective Order fully addressed Plaintiff's concerns by permitting the disclosure of confidential information to government agencies provided that prior notice is given and steps are taken to protect such information from disclosure outside the government investigation process. Attached hereto as Exhibit 32 are true and correct copies of emails between Charles N. Internicola to Lori J. Van Auken, dated July 9, 2008.

48. On July 10, 2008, Defendants' counsel sent a letter to Plaintiff's Counsel, requesting that he execute the Protective Order and return it on July 11, 2008. Plaintiff's Counsel did not execute the Protective Order or return it to Defendants' counsel. Attached hereto as Exhibit 33 is a true and correct copy of the letter from Lori J. Van Auken to Charles N. Internicola, dated July 10, 2008.

49. On July 11, 2008, Defendants' counsel sent Plaintiff's Counsel a letter specifying the Bates numbers of the documents that Defendants wanted Plaintiff and his Counsel to return. Attached hereto as Exhibit 34 is a true and correct copy of a letter from Lori J. Van Auken to Charles N. Internicola, dated July 11, 2008.

50. On the afternoon of Monday, July 14, 2008, Plaintiff's Counsel sent a further email to Defendants' counsel in which he, again, reiterated his objection to the proposed

Protective Order. In addition, Plaintiff's Counsel asked Defendants' counsel to provide him with further details regarding the particular documents claimed to be at issue so that Plaintiff could "evaluate" Defendants' claim that such documents contain privileged, confidential and/or proprietary information. Plaintiff's Counsel's email further stated that in the event that Plaintiff and his Counsel agreed with Defendants' position, they would "consider the confidentiality agreement." Attached hereto as Exhibit 35 is a true and correct copy of an email from Charles N. Internicola to Lori J. Van Auken, dated July 14, 2008.

51. The following week, Defendants' counsel responded. First, counsel declined to modify the proposed protective order, having found no authority that would give Plaintiff the right to continue to hold and dispose of Defendants' property as if it were his own. Second, Defendants' counsel also declined Plaintiff's invitation to negotiate over the merits of Defendants' confidentiality claims. In fact, as Defendants' counsel explained, the case law showed that Plaintiff's only obligation was to return Defendants' documents, regardless of his pending OSHA claim and regardless of whether he agreed with Defendants' position on confidentiality. Attached hereto as Exhibit 36 is a true and correct copy of an email from Lori J. Van Auken to Charles N. Internicola, dated July 23, 2008.

52. Plaintiff's Counsel responded on July 29, 2008. In his email, Plaintiff's Counsel, for the first time, offered to return all of Defendants' privileged documents if he were supplied with the corresponding Bates numbers. In all other respects, however, his position remained the same—he would not sign the proposed protective order and would not return Defendants' confidential and proprietary documents. Attached hereto as Exhibit 37 is a true and correct copy of an email from Charles N. Internicola to Lori J. Van Auken, dated July 29, 2008.

53. On Tuesday, August 5, 2008, and Thursday, August 7, 2008, at the Court's request, counsel discussed these issues again, at length, but failed to reach agreement. During the call on August 5, 2008, Defendants' counsel, among other things, pointed out that she had provided Plaintiff with the Bates numbers of the documents to be returned weeks earlier, on July 11, 2008. Defendants' counsel also advised Plaintiff's Counsel that if he and his client were to return the documents and agree to the entry of the proposed protective order, Defendants would produce the documents, to the extent they are responsive to Plaintiff's discovery demands and not subject to any privilege or other appropriate objection. Plaintiff's Counsel, however, declined the offer.

54. Plaintiff's and Plaintiff's Counsel's failure to agree to the terms of the proposed protective order has impacted Defendants' ability to obtain discovery from third parties, including one of Plaintiff's former employers, RenewData Corporation ("RenewData").

55. On May 19, 2008 and June 26, 2008, Defendants served subpoenas upon RenewData in order to obtain information concerning any commissions Plaintiff earned in 2006. Attached hereto as Exhibits 38 and 39 are the subpoenas to RenewData, dated May 19, 2008 and June 26, 2008.

56. Although RenewData produced documents specific to Plaintiff, it has objected to the production of other highly confidential and proprietary information or produce a witness for a Rule 30(b)(6) deposition, unless and until the proposed protective order has been entered.

57. Attached hereto as Exhibit 40 is a redacted copy of an e-mail from Plaintiff to two of Defendants' former employees, dated March 7, 2008, that Plaintiff produced to Defendants on June 9, 2008.

58. I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on September 12, 2008

                                                      _s/ Lori J. Van Auken_____
                                                        LORI J. VAN AUKEN