# EXHIBIT 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DANIEL JUNK,

                Plaintiff,

      - against -

AON CORP., AON SERVICE CORPORATION and
AON CONSULTING, INC.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No. 07-CIV-4640 (LMM)(GWG)

## DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION TO PLAINTIFF

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Southern District of New York ("Local Rules"), Defendants Aon Corporation, Aon Service Corporation and Aon Consulting, Inc. hereby request that Plaintiff, Daniel Junk, admit the truth of each matter set forth below, separately, in writing and under oath, within thirty (30) days of service hereof.

## DEFINITIONS

For the purpose of these Requests for Admission ("Requests"), the following definitions, as well as the definitions set forth in Local Rule 26.3 shall apply:

1.     "Plaintiff" shall mean and refer to Plaintiff Daniel Junk, as well as any and all agents, representatives, persons or entities acting on his behalf, under his direction or control.

2.     "Aon" shall mean and refer to Defendants, Aon Corporation, Aon Service Corporation and/or Aon Consulting, Inc.

5/6/08

3.    "Complaint" shall mean and refer to the Complaint filed by Plaintiff in the United States District Court for the Southern District of New York on or about June 1, 1997, in the action entitled Daniel Junk v. Aon Corp., et al., No. 07-CIV-4640.

4.    "Plaintiff's Initial Disclosures" shall mean and refer to Plaintiff's Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1), dated March 12, 2008.

5.    "Renew Data" shall mean and refer to Renew Data Corporation, its present and former parents, subsidiaries, affiliates, predecessors and successors and each of their present and former partners, officers, directors, employees, agents , attorneys, representatives and other persons purporting to act on its behalf.

6.    The use of the singular form of any word includes the plural, and vice versa.

7.    The terms "All," "Any," or "Each" shall be construed as all, any and each.

8.    The terms "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

9.    "Parties," "Plaintiff" and "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

10.    The term "Person" is defined as any natural person or any business, legal or governmental entity or association.

2

## INSTRUCTIONS

1.    Plaintiff's response to each Request must specifically admit or deny the matter or state in detail why Plaintiff cannot truthfully admit or deny it.

2.    If Plaintiff denies any or part of a Request, the denial must fairly respond to the substance of the matter requested.  If Plaintiff must qualify an answer or deny only a part of the matter as to which an admission is sought, Plaintiff must specify so much of such matter as is true, and qualify or deny the rest.

3.    Plaintiff may not give lack of information or knowledge as a reason for failing to admit or deny a Request, unless Plaintiff states that he has made reasonable inquiry and that the information known or which can be readily obtained by him insufficient to enable him to admit or deny the Request.

4.    If Plaintiff denies any or part of a Request or qualifies his response in any way such that his response is anything other than an unqualified admission, Plaintiff must set forth in detail for each such denial or qualification all factual basis for the denial or qualification and identify all documents that support in any way the refusal to admit unequivocally.

5.    If an objection is made to any of these Requests, Admissions, state in full the part of the Request for Admissions objected to and set forth the grounds for each objection. Plaintiff must respond to so much of each such request for admission as to which no objection is made.  If any objection on the grounds of vagueness, over-breadth, or any similar ground is made, you must respond to the request for admission as narrowed to conform to your objection. If you contend that any of the requested information is protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection, for each such matter, provide all information required by Local Rule 26.2.

3

6.    When a request for admission does not specifically request a particular fact, but where such fact or facts are necessary to make the answer to said request for admission either comprehensible, complete or not misleading, such fact or facts should be included as part of the answer and the request for admission shall be deemed specifically to request such fact or facts.

7.    These Requests for Admissions are continuing in nature and as such, require Plaintiff to amend and/or supplement his responses if he obtains further or different information, and to serve upon Aon such amended or supplemental responses.

8.    Pursuant to Fed. R. Civ. P. 36(a), the matters as to which admissions are requested will be deemed admitted unless a written and signed response is received within thirty (30) days from the service hereof.

## REQUESTS

1.    Admit that the signature appearing on the third page of the document attached hereto as Exhibit A, beneath the words "I confirm my acceptance of employment with Aon Consulting subject to the terms and conditions set forth above" is the signature of Plaintiff.

2.    Admit that the document attached hereto as Exhibit A is a true and accurate copy of a letter dated November 7, 2006, Plaintiff provided to Aon Consulting.

3.    Admit that the document attached hereto as Exhibit A sets forth the terms and conditions of Plaintiff's employment with Aon Consulting, Inc.

4.    Admit that the signature appearing on page four of the document attached hereto as Exhibit B is the signature of Plaintiff.

5.    Admit that the document attached hereto as Exhibit B is a true and accurate copy of the Non-Solicitation Agreement Plaintiff entered into with Aon Consulting, Inc.

4

6.     Admit that the signature appearing on page two of the document attached hereto as Exhibit C is the signature of Plaintiff.

7.     Admit that the document attached hereto as Exhibit C is a true and accurate copy of the Confidentiality Agreement Plaintiff entered into with Aon Consulting, Inc.

8.     Admit that the signature which appears on the document attached hereto as Exhibit D is the signature of Plaintiff.

9.     Admit that the document attached hereto as Exhibit D, is a true and accurate copy of a letter dated March 30, 2007, Plaintiff addressed to the Hilton Barbados.

10.     Admit that the document attached hereto as Exhibit E is a true and accurate copy of the hotel bill reflecting Plaintiff's stay at the Hilton Barbados during the period January 31, 2007, through February 4, 2007.

11.     Admit that Plaintiff submitted an expense report to Aon seeking reimbursement for the food and beverage charges appearing on the hotel bill attached hereto as Exhibit E.

12.     Admit that Plaintiff submitted an expense report to Aon seeking reimbursement for the room service delivery charges and tips appearing on the hotel bill attached hereto as Exhibit E.

13.     Admit that Plaintiff's wife, Christine Junk, accompanied Plaintiff on a trip to the Barbados during the period January 31, 2007, through February 4, 2007, and stayed with Plaintiff at the Hilton Barbados.

14.     Admit that the purpose of Plaintiff's trip to the Barbados on January 31, 2007, was to attend a business conference being held at the Hilton Barbados from February 1, 2007 through February 3, 2007.

5

15.    Admit that the document attached hereto as Exhibit F is a true and accurate copy of a receipt dated February 1, 2007, from the Hilton Barbados, and that the signature which appears on the receipt is the signature of Plaintiff.

16.    Admit that the document attached hereto as Exhibit G, is a true and accurate copy of a receipt dated February 1, 2007, from the Hilton Barbados, and that the signature which appears on the receipt is the signature of Plaintiff's wife, Christine Junk.

17.    Admit that the document attached hereto as Exhibit H, is a true and accurate copy of a receipt dated February 1, 2007, from the Hilton Barbados, and that the signature which appears on the receipt is the signature of Plaintiff's wife, Christine Junk.

18.    Admit that the document attached hereto as Exhibit I is a true and accurate copy of a receipt dated February 2, 2007, from the Hilton Barbados, and that the signature which appears on the receipt is the signature of Plaintiff's wife, Christine Junk.

19.    Admit that the document attached hereto as Exhibit J is a true and accurate copy of a receipt dated February 2, 2007, from the Hilton Barbados, and that the signature which appears on the receipt is the signature of Plaintiff's wife, Christine Junk.

20.    Admit that the document attached hereto as Exhibit K, is a true and accurate copy of a receipt dated February 3, 2007, from the Hilton Barbados, and that the signature which appears on the receipt is the signature of Plaintiff's wife, Christine Junk.

21.    Admit that the document attached hereto as Exhibit L, is a true and accurate copy of a receipt dated February 3, 2007, from the Hilton Barbados, and that the signature which appears on the receipt is the signature of Plaintiff.

6

22. Admit that the document attached hereto as Exhibit M is a true and accurate copy of a receipt dated February 3, 2007, from the Hilton Barbados, and that the signature which appears on the receipt is the signature of Plaintiff.

23. Admit that the document attached hereto as Exhibit N is a true and accurate copy of a receipt, dated February 4, 2007, from the Hilton Barbados, and that the signature which appears on the receipt is the signature of Plaintiff.

24. Admit that the document attached hereto as Exhibit O is a true and accurate copy of a receipt dated February 4, 2007, from the Hilton Barbados, and that the signature which appears on the receipt is the signature of Plaintiff.

25. Admit that the document attached hereto as Exhibit P is a true and accurate copy of a receipt dated February 4, 2007, from the Hilton Barbados, and that the signature which appears on the receipt is the signature of Plaintiff.

26. Admit that the document attached hereto as Exhibit Q is a true and accurate copy of the employment application Plaintiff submitted to Aon.

27. Admit that Plaintiff was employed by Renew Data during the period May 2006 to November 2006.

28. Admit that Renew Data does not owe Plaintiff any money arising out of Plaintiff's employment by Renew Data during 2006.

29. Admit that Plaintiff was not employed as an attorney with the law firm Simpson, Thacher & Bartlett during the period September 1993 through April 2000.

30. Admit that Plaintiff received a signing bonus from Aon in the amount of $25,000.

31.    Admit that the documents attached to Plaintiff's Initial Disclosures are copies of documents that Plaintiff obtained from Anne Kemp.

32.    Admit that the documents attached to Plaintiff's Initial Disclosures are copies of documents that Plaintiff had in his possession, custody and/or control following the termination of Plaintiff's employment on or about April 19, 1997.

33.    Admit that during the period September 1, 2006 through and including April 19, 2007, Plaintiff resided in the state of South Carolina.

DATED:    May 6, 2008
          New York, New York

Respectfully submitted,

WINSTON & STRAWN LLP

By

Lori J. Van Auken (LV 2858)
Alexis A. Lury (AL 8672)

200 Park Avenue
New York, New York 10166
T:  (212) 294-6700
F:  (212) 294-4700
lvanauken@winston.com

*Counsel for Defendants Aon Corp., Aon Service Corp. and Aon Consulting, Inc.*

Of Counsel:

Timothy J. Rooney
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
T:  (312) 558-5600
F:  (312) 558-5700

8

TO:

Charles N. Internicola, Esq.
DECKER DECKER DITO & INTERNICOLA, LLP
1610 Richmond Road
Staten Island, New York 10304

*Attorney for Plaintiff*

# Exhibit A

November 7, 2006



*Aon Service Corporation*

Daniel Junk
181 Old Field Way
Okatie, SC 29909

RE: Offer of Employment

Dear Dan:

We are pleased to extend you an offer of employment with Aon Consulting, a division of Aon Corporation. We believe Aon Consulting can provide an outstanding opportunity for you to continue the development of your professional career. We also believe you will make a significant contribution to our company and we look forward to your joining us.

Below and in the attached appendix, we have summarized some important information regarding your employment.

Your position at Aon Consulting will be an exempt Vice President for Business Development for the Financial Advisory and Litigation Consulting Practice, reporting to Jerry Barbanel, at an annual salary of $200,000 paid on a semi-monthly basis. You are scheduled to start on November 20, 2006. As a senior level executive, you will not participate in Aon's formal vacation plan. Rather, you will be eligible to enjoy time off benefits at the discretion of you and your manager.

You will receive a one time sign on bonus in the amount of $25,000 which will be paid after 90 days of continuous employment (originating from your date of hire). If you decide to terminate your employment with us, or if we must terminate your employment with us for cause at any time during your first year of employment, you will be required to repay this bonus to Aon. Note: The sign on bonus shall not be considered a part of total compensation in 2007.

As a Vice President for Business Development, you will be responsible for generating revenue for the above-referenced practice. As such, there will be three types of commissions that you will be eligible to receive for selling the service offerings of the Financial Advisory and Litigation Consulting Services practice, which are as follows:

(1) Commissions received for selling large-scale digital evidence cases will be as follows:
For the first million dollars of revenue generated: 4 percent
For second million dollars of revenue generated: 3 1/2 percent
For third million dollars of revenue generated, and thereafter: it will be a flat 3 percent.

(2) Commissions received for selling all other Financial Advisory and Litigation Consulting Services practice's services, except for large-scale digital evidence cases as covered by item (1) above, will be as follows:

For the first million dollars of revenue generated: 5 percent
For the second million dollars of revenue generated: 4 percent
For the third million dollars of revenue generated: 3 1/2 percent
For the fourth million dollars of revenue generated, and thereafter: it will be a flat 3 percent.

(3) Commissions received for generating revenue for an existing Aon relationship, in which you have played a major role securing the Financial Advisory and Litigation Consulting Services' engagement, will be as follows:

All of these commissions will be applied at a rate of 50 percent of the commission rates in the schedules that have been set forth in items (1) and (2) above.

Aon Service Corporation
1100 Reynolds Boulevard • Winston-Salem • North Carolina • 27105-3400
tel: 336.748.1120 • www.aon.com

Total compensation for calendar year 2007 will not exceed $575,000. As such, if your base is set at $200,000 you can make a maximum amount of commissions capped at $375,000 in calendar 2007. You will be allowed to elect either the commission scheme as set forth above, or in the alternative you will be presented a different commission scheme whereby you and other individuals will be offered an alternative commission scheme based on a team focused commission concept whereby you and others will be allowed to combine your strengths to gain commissions (you will be sent another document under separate cover if you and others opt in for this compensation arrangement). All commissions will be paid quarterly.

Aon offers a comprehensive benefit package, including:
- Contributory medical and dental plans
- Aon Savings Plan
- 401(k) Savings Account (employee and matching employer contributions),
- and Aon Retirement Account (additional annual employer contribution)
- Short and Long-Term Disability plans
- Life and AD&D plans

More detailed information regarding these benefit programs will be provided and explained to you during the New Employee Orientation webcast. During the orientation webcast, a Human Resources representative will present an overview of company information, Aon's benefit package, and the electronic resources available to you.

In addition, Aon's Employee Service Center will send you information concerning the My Aon Self-Service website, as well as your Personal User ID and Password. The My Aon Self-Service website will be the vehicle that you will use to enroll in your benefit plans and will be explained in further detail during the orientation webcast.

If you are currently employed, we ask that you not take any action that could be perceived as unethical or unlawful conduct as you leave your current employment. We ask that you observe the following:

1. Give your employer ample notice of your departure.
2. Cooperate with your employer in wrapping up your employment and transitioning your duties.
3. Do not take or copy any information from your employer that could be considered a trade secret or confidential information, including but not limited to customer lists and pricing information.
4. While you are still working for your current employer do not solicit your employer's clients, and do not encourage others to leave their employment with your employer.

When you begin your employment with Aon Consulting we ask that you adhere to your obligations not to disclose any trade secrets or confidential information belonging to your former employer. If you have a confidentiality agreement, non-solicitation agreement, non-compete agreement or intellectual property agreement with your former employer, we ask that you strictly adhere to those agreements. If you have any such agreement or any other agreement that restricts your post-termination activities, we require that you disclose those obligations to us and provide us with a copy of such agreements.

To protect Aon's considerable investment in its people and clients, you will also be required to execute the enclosed Non-solicitation Agreement (the "Agreement") as a condition of your employment with us. The Agreement provides that for a period of two years following the date your employment with Aon terminates, you agree to refrain from soliciting Aon clients or customers with whom you had worked or become familiar with during the twenty-four month period prior to the end of your employment with Aon. You also agree not to induce or attempt to induce any Aon employee to leave the employ of Aon for a two-year period following the date of your termination of employment with Aon.

Please keep in mind that nothing in this Non-solicitation Agreement prohibits you from obtaining a livelihood by working in the same business as Aon Consulting. The provisions above simply help to safeguard our people, our clients, and our shareholders.

In this welcome packet, you will find a number of forms to complete. To ensure timely processing of your first paycheck, it is important that your completed forms and the entire signed offer letter are faxed to Christy Alyea, New Hire Onboarding Coordinator, at 312-381-7687 before your first day of employment.

In compliance with federal law, you will be asked to verify your identity and authorization for employment in the United States. Typically, this is accomplished by presenting your U.S. passport or valid driver's license, along with your U.S. Social Security card (for a comprehensive list of acceptable documents, please refer to the back page of the Employment Eligibility Verification Form that is included in this packet). On your first day, please bring the Employment Eligibility Verification Form, identification and the original signed offer letter (and addendums).

Your employment with Aon Consulting is contingent upon the successful completion of a background investigation. This background investigation check will verify your prior employment history, academic history, social security number and criminal history (if applicable). The information that you provided on the Aon Employment Application and Background Investigation Disclosure form will be used to conduct this background investigation.

Nothing in this letter is intended or should be construed as a contract or guarantee of indefinite employment. Employment with Aon Consulting is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause. This letter supersedes any prior representation or agreements between you and Aon Consulting, whether written or oral. This employment letter may not be modified or amended except by a written agreement, signed by the President of the Company for which you work, or his or her designee.

Dan, we believe you will make a significant contribution to Aon Consulting and we look forward to you joining us on a start date to be determined. For your convenience, we have provided two copies of this letter. Please confirm your acceptance of this offer by signing below and faxing all pages of this offer letter to Christy Alyea, New Hire Onboarding Coordinator, at 312-381-7687. This offer will be rescinded if we do not receive your reply within one week of the issue date. Should you have any questions, please do not hesitate to contact me at 919.786.6259.

We hope you will find working at Aon Consulting to be a rewarding experience.

Sincerely,

Lucia Apollo Shaw
HR Director - Recruiting

cc: Jerry Barbanel

I confirm my acceptance of employment with Aon Consulting subject to the terms and conditions set forth above.

Daniel Junk                                    11/9/06
                                               Date

# Exhibit B

Nov 09 06 10:50a    Chris Junk                                                    843-645-2520          p.8

# NON-SOLICITATION AGREEMENT

NON-SOLICITATION AGREEMENT ("Agreement") dated as of November 20, 2006 (the "Effective Date") between Aon Consulting, Inc., a New Jersey corporation, including affiliates, subsidiaries and parent companies (collectively, "the Company"), and Daniel Junk (the "Employee").

## R E C I T A L S

WHEREAS, Employee wishes to be employed by the Company; and

WHEREAS, the Company desires to hire Employee on an at-will basis, and one condition of such hiring is the execution of this Agreement by Employee.

NOW, THEREFORE, in consideration of the promises made by Company set forth above, and the mutual covenants and agreements set forth below, the parties agree:

### Section 1. Recitals; Duties; Covenants.

(a)    **Recitals.** Aon Group, Inc., a Maryland corporation with its executive headquarters in Chicago, Illinois, and its subsidiaries and affiliates (and divisions thereof) including the Company (collectively "Aon Group") are in the business of providing conventional and alternative risk management products and services covering the businesses of insurance brokerage, reinsurance brokerage, benefits consulting, compensation consulting, human resources consulting, management consulting, managing underwriting and related insurance services, including accounting, claims management and handling, contract wording, information systems and actuarial (the "Business") as well as soliciting and servicing the insurance and reinsurance needs of numerous commercial and individual clients which are national and international and are not confined to any geographic area. An essential element of the Business is the development and maintenance of personal contacts and relationships with clients. Because of these contacts and relationships, it is common for Aon Group's clients to develop an identification with the employee who serves its insurance needs rather than with Aon Group itself. Aon Group, however, invests considerable time and money necessary for a relationship between its employee and a client to develop and be maintained, in that Aon Group pays the employee's salary and reimburses the employee for business expenses. Aon Group also assists its employees in servicing clients by making available to these employees legal advice, accounting support, advertising and other corporate services.

The personal identification of clients of Aon Group with an Aon Group employee creates the potential for the employee's appropriation of the benefits of the relationships developed with clients on behalf of and at the expense of Aon Group. Since Aon Group would suffer irreparable harm if an employee left the Company's employ and solicited the insurance or other related business of clients of the Company and Aon Group, it is reasonable to protect the Company and Aon Group against solicitation activities by an employee for a limited period of time after an employee leaves the Company so that Aon Group may renew or restore its business relationship with its clients.

The Company and the Employee acknowledge and agree that the covenant contained in Sections 1(b) and (c) below is reasonably necessary for the protection of the Company and Aon Group and is reasonably limited with respect to the activities it prohibits, its duration (particularly in the context of annual and multi-year insurance renewal periods), its geographical scope and its effect on the Employee and the public. The parties acknowledge that the purpose and effect of the covenant simply is to protect the Company and Aon Group for a limited period of time from unfair competition by the Employee.

(b)    **Covenant Not to Solicit.**  The Employee hereby covenants and agrees that, except with the prior written consent of the Company, the Employee will not, for a period of two (2) years after the end of employment, compete directly or indirectly in any way with the Business. For the purposes of this Agreement, "compete directly or indirectly in any way with the Business" means to enter into or attempt to enter into (on Employee's own behalf or on behalf of any other person or entity) any business relationship of the same type or kind as the business relationship which exists between Aon Group and its clients or customers to provide services related to the Business for any individual, partnership, corporation, association or other entity who or which was a client or customer for whom the Employee worked or became familiar with during the twenty-four (24) months prior to the end of employment. "Client" or "customer" means any person or entity listed on the books of Aon Group as such.

The Employee acknowledges that there is no general geographical restriction contained in the preceding paragraph because the restriction applies only to the specified clients and customers of Aon Group.

Nothing in this Agreement shall prohibit the Employee from obtaining a livelihood for the Employee or his or her family by being engaged in the Business. The intent of the parties is that the restrictive covenant of non-competition by the Employee is limited to those clients and customers of Aon Group, as reflected by the books of Aon Group, during the twenty-four (24) months prior to the end of the Employee's employment with the Company.

(c)    **Covenant Not to Hire.**  The Employee hereby also agrees not to induce or attempt to induce, or to cause any person or other entity to induce or attempt to induce, any person who is an employee of Aon Group to leave the employ of Aon Group for a period of two (2) years after the end of employment.

Section 2.  **Company's Right to Injunctive Relief; Attorneys' Fees.**

The Employee acknowledges that the Employee's services to the Company are of a unique character which gives them a special value to the Company, the loss of which cannot reasonably or adequately be compensated in damages in an action at law, and that a breach of Sections 1 and 3 of this Agreement will result in irreparable and continuing harm to the Company or Aon Group, or both, and that therefore, in addition to any other remedy which the Company or Aon Group, or both, may have at law or in equity, the Company and Aon Group shall be entitled to injunctive relief for a breach of this Agreement by the Employee. In the event that any action is filed in relation to this Agreement, the

-2-

prevailing party in the action shall recover from the non-prevailing party, in addition to any other sum that either party may be called upon to pay, a reasonable sum for the prevailing party's attorney's fees.

Section 3. **Trade Secrets and Confidential Information.**

(a)    The Employee acknowledges that the Company's and Aon Group's business depend to a significant degree upon the possession of information which is not generally known to others, and that the profitability of the business of the Company and Aon Group requires that this information remain proprietary to the Company and Aon Group.

(b)    The Employee shall not, except as required in the course of employment by the Company, disclose or use during or subsequent to the course of employment, any trade secrets or confidential or proprietary information relating to the business of the Company or Aon Group of which the Employee becomes aware by reason of being employed by the Company or to which Employee gains access during his employment by the Company and which has not been publicly disclosed (other than by Employee in breach of this provision). Such information includes client and customer lists, data, records, computer programs, manuals, processes, methods and intangible rights which are either developed by the Employee during the course of employment or to which the Employee has access. All records and equipment and other materials relating in any way to any confidential information relating to clients or to the business of the Company or Aon Group shall be and remain the sole property of the Company and Aon Group during and after the end of employment.

(c)    Upon termination of employment, the Employee shall promptly return to the Company all materials and all copies or tangible embodiments of materials involving any confidential information in the Employee's possession or control.

Section 4. **Mergers and Consolidations; Assignability.**

The rights and obligations under this Agreement shall inure to the benefit of and be binding upon the Company and its successors and assigns. By way of explanation, and without limiting the generality of the foregoing sentence, if the Company or any entity resulting from any merger or consolidation referred to in this Section 4 is merged with or consolidated into any other entity or entities, or if substantially all of the assets of the Company or any such entity are sold or otherwise transferred to another entity, the provisions of this Agreement shall be binding upon and shall inure to the benefit of the continuing entity in or the entity resulting from such merger or consolidation or the entity to which such assets are sold or transferred. This Agreement shall not be assignable by the Employee.

Section 5. **Miscellaneous.**

(a)    **Waiver and Modification.**   Waiver of any term or condition of this Agreement by any party shall not be construed as a waiver of a subsequent breach or failure of the same term or condition, or a waiver of any other term or condition of this Agreement. Any waiver must be in writing. This Agreement may not be amended, altered or modified without the prior written consent of both parties

and such instrument must acknowledge that it is an amendment or modification of this Agreement.

(b)  **Captions**. The captions in this Agreement are not part of its provisions, are merely for reference and have no force or effect. If any caption is inconsistent with any provision of this Agreement, such provision shall govern.

(c)  **Governing Law and Choice of Forum**. The validity, interpretation, construction, performance, enforcement and remedies of or relating to this Agreement, and the rights and obligations of the parties hereunder, shall be governed by and construed in accordance with the substantive laws of the Employee's state of residence on the Effective Date, without regard to the conflict of law principles, rules or statutes of any jurisdiction.

(d)  **Severability**. To the extent that the terms set forth in this Agreement or any word, phrase, clause or sentence is found to be illegal or unenforceable for any reason, such word, phrase, clause or sentence shall be modified or deleted in such manner so as to afford the Company and Aon Group the fullest protection commensurate with making this Agreement, as modified, legal and enforceable under applicable laws, and the balance of this Agreement shall not be affected thereby, the balance being construed as severable and independent.

(e)  **Employee-at-Will**. Nothing in this Agreement shall be construed to create contractual employment rights other than as an Employee terminable at-will.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the day and year first above written.

**AON CONSULTING, INC.**

BY:_____

TITLE:_____

_____
DANIEL JUNK

-4-

## Appendix A

### Guidelines Regarding Ethical Conduct

**When Leaving Your Current Employer**
If you are currently employed, we ask that you not take any action that could be perceived as unethical or unlawful conduct as you leave your current position. We ask that you observe the following:

1. Give your employer ample notice of your departure.
2. Cooperate with your employer in wrapping up your employment and transitioning your duties.
3. Do not take or copy any information from your employer that could be considered a trade secret or confidential information, including but not limited to customer lists and pricing information.
4. While you are still working for your current employer do not solicit your employer's clients, and do not encourage others to leave their employment with your employer.

We are also taking this opportunity to inform you of the kinds of property that you should not remove from your employer's offices. This list (which is detailed below) is not meant to be exhaustive but should be fairly indicative of the kinds of sensitive materials that should not be retained in your possession:

- Documents or files relating to any current or prospective client
- Proposals, prospect forecasts, sales forecasts or business plans
- Paper or electronic files relating to clients or contacts
- Client or contact lists
- Personnel information or information relating to other employees
- Rolodexes
- Memoranda unrelated to one's status as an employee
- Confidential or market sensitive material
- Telephone or e-mail directories

Please note that some of these items may contain both your personal information and the employer's property, such as calendars, address books, Rolodexes, or pocket computer information managers. Please bring these items to the attention of your current supervisor and follow his/her instructions as to the disposition of those items. Be sure to confirm the instructions in writing and to follow them to the letter.

**When Joining Aon**
When you begin your employment with Aon Corporation we ask that you adhere to your obligations not to disclose any trade secrets or confidential information belonging to your former employer. If you have a confidentiality agreement, non-solicitation agreement, non-compete agreement or intellectual property agreement with your former employer, we ask that you strictly adhere to those agreements. If you have any such agreement or any other agreement that restricts your post-termination activities, we require that you disclose those obligations to us and provide us with a copy of such agreements.

# Exhibit C

# Aon Consulting

## Confidentiality Agreement

As an employee of Aon Consulting, Inc. ("Aon Consulting"), I, _Daniel L. Junk_ understand that I will have access to certain valuable confidential information which is the property of Aon Consulting and its Aon affiliates. This confidential and proprietary information (the "Information") may include, but is not limited to, information regarding Aon Consulting's:

- Internal records, systems, and methods of operating its business;
- Internal policies, practices, and procedures;
- Personnel, and their compensation and benefits;
- Financial, pricing, and cost information;
- Management structure and management development plans;
- Sales and client development plans;
- Client lists;
- Client relationships and services provided;
- Client personnel, compensation, and financial information; and
- Prospect lists and proposals.

This Information may also include:

- Materials developed by me during the course of my employment with Aon Consulting;
- Any other proprietary business data; and
- Any other material designated by Aon Consulting as confidential or proprietary.

I understand that safeguarding this Information is critical to sustaining Aon Consulting's long-term client and other business relationships. Unless required by my job or by law, I will not disclose any of this Information to third parties nor permit any third party to have access to such Information. I also agree that I will not remove any documents from the office or premises of Aon Consulting for any purpose other than for a purpose directly related to the business of Aon Consulting and within the scope of my employment with Aon Consulting.

Should I receive a subpoena or other similar request to disclose any confidential information, I will promptly notify management so that Aon Consulting may seek an appropriate protective order or waive compliance with this Confidentiality Agreement.

1

03/21/06

Aon Consulting
Confidentiality Agreement
Page 2


I understand and agree that all materials and things embodying or reflecting this Information are the sole property of Aon Consulting and its Aon affiliates. Upon the termination of my employment with Aon Consulting, I agree to immediately deliver to Aon Consulting all the materials and things embodying any of the Information disclosed to me in the course of my employment with Aon Consulting. I will not retain any copies or reproductions thereof nor shall I dispose of any such materials and things or copies or reproductions thereof to any third party.

I understand that this Confidentiality Agreement is not a non-solicitation or a non-competition Agreement.

I understand and agree that this Confidentiality Agreement shall survive the termination of my employment with Aon Consulting.


_____                    _11/9/06_____
Employee Signature                           Date

03/21/06

# Exhibit D



*Financial Advisory and
Litigation Consulting Services*

Daniel L. Junk
Vice President

March 30, 2007

Hilton Barbados
Needham's Point
St. Michael
BB11000
Barbados, W.I.

Dear Sir or Madam,

I was a guest at your hotel 31 January 2007 thru 4 February 2007.  I write to
authorize Mr. Gerard Giordano of Aon Consulting to receive a detailed description of all
charges incurred during my stay.  Kindly provide him any and all documentation he
requests on my behalf.  Should you have any questions or need anything further to
comply with my request, please contact me via email or phone.  Thank you in advance.

Sincerely,

Daniel L. Junk
Vice President

Attachment

cc:  Gerard Giordano
     Jerry Barbanel

Aon Consulting, Inc.
75 East 30st Street, New York, NY 10016
tel 212.441.1070 email 212.551.1070 (fax) cell (ate) 450.2002 by email   faj.fal.junk@aonconsulting.www.aon.com

# Exhibit E



**Hilton**
**Barbados**

Mr. and Mrs. Daniel Junk
181 Oldfield Way
Okatie, GA 29909

USA

| | |
|---|---|
| Page | 1 |
| Cashier | 33/MGIBSON |
| Arrival | 31/01/07 |
| Departure | 04/02/07 |

COPY OF TAX INVOICE  96591

| | |
|---|---|
| Room Number | 362 |
| No of Person(s) | 2 |
| Rate USD | 265.00 |
| Frequent Flyer | UA 01265117070 |
| Hilton HHonors | 423652758 |

Hilton Barbados, 04/02/07 12:16 [1] VAT Reg # 20162485-1

| Date | Description | Debit | Credit |
|---|---|---|---|
| 31/01 | -Telephone Auto-Local #362  : 4321922 | | |
| 31/01 | -Internet Access Room | 1.74 | |
| | ->#362  : High Speed I | 29.60 | |
| 31/01 | -Telephone Auto L/D #362  : 18813336651 | 3.83 | |
| 31/01 | -Telephone Auto L/D #362  : 18803310500 | 107.24 | |
| 31/01 | -Room Charge ** US 265.00 x 1.980000 | 524.70 | |
| 01/02 | -Lighthouse Bfast Bev #362  : CHECK #6068 | 9.60 | |
| 01/02 | -Lighthouse B/F Food #362  : CHECK #6154 | 91.08 | |
| 01/02 | -Minibar Bev #362  : CHECK #298 | 18.80 | MINI BAR |
| 01/02 | -R/Serv Dinner Food #362  : CHECK #625 | 61.20 | |
| 01/02 | -R/S Delivery Charge #362  : CHECK #625 | 5.00 | |
| 01/02 | -Room Service Tips #362  : CHECK #625 | 16.00 | |
| 02/02 | -Room Charge ** US 265.00 x 1.980000 | 524.70 | |
| 02/02 | -R/Serv Bfast Food #362  : CHECK #683 | 37.60 | |
| 02/02 | -R/S Delivery Charge #362  : CHECK #683 | 5.00 | |
| 02/02 | -Waters Edge Lun/Food #362  : CHECK #4432 | 24.00 | |
| 02/02 | -Waters Edge Lun/Bev #362  : CHECK #4432 | 20.00 | |
| 02/02 | -Water's Edge Tips #362  : CHECK #4432 | 10.00 | |
| 02/02 | -Internet Access Room | 29.60 | |
| | ->#362  : High Speed I | | |
| 02/02 | -Room Charge ** US 265.00 x 1.980000 | 524.70 | |
| 03/02 | -R/Serv Bfast Food #362  : CHECK #739 | 37.60 | |
| 03/02 | -R/S Delivery Charge #362  : CHECK #739 | 5.00 | |
| 03/02 | -Room Service Tips #362  : CHECK #739 | 10.00 | |
| 03/02 | -Waters Edge Lun/Bev #362  : CHECK #4646 | 28.80 | |
| 03/02 | -Water's Edge Tips #362  : CHECK #4646 | 6.00 | |
| 03/02 | -Waters Edge Lun/Bev #362  : CHECK #4674 | 14.40 | |

*The Place You'd Rather Be*



# Hilton
**Barbados**

Mr. and Mrs. Daniel Junk
181 Oldfield Way
Okatie, GA 29939

USA

| | |
|---|---|
| Page | 2 |
| Cashier | 33/YGIBSON |
| Arrival | 31/01/07 |
| Departure | 04/02/07 |

| | |
|---|---|
| Room Number | 362 |
| No of Person(s) | 2 |
| Rate USD | 265.00 |
| Frequent Flyer | UA 01265117070 |
| Hilton HHonors | 423652758 |

COPY OF TAX INVOICE  96591

Hilton Barbados, 04/02/07 12:16 [1] VAT Reg # 20162485-1

| Date | Description | Debit | Credit |
|---|---|---|---|
| 03/02 | -Water's Edge Tips #362  : CHECK #4674 | 3.60 | |
| 03/02 | -Room Charge ** US 265.00 x 1.980000 | 524.70 | |
| 04/02 | -Lighthouse B/F Food #362  : CHECK #6711 | 83.16 | |
| 04/02 | -Lighthouse Tips #362  : CHECK #6711 | 15.00 | |
| 04/02 | -Waters Edge Bfst/Bev #362  : CHECK #4924 | 28.80 | |
| 04/02 | -Water's Edge Tips #362  : CHECK #4924 | 7.00 | |
| 04/02 | -Waters Edge Lun/Bev #362  : CHECK #4943 | 14.40 | |
| 04/02 | -Water's Edge Tips #362  : CHECK #4943 | 3.60 | |
| 04/02 | Minibar Bev  oxo fru punch coke | 50.40 | MINI BAR |
| 04/02 | -VAT 7.5% Room (2098.80) | 157.41 | |
| 04/02 | -Service Charge 10% Room (2098.80) | 209.88 | |
| 04/02 | -VAT 15% Other (706.85) | 106.03 | |
| 04/02 | -Service Charge 10% Other (534.84) | 53.48 | |
| 04/02 | Master Card XXXXXXXXXXXX0551    XX/XX | | 3403.65 |

| | Debit | Credit |
|---|---|---|
| Total | 3403.65 | 3403.65 |
| Balance | 0.00 BDS | |

| | |
|---|---|
| VAT @ 7.5% | 157.41 |
| VAT @ 15% | 106.03 |
| Total Service | 263.36 |

Valid with computer print only.

For billing inquiries, please email us at: billing.barbados@hilton.com

*The Place You'd Rather Be*

# Exhibit F

Lighthouse Terrace Restaurant
Hilton Barbados
VAT#20164265-1

9008 SANDRA
```
TBL 1/1        CHK 6063 GST 1
        01FEB'07  8:14AM
```

```
  2 Coffee @ 4.80        9.60

     SubTotal            9.60
     Service Charge      0.96
     15% VAT             1.44
8:14 Total Due        BD$12.00
```

Tip _____ 2.50

Total _____ 14.50

Room Number _____ 362

_____
Print Name

_____
Signature

# Exhibit G

Lighthouse Terrace Restaurant
Hilton Barbados
VAT#20164285-1

2025 JANKIE
```
TBL 33/1      CHK 6154 GST 2
       01FEB'07 10:01AM
```

```
   2 @ 45.54
    B/Fast Hilton C      91.08

    SubTotal             91.08
    Service Charge        9.11
    15% VAT              13.66
10:01 Total Due      BD$113.85
```

Tip _____

Total _____ *113.85*

Room Number ____ *362*

_____ *Christine Jank*
        Print Name

_____ *[signature]*
        Signature

# Exhibit H

```
           Room Service
          Hilton Barbados
          VAT#20164:85-1

6014 RENEE
-----------------------------------
 TBL 362/1      CHK 625  GST 1
        01FEB'07  7:09PM
-----------------------------------

 1 French Onion S       10.00
 1 Hilton Burger        24.00
 1 Nawed's Burger       27.20
 1 Delivery Charge       5.00

    SubTotal            66.20
    Service Charge       6.62
    15% VAT              9.93
 7:10 Total Due      BD$82.75

Tip _____    16.00

Total _____    98.75

Room Number  362

          Christine Turk
     Print Name

          CNJurk
     Signature
```

# Exhibit I

```
              Room Service
              Hilton Barbados
              VAT#20164285-1

6011 ANGELA

TBL 362/1      CHK 683  GST 1
        02FEB'07  8:10AM

  1 Healthy Start       37.60
  1 Delivery Charge      5.00

     SubTotal           42.60
     Service Charge      4.26
     15% VAT             6.39
  8:10 Total Due     BD$53.25

Tip _____  10.00

Total _____  63.25

Room Number _____  362

           Christine Junk
         Print Name

              Junk
         Signature
```

# Exhibit J

```
           Waters Edge
           Hilton Barbados
           VAT#20164285-:

2027 KEISHA                        1

TBL 33/1      CHK 4432 GST 1
              362 AB
         02FEB'07  1:25PM

  1 Chicken Caesar      24.00
  2 Bango Bash @ 10.00  20.00

    Subtotal            44.00
    Service Charge       4.40
    15% VAT              6.60
1:48 Total Due    BD$55.00

Tip _____  10.10 BD

Total _____  65.10

Room Number _____  362
```

*Christine Junk*

Print Name

*CHJunk*

Signature

# Exhibit K

```
           Room Service
           Hilton Barbados
           VAT#20164285-1

6011 ANGELA

TBL 362/1      CHK 739  GST 1
        03 FEB 07  8:37PM


  1 Healthy Start      37.60
  1 Delivery Charge     5.00

    SubTotal           42.60
    Service Charge      4.26
    15% VAT             6.39
8:38 Total Due      BD$53.25

Tip _____  10.50

Total _____  63.75

Room Number ____  362

        Christine Trunk
        Print Name

        [signature]
        Signature
```

# Exhibit L

```
              Waters Edge
            Hilton Barbados
            VAT#20164285-1

        5017 ANDRE
        -------------------------
        CHK 4646      RM362
              03FEB'07 11:44AM


          2 Ragin Bajan @ 14.40 28.80

            Beverage        28.80
            Service Charge   2.88
            15% VAT          4.32
        11:44 Total Due   BD$36.00

        Tip  _____  7.

        Total _____  42.

        Room Number _____  362

                      D. Junk
                    Print Name

                    Signature
```

# Exhibit M

Waters Edge
Hilton Barbados
VAT#201642B5-1

5013 NEVILLE

------------------------------------
TBL 408/1      CHK 4674
        03FEB'07 12:32PM
------------------------------------

1 Ragin Bajan              14.40

    Subtotal               14.40
    Service Charge          1.44
    15% VAT                 2.16
12:32 Total Due        BD$18.00

Tip _____          3.60

Total _____          4.60

Room Number _____   362

        D. Jenks

        Print Name

        Signature

# Exhibit N

Lighthouse Terrace Restaurant
Hilton Barbados
VAT#20164285-1

2034 MARILYN

TBL 35/1          CHK 6711 GST 2
          04FEB'07  8:23AM

    2 @ 41.58
      B/Fast Hilton C      83.16

      SubTotal            83.16
      Service Charge       8.32
      15% VAT             12.47
    8:23 Total Due    BC$103.95

Tip _____ 15

Total _____ 118.95

Room Number _____ 362

_____ D. Jim _____
        Print Name

_____
        Signature

# Exhibit O

```
            Waters Edge
          Hilton Barbados
          VAT#20164285-1

5012 RODNEY
----------------------------------
CHK 4924 04FEB'07 10:52AM
----------------------------------

    2 Ragin Bajan @ 14.40 28.80

      Subtotal          28.80
      Service Charge     2.88
      15% VAT            4.32
10:52 Total Due      BD$36.00

Tip _____  7 ⁰⁰

Total _____ 43 ⁰⁰

Room Number _____ 352

            D Juak
            -----------------
            Print Name

            -----------------
            Signature
```

# Exhibit P

```
                    Waters Edge
                    Hilton Barbados
                    VAT#20164285-1

        5012 RODNEY
        -------------------------------------
        CHK 4943 04FEB'07 11:37AM
        -------------------------------------

          1 Ragin Bajan            14.40

             Subtotal              14.40
             Service Charge         1.44
             15% VAT                2.16
        11:39 Total Due          BDY18.00

        Tip _____    3.60

        Total _____    21.60

        Room Number _____   362

                 D. Jurk
        -------------------------------------
                  Printed Name


        -------------------------------------
                  Signature
```

# Exhibit Q

SafeScreen - Applicant Entry

## Employment Application ⊙
Authorized by AON SERVICE CORPORATION

| Personal Data |
|---|

* indicates a required fi

**APPLICANT NOTE:** This form is intended for use in evaluating your qualifications for employment. It is not an employment contract. Please answer all questions completely and to the best of your ability. False or misleading statements are grounds for refusal or termination of employment and benefits. It is the policy of this company as an Equal Opportunity Employer to ensure that there shall b no discrimination against any employee or applicant for employment on the basis of age, race, color, creed, marital status, religion, sex national origin, disability or veteran status, or any other status protected by law. The Affirmative Action Plan Narrative Document for Veterans and Persons with Disabilities is available for review by all employees/applicants upon request during normal business hours by contacting an HR representative.

Smoke-Free Environm

— Social Security Number* —

[REDACTED]

— Personal Information —

**Last Name***
Junk

**First***
Daniel

**Middle**
L

**Address or P.O. Box***
181 Oldfield Way

**Apt/Suite**

**Years At Address**
1

**City***
Okatie

**State***
South Carolina

**Zip Code*** ⊙
29909

— Home Phone / Day Phone —

**Home Phone** ⊙
843-645-2520

**Daytime (Work) Phone** ⊙
646-209-9181

**May we contact you at work?**
● Yes ● No

Are you 18 years of age or older?
● Yes ● No

Are you legally authorized to work in this country?
(Proof of authorization will be required upon employment.)
● Yes ● No

Will you now or in the future require sponsorship for employment visa status?
● Yes ● No

Have you ever been employed by AON or an AON subsidiary?
If yes, please complete the information below.
● Yes ● No

**Start Date** ⊙
-- Month --   -- Year --

**End Date** ⊙
-- Month --   -- Year --

**Position(s) Held**

**Reason For Leaving**

**Name of AON Subsidary**

SafeScreen - Applicant Entry

Page 2 of 15

**Position Applying For**

Business Development

**Hours/Day Availability**

**Salary Requirement**

$ 200000    per Year

**Location Preference**

**What date are you available to start?** ❓

11/20/2006    (mm/dd/yyyy)

**Employment Desired**

Full Time ● Yes ● No         Part Time ● Yes ● No         Temporary ● Yes ● No

Will you be working in California?

● Yes ● No

What experience gained through the US Military Service is relevant to the position you are seeking?

Can you be bonded and/or receive a security clearance after hire?

● Unknown ● Yes ● No

Have you ever been discharged by, or asked to resign from, any company?

If yes, please give the name of the company and the reason for the discharge or request to resign.

● Yes ● No

Are you willing to travel?

If yes, any restrictions on time periods?

● Yes ● No

If requested, would you be willing to work overtime or otherwise adjust your work schedule to meet the Company's needs?

If no, please explain.

● Yes ● No

Are you willing to relocate?

If yes, any restrictions?

not in first year

● Yes ● No

**How were you referred to Aon?***

Other Search Engine

**Description***

SafeScreen - Applicant Entry

## Criminal Convictions

\* indicates a required fi

**Have you been convicted of a criminal offense?**\*

If yes, describe in detail below the circumstances surrounding such offense, including the date and location of the offense, the name of the court, etc. ⊕

☉ Yes  ◉ No

(limit 255 characters)

**Important Note:** Do not include convictions that were annulled, sealed, or expunged, or convictions that resulted in referral to and participation in a pretrial or posttrial diversion program. *(Applicants in California, Illinois, Connecticut, Georgia, Hawaii and Massachusetts should read the information below before answering this question.)*

Conviction of a crime will not necessarily disqualify you from employment. Factors such as the age and time of the offense, seriousness and nature of the violation, job relatedness, and rehabilitation will be considered when making any employment decisions.

**California Applicants:** This does not include convictions under California Health & Safety Code §§11357(b) or (c), 11360(b) (formerly subdivision (c) of section 11360), 11364, 11365, or 11550 related to marijuana offenses that occurred two or more years before the application.

**Connecticut Applicants:** Applicants are not required to disclose the existence of any arrest, criminal charge, or conviction, the records of which have been erased. Criminal records subject to erasure are records pertaining to a finding of delinquency or the fact that a child was a member of a family with service needs, an adjudication as a youthful offender, a criminal charge that has been dismissed or nolled (not prosecuted), a criminal charge for which the person was found not guilty, or a conviction for which the offender received an absolute pardon. Any person whose criminal records have been erased is deemed to have never been arrested within the meaning of the law as it applies to the particular proceedings that have been erased, and may so swear under oath.

**Georgia Applicants:** Applicants are not required to disclose information pertaining to any "first offender discharge."

**Hawaii Applicants:** Do not answer this question at this time. You will only have to answer this question if you receive a conditional offer of employment. Answer "No" if a conditional offer of employment has not been made.

**Illinois Applicants:** Under Illinois Public Act 93-0211, you are not required to disclose sealed or expunged records.

**Massachusetts Applicants:** Applicants for employment with a sealed record on file with the Commissioner of Probation may answer "no record" with respect to an inquiry relating to prior arrests, criminal court appearances, or convictions. In addition, Massachusetts Applicants for employment may answer "no record" with respect to any inquiry relative to prior arrests, court appearances and adjudications in all cases of delinquency or as a child in need of services which did not result in a complaint transferred to the superior court for criminal prosecution. Massachusetts applicants should not disclose information regarding first-time misdemeanor convictions for drunkenness, simple assault, speeding, minor traffic violations, affray or disturbance of the peace.

SafeScreen - Applicant Entry

## Employment History

* indicates a required fi

Please provide details of your employment history, starting with the most recent first. You must complete at least 1 employer block on this page.

### Employer 1

**Company Name*** Renew Data Corp.

**Type of Business** Electronic Evidence

**Phone** 512-276-5500

**Street Address** 9500 Arboretum Blvd.

**City*** Austin

**State*** Texas

**Employed From*** May 2006

**Employed To*** Current 2006

**Position Title** NE Director Sales

**Description of Duties**

Generate opportunities and revenue within the East and West coast territories

(limit 255 characters)

**Reason for Leaving** Opportunity at AON

**Starting Salary** $ 225000 per Year

**Ending Salary** $ 225000 per Year

**Other Compensation (commissions, bonus, etc.)** 310000

**Name of Supervisor/Contact** Jake Frazier

**Title of Supervisor/Contact** National Sales Director

**Supervisor/Contact's Phone** 512-276-5506

**Is this current employment?*** ⦿ Yes ◯ No

**May we contact this employer?*** ⦿ Yes ◯ No ◯ Post-Hire

### Employer 2

**Company Name*** DolphinSearch Inc.

**Type of Business** Electronic Discovery

**Phone** 805-585-2102

**Street Address** 5855 Olivas Park Drive

**City*** Ventura

**State*** California

**Employed From*** January 2006

**Employed To*** May 2006

**Position Title** VP Sales

**Description of Duties**

Hire national sales force to develop relationships and revenue

(limit 255 characters)

**Reason for Leaving** Returned to RenewData

**Starting Salary** $ 175000 per Year

**Ending Salary** $ 175000 per Year

**Other Compensation (commissions, bonus, etc.)** 225000

**Name of Supervisor/Contact** Dan Ferrante

**Title of Supervisor/Contact** CEO

**Supervisor/Contact's Phone** 805-585-2102

**Is this current employment?***

**May we contact this employer?***

SafeScreen - Applicant Entry

◉ Yes ○ No                    ◉ Yes ○ No ○ Post-Hire

**Employer 3**

**Company Name***
RenewData Corp.

**Type of Business**
Electronic Evidence

**Phone** ❓
512-276-5500

**Street Address**
9500 Arboretum Blvd

**City***
Austin

**State***
Texas

**Employed From*** ❓
October    2003

**Employed To*** ❓
January    2006

**Position Title**
National Sales Director

**Description of Duties** ❓

Hire national sales team to develop relationships and generate revenue

(limit 255 characters)

**Reason for Leaving**
Equity position at DolphinSear

**Starting Salary** ❓
$ 175000    per Year

**Ending Salary** ❓
$ 175000    per Year

**Other Compensation (commissions, bonus, etc.)**
225000

**Name of Supervisor/Contact**
Bob Gomes

**Title of Supervisor/Contact**
CEO

**Supervisor/Contact's Phone** ❓
512-276-5510

**Is this current employment?***
◉ Yes ○ No

**May we contact this employer?***
◉ Yes ○ No ○ Post-Hire

**Employer 4**

**Company Name***
InMatrix Inc.

**Type of Business**
Litigation support Software

**Phone** ❓

**Street Address**
11 W 42nd Street

**City***
New York

**State***
New York

**Employed From*** ❓
November    2001

**Employed To*** ❓
October    2003

**Position Title**
Director Sales

**Description of Duties** ❓

Hire sales team to develop relationships and generate revenue

(limit 255 characters)

**Reason for Leaving**
Opportunity at RenewData

**Starting Salary** ❓
$ 175000    per Year

**Ending Salary** ❓
$ 265000    per Year

**Other Compensation (commissions, bonus, etc.)**
150000

**Name of Supervisor/Contact**
John Lord

**Title of Supervisor/Contact**
CEO/Founder

**Supervisor/Contact's Phone** ❓

**Is this current employment?***
◉ Yes ○ No

**May we contact this employer?***
◉ Yes ○ No ○ Post-Hire

**Employer 5**

**Company Name***

**Type of Business**

**Phone** ❓

SafeScreen - Applicant Entry

KM Consulting

Consulting

**Street Address**
22 Southern Hills drive

**City***
Skillman

**State***
New Jersey

**Employed From*** ❷
October        2000

**Employed To*** ❷
November        2001

**Position Title**
Principal/President

**Description of Duties** ❷

Outside consultant for Katten Muchin Zavis in Chicago. Designed and implemented its knowledge management intranet

(limit 255 characters)

**Reason for Leaving**
Job was finished

**Starting Salary** ❷
$ 200     per Hour

**Ending Salary** ❷
$ 200     per Hour

**Other Compensation (commissions, bonus, etc.)**
none

**Name of Supervisor/Contact**
Al Wood

**Title of Supervisor/Contact**
Exec Mgr

**Supervisor/Contact's Phone** ❷

**Is this current employment?**
⦿ Yes   ◉ No

**May we contact this employer?***
⦿ Yes   ◉ No   ◉ Post-Hire

**Employer 6**

**Company Name***
SRA International

**Type of Business**
Software Integrator/developer

**Phone** ❷

**Street Address**
4300 Fair Lakes Drive

**City***
Fair Lakes

**State***
Virginia

**Employed From*** ❷
April        2000

**Employed To*** ❷
October        2000

**Position Title**
Sr. Principal

**Description of Duties** ❷

Knowledge Management Consultant

(limit 255 characters)

**Reason for Leaving**
Division was closed down

**Starting Salary** ❷
$ 140000     per Year

**Ending Salary** ❷
$ 140000     per Year

**Other Compensation (commissions, bonus, etc.)**
110000

**Name of Supervisor/Contact**
Kevin O'Connor

**Title of Supervisor/Contact**
Managing director

**Supervisor/Contact's Phone** ❷

**Is this current employment?***
⦿ Yes   ◉ No

**May we contact this employer?***
⦿ Yes   ◉ No   ◉ Post-Hire

**Employer 7**

**Company Name***
Simpson ThacherBartlett

**Type of Business**
Law firm

**Phone** ❷
212-455-2000

**Street Address**
425 Lexington Avenue

**City***
New York

**State***
New York

SafeScreen - Applicant Entry

Page 7 of 15

**Employed From\*** 🔘
September ▦ 1993 ▦

**Employed To\*** 🔘
April ▦ 2000 ▦

**Position Title**
Associate

**Description of Duties** 🔘
Various - lawyer

(limit 255 characters)

**Reason for Leaving**
Opportunity at SRA

**Starting Salary** 🔘
$ 20000    per Year ▦

**Ending Salary** 🔘
$ 140000    per Year ▦

**Other Compensation (commissions, bonus, etc.)**
60000

**Name of Supervisor/Contact**
Mike Corrigan

**Title of Supervisor/Contact**
Partner

**Supervisor/Contact's Phone** 🔘

**Is this current employment?\***
🔘 Yes  ⦿ No

**May we contact this employer?\***
⦿ Yes  🔘 No  🔘 Post-Hire

https://www.verificationsinc.com/verif/popup_view_app.cfm?app=TRUE&ssn=28168515...  7/11/2007

SafeScreen - Applicant Entry

---

**Education**

* indicates a required fi

**High School**

**Name of School***
Worthington High School

**City***
W@orthington

**State***
Ohio

**Did You Graduate?***
Yes

**Degree***
Diploma

--- **Colleges / Universities / Technical Schools** ---

Please provide details of your academic history starting with the most recent first.

**School 1**

**Name of School***
New York Law School

**City***
New York

**State***
New York

**School Type***
College/University

**Did You Graduate?***
Yes

**Highest Degree Earned**
JD - Juris Doctorate

**Date Degree Was Received**
June   1997

**Major**

**Minor**

Select the dates you attended the school. If currently enrolled, the Attended To date would be July 2007.

**Attended From**
August   1993

**Attended To**
June   1997

**School 2**

**Name of School***
Franklin University

**City***
Columbus

**State***
Ohio

**School Type***
College/University

**Did You Graduate?***
Yes

**Highest Degree Earned**
BA/BS - Bachelor's Degree

**Date Degree Was Received**
August   1989

**Major**
Finance

**Minor**
Business Administration

Select the dates you attended the school. If currently enrolled, the Attended To date would be July 2007.

**Attended From**
September   1986

**Attended To**
August   1989

**School 3**

**Name of School***
Ohio State University

**City***
Columbus

**State***
Ohio

**School Type***
College/University

**Did You Graduate?***
No

**Highest Degree Earned**
No Graduation

**Date Degree Was Received**
-- Month --   -- Year --

**Major**

**Minor**

Select the dates you attended the school. If currently enrolled, the Attended To date would be July 2007.

**Attended From**
September   1981

**Attended To**
October   1983

**School 4**

---

SafeScreen - Applicant Entry

SafeScreen - Applicant Entry

**Professional Licenses**

* indicates a required fi

If this page does not apply to you, click **Save and Continue** > to move to the next page.

If you have any professional licenses, please list them below.

**Professional License 1**    Show / Hide

License Type
-- Please Select --

Description if "Other" type

Expiration Date
-- Month --    -- Year --

License Number

State Issued
-- Please Select --

**Professional License 2**    Show / Hide

**Professional License 3**    Show / Hide

**Professional License 4**    Show / Hide

**Professional License 5**    Show / Hide

**Registrations / Certifications**

Professional licenses, registrations or certifications currently held. (ASA, FSA, CFA, CLU, CPA, CNE, etc.) List, including state of issuance and expiration date. ❸

(limit 255 characters)

**Additional**

List additional relevant skills or abilities. ❸

(limit 255 characters)

**Personal Computer Experience**

List PC software experience including programming languages. ❸

(limit 255 characters)

**Organizations & Activities**

Indicate participation in professional, technical, trade organizations or extracurricular activities, which you think would be helpful to us in evaluating your qualifications. (You may omit those activities which indicate your race, age, religion, color, national origin, ancestry, sex, sexual orientation, marital status, disability, or political persuasion.) ❸

(limit 255 characters)

**Awards & Honors**

List Awards, Honors, etc. ❸

SafeScreen - Applicant Entry

(limit 255 characters)

SafeScreen - Applicant Entry

---

**Certification**

* indicates a required fi

In consideration of my employment, I agree to conform to the rules and regulations of the Aon subsidiary for which I am hired and agree that my employment may be terminated, with or without cause, and with or without notice, at any time at either the company's or my option. I also understand and agree that I am not being hired for any specified period of time. In addition, I understand and agree that the terms and conditions of my employment may be changed by the company at any time with or without notice. I also understand that any company manuals or handbooks which may be provided to me during the course of my employment shall not be construed as a contract of employment for any specified period of time.

I hereby authorize all persons or institutions to give Aon Corporation or its affiliates or agents full information concerning my character, qualifications, education and employment. I release all parties from all liability for any damage that may result from furnishing that information to Aon Corporation or its affiliates or agents.

I understand that any false or misleading information or omissions on this application or on any resume or other document I have submitted to you, or made by me in any interview(s) I may have with you, may preclude an offer of employment or may result in a withdrawal of an employment offer, or may result in my discharge from employment if I am already employed at the time the false or misleading information or omission is discovered.

IT IS UNLAWFUL IN MASSACHUSETTS TO REQUIRE OR ADMINISTER A LIE DETECTOR TEST AS A CONDITION OF EMPLOYMENT OR CONTINUED EMPLOYMENT. AN EMPLOYER WHO VIOLATES THIS LAW SHALL BE SUBJECT TO CRIMINAL PENALTIES AND CIVIL LIABILITY.

UNDER MARYLAND LAW, AN EMPLOYER MAY NOT REQUIRE OR DEMAND, AS A CONDITION OF EMPLOYMENT, PROSPECTIVE EMPLOYMENT, OR CONTINUED EMPLOYMENT, THAT AN INDIVIDUAL SUBMIT TO OR TAKE A LIE DETECTOR OR SIMILAR TEST. AN EMPLOYER WHO VIOLATES THIS LAW IS GUILTY OF A MISDEMEANOR AND SUBJECT TO A FINE NOT EXCEEDING $100.

---

**Signature**                                              **Date**

This application is valid only for the specific position for which you have applied. When that position is filled, or 60 days after the date of the application, whichever occurs earlier, this application will become invalid. To be considered for any other position, or for the same position after 60 days, you must complete another application for employment.

SafeScreen - Applicant Entry

---

**Background Check Authorization Form**

\* indicates a required fi

**Disclosure**

Employer and Applicant: Do not attach this page to Employment Application.

(Revision 12/23/02)

I authorize AON SERVICE CORPORATION and Verifications, Inc., a consumer-reporting agency, to retrieve information from all personnel, educational institutions, government agencies, companies, corporations, credit reporting agencies, law enforcement agencies at the federal, state or county level, relating to my past activities, to supply any and all information concerning my background. The information received may include, but is not limited to, academic, residential, achievement, job performance, attendance, litigation, personal history, credit reports, driving records, and criminal history records. I understand that this information may be transmitted electronically and authorize such transmission.

May we contact your current employer for verification?\* ☺                     ● Yes ⦿ No

I understand that a Consumer Report or Investigative Consumer Report ("Consumer Report") may be prepared summarizing this information. If my prior employers and/or references are contacted, the report may include information obtained through personal interviews regarding my character, general reputation, personal characteristics and/or mode of living.

I may request a copy of any report that is prepared regarding me and may also request the nature and substance of all information about me contained in the files of the consumer reporting agency. I understand that I have the right to inspect those files with reasonable notice during regular business hours and that I may be accompanied by one other person.

The consumer reporting agency is required to provide someone to explain the contents of my file. I understand that proper identification will be required and that I should direct my request to: Verifications, Inc., 1425 Mickelson Drive, Watertown, SD 57201. Phone 1-877-414-7060 / 1-800-247-0717 / 605-884-1200.

-- Certification --

I hereby certify all the statements and answers set forth on the application form and/or my resume are true and complete to the best of my knowledge, and I understand that if subsequent to employment any such statements and/or answers are found false or information has been omitted, such false statements or omissions will be just cause for the termination of my employment. Further, I understand that by requesting this information, no promise of employment is being made. I am willing that a photocopy of this authorization be accepted with the same authority as the original; and that if employed by the above-named company (except if employed in the US State of California), this authorization will remain in effect throughout such employment.

### REDACTED

| Signature | Social Security Number | Date |
|---|---|---|
| | | |

| Junk | Daniel | L |
|---|---|---|
| **Last Name** | **First Name** | **Middle Name** |
| 181 Oldfield Way | Okatie | SC | 29909 |
| **Street Address** | **City** | **State** | **Zip** |

**Names**

List any other names, AKAs or maiden names that have been used past or present. Also provide the approximate year this alternate name was last used, if available.

| Last Name | First Name | Middle Initial | Year Last Used |
|---|---|---|---|
| | | | -- Please Select -- |
| | | | -- Please Select -- |
| | | | -- Please Select -- |

SafeScreen - Applicant Entry

**Previous Residences**

Please list all other places in which you lived during the last 7 years.

| Address | City | State | Zip Code |
|---|---|---|---|
| 22 Southern Hills | Skillman | New Jersey | 08558 |
| 32 York Drive | Princeton | New Jersey | 08542 |
| 19 Palmer Square | Princeton | New Jersey | 08540 |
| 161 W 16th Street | New York | New York | 10016 |

Would you like a copy of any consumer report regarding you?*

⦿ Yes  ⦿ No

SafeScreen - Applicant Entry