# EXHIBIT 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                             :

DANIEL JUNK,
                                             :

                 Plaintiff,               :

                                               :     No. 07-CIV-4640 (LMM) (GWG)

       - against -               :

                                             :     **DEFENDANTS' FIRST**

AON CORP., AON SERVICE CORPORATION and :     **SET OF INTERROGATORIES**
AON CONSULTING, INC.,                :     **TO PLAINTIFF**          

                                             :

                 Defendants.           :

                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Civil Rules of the United States District Court for the Southern District of New York, including,

but not limited to, Local Civil Rule 33.3, Defendants Aon Corp., Aon Service Corp. and Aon

Consulting, Inc. (collectively "Aon" or "Defendants"), through their undersigned counsel, hereby

request that Plaintiff Daniel Junk ("Plaintiff") answer, under oath, the following interrogatories

within thirty (30) days of service hereof.

## DEFINITIONS

        1.      The term "document" is defined to be synonymous in meaning and equal

in scope to the usage of this term in Fed. R. Civ. P. 34(a), and shall include, without limitation,

any designated document, designated tangible thing, electronically stored information, electronic

or computerized data compilations, writings, drawings, graphs, charts, photographs, sound

recordings, images, and other data or data compilations, stored in any medium from which

information can be obtained either directly, or, if necessary, after translation by the responding

party into a reasonably usable form on CD-ROM or similar digital or electronic media. A draft

or non-identical copy is a separate document within the meaning of this term.

5/06/08

2.     The term "communications" as used herein refers to and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and includes oral or written matter.

3.     The term "Plaintiff," "You" or "Your" means the Plaintiff in this action, Daniel Junk, as well as any and all agents, attorneys, representatives, persons and/or entities acting or purporting to act on Plaintiff's behalf, under his direction or control.

4.     The term "Defendants" means Aon Corp., Aon Service Corp. and Aon Consulting, Inc., either individually and/or collectively.

5.     The term "person" or "individual" is defined as any natural person or business, legal or governmental entity or association.

6.     The term "concerning" means relating to, referring to, describing, evidencing or constituting.

7.     The term "including" shall be construed to mean "without limitation."

8.     The term "identify" with respect to documents means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

9.     The term "identify" with respect to a person means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

10.     The terms "any" and "all" shall be construed to make a request inclusive rather than exclusive.

11.     The connectives "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

12.     The use of the singular form of any word includes the plural and vice versa.

13.     The terms "all" and "each" shall be construed as all and each.

14.     The term "lost commissions" is defined to have the meaning attributed to it by Plaintiff in paragraph 62 of the Complaint.

15.     "Renew Data" means the company, Renew Data Corporation, its present and former parents, subsidiaries, affiliates, predecessors and successors, and each of their present and former partners, officers, directors, employees, agents, attorneys and representatives and other persons acting or purporting to act on its behalf.

16.     The "Action" means the lawsuit commenced by Plaintiff in the United States District Court for the Southern District of New York on or about June 1, 2007, entitled Daniel Junk v. Aon Corp., et al., No. 07-CIV-4640 (LMM).

17.     "Complaint" means the complaint filed by Plaintiff in the Action.

## INSTRUCTIONS

1.     Except where otherwise noted, these Interrogatories are directed at the time period beginning January 1, 2005 and continuing through the date of Plaintiff's response.

2.     Pursuant to Fed. R. Civ. P. 26(e), these Interrogatories shall be continuing in nature, so as to require further and supplemental responses by Plaintiff in the event he obtains or discovers additional information or documents between the time of initial response and the time of hearing or trial.

3

3.    In answering these Interrogatories, Plaintiff shall furnish all information, however obtained, including hearsay, that is available to Plaintiff, including information that is in the actual or constructive possession, custody or control of Plaintiff, as well as any and all agents, attorneys, representatives, persons and/or entities acting or purporting to act on Plaintiff's behalf, under his direction or control.

4.    If Plaintiff cannot answer all or any part of an Interrogatory, after exercising due diligence to secure the full information to do so, answer to the extent possible, then: (a) specify his inability to answer the remainder; (b) state whatever information or knowledge he has concerning the unanswered portion; and (c) detail what he did in attempting to secure the unknown information.

5.    If Plaintiff objects to any part of an Interrogatory, set forth the basis for the objection and respond to all parts of the Interrogatory to which he does not object. Any ground not stated in an objection shall be waived.

6.    If any privilege is claimed as a ground for not answering any Interrogatory in full, provide all of the information required by Fed. R. Civ. P. 26(b)(5).

7.    If any document the identity of which has been called for by these Interrogatories was, but no longer is, in existence or in Plaintiff's possession, custody, or control, state whether the document: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred, voluntarily or involuntarily, to others; or (iv) has been otherwise disposed of. In each instance described in this paragraph, identify the name and address of the current or last known custodian of such document and describe the circumstances surrounding its disposition.

8.    If Plaintiff elects to answer any Interrogatory pursuant to Fed. R. Civ. P. 33(d), Defendants request that Plaintiff identify the particular documents relating to the subject

4

matter of the specific Interrogatory and separately for each document identify: (a) the date of the document; (b) and title of the document.; (c) the authors of the documents; (d) the addressees and/or recipient of the document; (e) the type and subject matter of the document; and (f) the present location or custodian of the document.

## **INTERROGATORIES**

1.      Identify all persons with knowledge or information concerning the statements allegedly made to Plaintiff by Jerry Barbanel as alleged in paragraph 24 of the Complaint.

2.      Identify all documents concerning the statements allegedly made to Plaintiff by Jerry Barbanel as alleged in paragraph 24 of the Complaint.

3.      Identify all persons with knowledge or information concerning Plaintiff's allegation that the statements allegedly made to Plaintiff by Jerry Barbanel in paragraph 24 of the Complaint, were false.

4.      Identify all documents concerning Plaintiff's allegation that the statements allegedly made to Plaintiff by Jerry Barbanel in paragraph 24 of the Complaint, were false.

5.      Identify with specificity all damages sought by Plaintiff in this Action, including the manner in which such alleged damages are calculated.

6.      Identify all persons with knowledge or information concerning the damages sought by Plaintiff in this Action.

7.      Identify all documents upon which Plaintiff intends to rely to prove the damages sought by Plaintiff in this Action.

5

8.      Identify all e-discovery software that Plaintiff offered to clients and/or prospective clients of Renew Data during the period in which Plaintiff was employed by Renew Data.

9.      Identify all persons with knowledge or information concerning the "commissions" Plaintiff allegedly "lost" when he left Renew Data and joined Aon Consulting, as alleged in paragraph 62 of the Complaint.

10.     Identify all persons with knowledge or information concerning Plaintiff's "nationally renowned reputation," "standing" and "connections" "within the e-discovery market place," as alleged in paragraphs 61 and 62 of the Complaint.

11.     Identify all persons with knowledge or information concerning Plaintiff's claim that his "nationally renowned reputation and standing within the e-discovery market place" was "damaged" and "impaired" as a result of Plaintiff's employment with Aon, as alleged in paragraph 62 of the Complaint.

12.     Identify all e-mail addresses used by Plaintiff, during the period May 2006 to the present, to send and/or receive documents concerning any of the allegations asserted by Plaintiff and/or Defendant in this Action.

13.     Identify the location(s) and custodian(s) of all documents, including, e-mails, whether in electronic or hard copy form, upon which Plaintiff intends to rely in this Action.

14.     Identify all persons with knowledge or information concerning the manner in which Plaintiff acquired possession of the documents which he produced with his Rule 26(a) Initial Disclosures.

6

15.    Identify all persons with knowledge or information concerning Plaintiff's use and handling, during the period April 19, 2007 to the present, of the laptop computer provided to him by Aon.

Dated: May 8, 2008
       New York, New York

WINSTON & STRAWN LLP

By: _____
        Lori J. Van Auken (LV 2858)
        Alexis A. Lury (AL 8672)

200 Park Avenue
New York, New York 10166
T:  (212) 294-6700
F:  (212) 294-4700
E-mail:  lvanauken@winston.com

*Counsel for Defendants Aon Corp., Aon Service Corp. and Aon Consulting, Inc.*

Of Counsel:

Timothy J. Rooney
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
T:  (312) 558-5600
F:  (312) 558-5700

TO:

Charles N. Internicola, Esq.
DECKER DECKER DITO & INTERNICOLA, LLP
1610 Richmond Road
Staten Island, New York  10304

*Attorneys for Plaintiff*

7

# EXHIBIT 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DANIEL JUNK,
                      Plaintiff,

          - against -

AON CORP., AON SERVICE CORPORATION and
AON CONSULTING, INC.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No. 07-CIV-4640 (LMM) (GWG)

**DEFENDANTS' FIRST
REQUEST TO PLAINTIFF
FOR THE PRODUCTION
OF DOCUMENTS**

        Pursuant to Rules 26 and 34 Federal Rules of Civil Procedure and the Local Civil

Rules of the United States District Court for the Southern District of New York, Defendants Aon

Corp., Aon Service Corp. and Aon Consulting, Inc. (collectively "Aon" or "Defendants"),

through their undersigned counsel, hereby request that Plaintiff Daniel Junk ("Plaintiff") produce

the documents described herein for inspection and copying at the offices of Winston & Strawn

LLP, 200 Park Avenue, New York, New York 10166 and that a written response to this request

be served within thirty (30) days of service hereof.

## **DEFINITIONS**

        1.     The term "document" is defined to be synonymous in meaning and equal

in scope to the usage of this term in Fed. R. Civ. P. 34(a), and shall include, without limitation,

any designated document, designated tangible thing, electronically stored information, electronic

or computerized data compilations, writings, drawings, graphs, charts, photographs, sound

recordings, images, and other data or data compilations, stored in any medium from which

information can be obtained either directly, or, if necessary, after translation by the responding

5/7/08

party into a reasonably usable form on CD-ROM or similar digital or electronic media. A draft or non-identical copy is a separate document within the meaning of this term.

      2.    The term "communications" as used herein refers to and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and includes oral or written matter.

      3.    The term "Plaintiff" "You" or "Your" means the Plaintiff in this action, Daniel Junk, as well as any and all agents, attorneys, representatives, persons and/or entities acting or purporting to act on Plaintiff's behalf, under his direction or control.

      4.    The term "Defendants" means Aon Corp., Aon Service Corp. and Aon Consulting, Inc., either individually and/or collectively.

      5.    The term "person" or "individual" is defined as any natural person or business, legal or governmental entity or association.

      6.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

      7.    The term "including" shall be construed to mean "without limitation."

      8.    The term "identify" with respect to documents means to give, to the extent know, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

      9.    The term "identify" with respect to a person means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

2

10.    The terms "any" and "all" shall be construed to make a request inclusive rather than exclusive.

11.    The connectives "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

12.    The use of the singular form of any word includes the plural and vice versa.

13.    The terms "all" and "each" shall be construed as all and each.

14.    The term "lost commissions" is defined to have the meaning attributed to it by Plaintiff in paragraph 62 of the Complaint.

15.    "Renew Data" means the company, Renew Data Corporation, its present and former parents, subsidiaries, affiliates, predecessors and successors, and each of their present and former partners, officers, directors, employees, agents, attorneys and representatives and other persons acting or purporting to act on its behalf.

16.    "DolphinSearch" means the company, Dolphin Search Inc., its present and former parents, subsidiaries, affiliates, predecessors and successors, and each of their present and former partners, officers, directors, employees, agents

17.    The "Action" means the lawsuit commenced by Plaintiff in the United States District Court for the Southern District of New York on or about June 1, 2007, entitled Daniel Junk v. Aon Corp., et al., No. 07-CIV-4640 (LMM).

18.    "Complaint" means the complaint filed by Plaintiff in the Action.

3

## INSTRUCTIONS

1.      Except where otherwise noted, these requests are directed at the time period beginning January 1, 2006 and continuing through the date of Plaintiff's response. Documents that were created or discovered outside of the aforementioned time period, but that relate to events within the time period shall be construed as within the scope of these document requests.

2.      This Request seeks documents, including electronic information and/or tangible things, that are in Plaintiff's possession, custody or control, including documents, electronic information and/or tangible things that are in the possession, custody or control of Plaintiff's advisers, agents, attorneys or representatives or other persons or entities who hold documents, electronic information and/or tangible things on Plaintiff's behalf, under his direction and/or control.

3.      If any otherwise responsive document, electronic information and/or tangible thing was, but no longer is, in existence or in Plaintiff's possession, custody, or control, state whether the document, electronic information and/or tangible thing: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred, voluntarily or involuntarily, to others; or (iv) has been otherwise disposed of. In each instance described in this paragraph, identify the name and address of the current or last known custodian of such document, electronic information and/or tangible thing, and describe the circumstances surrounding its disposition.

4.      If Plaintiff withholds any document, including electronic information and/or tangible thing, requested herein on the ground that it is subject to the attorney-client privilege, the work-product privilege or any other applicable privilege or protection, you shall make that claim expressly and shall support that claim by producing a privilege log that

4

identifies for each such document, electronic information and/or tangible thing: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author(s) or preparer(s) of the document, the addressee(s) of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

5.      Documents produced pursuant to this Request shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in the request.

6.      All documents shall be produced with a copy of any original file folder or envelope in which the documents are kept or maintained.

7.      Documents attached to each other should not be separated.

8.      Plaintiff's obligation to produce documents, including electronic information and/or tangible things responsive to this demand is continuing under Rule 26(e) of the Federal Rules of Civil Procedure. Any additional information referring or relating in any way to these requests for the production of documents, including electronic information and/or tangible things, which are discovered or come into Plaintiff's possession or become known to Plaintiff after the first date of production, up to any including the time of trial, shall be furnished promptly after being so discovered, possessed or known.

### DOCUMENTS REQUESTED

1.      All documents concerning the terms and conditions of Plaintiff's employment with Aon.

5

2.    All documents concerning the compensation to be paid Plaintiff by Aon including, but not limited to, amounts to be paid as salary, commissions, bonuses, and/or expenses.

3.    All documents concerning the compensation actually paid Plaintiff by Aon including, but not limited to, amounts paid as salary, commissions, bonuses, and/or expenses.

4.    All documents concerning the terms and conditions of Plaintiff's employment by Renew Data at any time during 2006, including, but not limited to, any contracts or agreements concerning Plaintiff's compensation, equity interest and/or solicitation of customers upon resignation.

5.    All documents concerning the dollar amount of all sales generated by Plaintiff during the period he was employed by Renew Data during 2006.

6.    All documents concerning any compensation promised to Plaintiff by Renew Data at any time during 2006, including, but not limited to, amounts paid as salary, commissions, bonuses, dividends, allowances, expenses and/or advances.

7.    All documents concerning the compensation actually paid to Plaintiff by Renew Data at any time during the period January 1, 2006, through the present, including, but not limited to, amounts paid as salary, commissions, bonuses, dividends, allowances, expenses and/or advances.

8.    All documents concerning the terms and conditions of Plaintiff's employment by Renew Data at any time during 2005, including, but not limited to, any contracts or agreements concerning Plaintiff's compensation, equity interest and/or solicitation of customers upon resignation.

6

9.     All documents concerning the dollar amount of all sales generated by Plaintiff during the period he was employed by Renew Data during 2005.

10.     All documents concerning the compensation actually paid to Plaintiff by Renew Data at any time during 2005, including, but not limited to, amounts paid as salary, commissions, bonuses, dividends, allowances, expenses and/or advances.

11.     All documents concerning Plaintiff's "lost commissions associated with Renew Data," as alleged in paragraph 62 of the Complaint.

12.     All documents concerning the terms and conditions of Plaintiff's employment by DolphinSearch at any time during 2006, including, but not limited to, any contracts or agreements concerning Plaintiff's compensation, equity interest and/or solicitation of customers upon resignation.

13.     All documents concerning the dollar amount of all sales generated by Plaintiff during the period Plaintiff was employed by DolphinSearch during 2006.

14.     All documents concerning the compensation actually paid to Plaintiff by DolphinSearch at any time during the period January 1, 2006, through the present, including, but not limited to, amounts paid as salary, commissions, bonuses, dividends, allowances, expenses and/or advances.

15.     All documents concerning Plaintiff's "nationally renowned reputation and standing within the e-discovery market place" as stated in paragraph 62 of the Complaint.

16.     All documents upon which Plaintiff intends to rely to prove that his "nationally renowned reputation and standing within the e-discovery market place has been damaged and impaired," as alleged in paragraph 62 of the Complaint.

7

17.    Copies of all federal and state income tax returns filed by or on behalf of Plaintiff for the years 2005, 2006 and/or 2007.

18.    Copies of all W-2 and 1099 Forms issued to Plaintiff during the years 2005, 2006 and/or 2007.

19.    All documents concerning Plaintiff's communications with any "recruiter" or "recruiting agent," as those terms are used in paragraphs 18 and 19 of the Complaint, regarding Plaintiff's employment with Aon, including, but not limited to, documents concerning Plaintiff's communications with Steven Fried and/or Search Light, LLC.

20.    All documents concerning Plaintiff's allegation that the "recruiter" who contacted him "[i]n or about May 2006" "to inquire about Plaintiff's interest in employment with AON and AON's litigation and e-discovery division," was "Aon's agent" as alleged in paragraph 18 of the Complaint.

21.    All documents concerning Plaintiff's communications with any person during the period January 1, 2006, through and including November 20, 2006, concerning Plaintiff's potential employment with Aon.

22.    All documents concerning Plaintiff's communications with any person during the period January 1, 2006, through and including November 20, 2006, concerning the "development of Aon's technology," as alleged in paragraph 18 of the Complaint.

23.    All documents concerning the representations allegedly made concerning Aon's "product and software development" as alleged in paragraph 22 of the Complaint.

24.    All documents including, in particular, all notes and recordings concerning Plaintiff's meeting or meetings with Jerry Barbanel during the period September 1, 2006 through and including November 20, 2006, as alleged in paragraph 23 of the Complaint.

8

25.    All documents concerning the statement Jerry Barbanel allegedly made to Plaintiff that "'[r]ight now we [AON] have the best developers working on and completing our complete end-to-end e-discovery solutions'" as alleged in paragraph 24 of the Complaint.

26.    All documents concerning the statement Jerry Barbanel allegedly made to Plaintiff that "'[w]e [AON] are in the final stages of developing and completing a complete end-to-end proprietary e-discovery system ranging from data extraction to viewing to production,'" as alleged in paragraph 24 of the Complaint.

27.    All documents concerning the statement Jerry Barbanel allegedly made to Plaintiff that "'[t]he proprietary software technology that we are developing right now will turn the industry on its ear and offer a completely integrated proprietary solution," as alleged in paragraph 24 of the Complaint.

28.    All documents concerning the statement Jerry Barbanel allegedly made to Plaintiff that "[w]ithin the next three months we will have the only true end-to-end solution in the industry'" as alleged in paragraph 24 of the Complaint.

29.    All documents concerning the statement Jerry Barbanel allegedly made to Plaintiff that he "'[has] guys working on it as we speak and it will be done in three weeks,'" as alleged in paragraph 24 of the Complaint.

30.    All documents concerning Plaintiff's allegation that as of the time of his meeting with Jerry Barbanel "in or about October 2006," "AON had not yet commenced the development and programming of the proprietary software systems represented by Jerry Barbanel," as alleged in paragraph 30(a) of the Complaint.

31.    All documents concerning Plaintiff's allegation that as of the time of his meeting with Jerry Barbanel "in or about October 2006," "AON had not yet even approved the

9

allocation of funds and resources for the development and completion of AON's own proprietary e-discovery software solutions," as alleged in paragraph 30(b) of the Complaint.

32.    All documents concerning the statement Jerry Barbanel allegedly made to Plaintiff "that if [Plaintiff] accept[ed] employment with AON, [Plaintiff] would have a guaranteed position at least until AON rolled out its end-to-end proprietary software solution and obtained the dominant market leading position in e-discovery software solutions,'" as alleged in paragraph 27 of the Complaint.

33.    All documents concerning Plaintiff's allegation in paragraph 27 of the Complaint that "Plaintiff had to agree to sell his home in South Carolina and move to the New York within a year after starting with AON."

34.    All documents concerning Plaintiff's engagement of a "licensed real estate broker to market and sell Plaintiff's home in South Carolina," as alleged in paragraph 28 of the Complaint.

35.    All documents concerning Plaintiff's allegation that "the software being offered [by Aon] was rebranded software already commonly available and utilized within the industry," as alleged in paragraph 30(c) of the Complaint.

36.    All documents concerning Plaintiff's allegation that "at the time of offering AON E Docs (a rebranded copy of File Control) Jerry Barbanel and AON had yet to secure the required license to even utilize File Control," as alleged in paragraph 33 of the Complaint.

37.    All documents concerning Plaintiff's allegation that he and others "were ordered by Jerry Barbanel to never disclose that Aon's E-Docs was simply File Control" as alleged in paragraph 32 of the Complaint.

38.    All documents concerning Plaintiff's allegation that "Jerry Barbanel instructed Plaintiff and other AON employees" "never to admit that AON's software was simply rebranded third-party applications," as alleged in paragraph 30(d) of the Complaint.

39.    All documents concerning Plaintiff's alleged discussion with Lee Curtis in which he "expressed concern about AON's non-existent e-discovery software and complained about the actions and misstatements of Jerry Barbanel," as alleged in paragraph 36 of the Complaint.

40.    All documents concerning Plaintiff's alleged discussion with Michael Gulotta in which he "expressed concern about AON's non-existent e-discovery software and complained about the actions and misstatements of Jerry Barbanel," as alleged in paragraph 38 of the Complaint.

41.    All documents concerning the email referred to in paragraph 35 of the Complaint, in which Jerry Barbanel allegedly told Plaintiff to "stick with [him]," including, but not limited to, the email itself.

42.    All documents concerning the expenses incurred by Plaintiff during the period of time in which he was employed by Aon, and for which he sought reimbursement by Aon, including, but not limited to, all documents concerning expenses incurred in connection with the trip to Barbados from January 31, 2007 through February 4, 2007.

43.    All documents concerning the termination of Plaintiff's employment with Aon.

44.    All documents concerning the April 17, 2007 email Plaintiff received from Anne Kemp, as alleged in paragraph 39 of the Complaint.

11

45.     All documents concerning communications Plaintiff had with Aon concerning the return of the laptop computer and other computer equipment provided to Plaintiff during the course of his employment by Aon, during the period April 19, 2007, to the present.

46.  ·  All documents concerning Plaintiff's claim that he returned the laptop computer provided to him by Aon during the course of his employment by Aon, including, but not limited to, postage receipts or other proof of mailing.

47.     The laptop, printer and any and all other property belonging to Aon that is in the possession, custody and/or control of Plaintiff.

48.     All documents concerning communications between and/or among Plaintiff and Anne Kemp, at any time during the period April 1, 2007, to the present, concerning Aon and/or the allegations asserted in this Action.

49.     All documents concerning communications between and/or among Plaintiff and Bill Cunningham, at any time during the period April 19, 2007, to the present, concerning Aon and/or the allegations asserted in this Action.

50.     All documents concerning communications between and/or among Plaintiff and Warren Kruse, at any time during the period April 19, 2007, to the present, concerning Aon and/or the allegations asserted in this Action.

51.     All documents concerning communications between and/or among Plaintiff and Jon Rognerud, at any time during the period April 19, 2007, to the present, concerning Aon and/or the allegations asserted in this Action.

52. All documents upon which Plaintiff relies in preparing his answers to Defendants' requests for interrogatories.

Dated: May 7, 2008
       New York, New York

                    WINSTON & STRAWN LLP

                    By: _____
                        Lori J. Van Auken (LV 2858)
                        Alexis A. Lury (AL 8672)

                    200 Park Avenue
                    New York, New York 10166
                    T: (212) 294-6700
                    F: (212) 294-4700
                    E-mail: lvanauken@winston.com

                    *Counsel for Defendants Aon Corp., Aon Service Corp. and Aon Consulting, Inc.*

Of Counsel:
Timothy J. Rooney
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
T: (312) 558-5600
F: (312) 558-5700

TO:
Charles N. Internicola, Esq.
DECKER DECKER DITO & INTERNICOLA, LLP
1610 Richmond Road
Staten Island, New York 10304

*Attorney for Plaintiff*

# **EXHIBIT 15**

DECKER DECKER DITO & INTERNICOLA, LLP
1610 Richmond Road
Staten Island, New York 10304
T. 718. 979. 4300
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

DANIEL JUNK

                                          Case No.: 07-CIV-4640

                 Plaintiff,

        - against -

AON CORP., AON SERVICE CORPORATION
and AON CONSULTING, INC.

                 Defendants.

———————————————————————

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff Daniel Junk by his attorneys, Decker Decker Dito & Internicola, LLP, requests that Defendant Aon Corp. produce and permit discovery of the following documents for inspection and copying within thirty (30) days of service hereof in accordance with the definitions and instructions below, at the offices of Decker Decker Dito & Internicola, LLP, 1610 Richmond Road, Staten Island, New York 10304 at which time the documents should be segregated and identified by the number of the specific request to which they are responsive.

## DEFINITIONS AND INSTRUCTIONS

1.    **Communication**.    The term "communication" means the transmittal of

information in the form of facts, ideas, inquiries or otherwise.

2. **Document**.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed.R.Civ.P. 34(a).  A draft or non-identical copy is a separate document within the meaning of this term.  The term document also includes any tapes or other recordings. Without limitation of the foregoing, the term document shall further include magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software); any "deleted" but recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from random access memory on a hard drive during the normal operation of a computer or residual data left on the hard drive after new data has overwritten some but not all of previously stored data).

3. **Identify (With respect to Persons)**.  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4. **Identify (With Respect to Documents)**.    When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

5. **Parties**.    The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its

officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

> _Plaintiff._     The term "Plaintiff" refers to plaintiff Daniel Junk.

> _Defendants._     The term "Defendants" or "Defendant" refers to defendants AON Corp., AON Service Corporation and AON Consulting, Inc., both individually and jointly. If a demand refers to "Defendants" and the applicable response relates to only one or two of the named defendants, then identify the particular defendant to which the response relates. If a response does not relate to a particular defendant, then indicate so.

6.    **Person**.     The term "person" is defined as any natural person or any business, legal or governmental entity or association.

7.    **Concerning**.  The term "concerning" means in connection with, relating to, referring to, describing, evidencing or constituting.

8.    **All/Each**.    The term "all" and "each" shall be construed as all and each.

9.    **And/Or**.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.    **A/Any.**     When used herein, the term "a" shall mean "any" and _vice versa._

11.    **Any/All.**    When used herein, the term "any" shall mean any and all.

12.    **Number**.     The use of the singular form of any word includes the plural and _vice versa._

13.    **Objections**.  Where an objection is made to any document request, state with specificity all grounds for said objection.

3

14.  **Privilege**.    Where a claim of privilege is asserted in objecting to any document demanded, or sub-part thereof, and an answer is not provided on the basis of such assertion, identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked, and provide in the objection, unless indulgence of such information would cause disclosure of the allegedly privileged information:  (1) the type of document; (2) general subject matter of the document; (3) the date of the document; (4) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other.

15.  **Including**.  "Including" means including but not limited to.

16.  **Cumulative.**   To the extent that no single document exists, or is in the party's possession custody or control, which contains all of the information sought in any particular specification herein, the party is to provide such other documents in his possession, custody or control which are sufficient to show or compile all of the information requested in such specification, or as much thereof as is available.



17.  **Continuing Request.**  This Request is continuing and thus should any document identified in any of the specifications below come into the party's possession or under his custody or control after he has produced the documents presently within his possession, custody or control, the party shall promptly make available for inspection and copying such additional materials.

18.  **Destruction.**  In the event that any matter called for in this Request has been

destroyed, that item is to be identified in the manner set forth in paragraph 14, *supra*. The response shall in addition set forth the date and manner of destruction, the reason for destruction, the person authorizing destruction and the person destroying said item(s).

19.    **Possession.**  If any matter covered by this Request is no longer in the possession, custody or control of the responding party, the respondent is requested to describe the matter in detail and to indicate its present custodian.

20.    **Lawsuit.** "Lawsuit" refers to the legal action commenced under the caption Daniel Junk v. Aon Corp., AON Service Corporation and AON Consulting, Inc., filed in the United States District Court for the Southern District of New York under case number 07-CV-4640.

21.    **Complaint.**  "Complaint" means the complaint filed by Plaintiff in this Lawsuit.

22.    **Answer.**    "Answer" means the answer and counterclaims filed by Defendants in this Lawsuit.

23.    **Reply.**    "Reply" means the Reply to Defendants Answer and counterclaims filed by the Plaintiff in this Lawsuit.

24.    **Defendants' Initial Disclosures.** "Defendants' Initial Disclosures" means Defendants' Initial Disclosures Pursuant to Fed. R.Civ. P. 26(a)(1) dated March 28, 2008 and served by Defendants.    At all times Plaintiff maintains an objection to Defendants Initial Disclosures in that they fail to properly identify the type, nature and location of documents required by Fed.R.Civ. P. 26(a)(1).

25.    **File Control Partners.**  "File Control Partners" shall refer to and mean the entity referred to as "File Control Partners" in paragraph "31" of the Answer.

26.    **File Control.** "File Control"

## ITEMS REQUESTED

1.   All documents referred to in Section B(1) of Defendants' Initial Disclosures.

2.   All documents referred to in Section B(2) of Defendants' Initial Disclosures.

3.   All documents referred to in Section B(3) of Defendants' Initial Disclosures.

4.   All documents referred to in Section B(4) of Defendants' Initial Disclosures.

5.   All documents referred to in Section B(5) of Defendants' Initial Disclosures.

6.   All documents referred to in Section B(6) of Defendants' Initial Disclosures.

7.   All contracts and agreements between Plaintiff and Defendants.

8.   All contracts and agreements between Defendants and any recruiting professional or agency respecting and/or relating to Defendants employment of Plaintiff.

9.   All contracts and agreements between Defendants and any recruiting professional or agency respecting and/or relating to Defendants termination of Plaintiff's employment.

10.  All documents and communications between Plaintiff and Defendants concerning Defendants termination of Plaintiff's employment.

11.  The documents and communications concerning and including the "license agreement with File Control Partners", referred to in paragraph "31" of the Answer.

12.  All documents and communications that defendants will or may rely upon to prove that the "Aon E-Docs" software was "created for Aon by File Control", as alleged in paragraph "31" of the Answer.

13.  All sales material, brochures, presentation materials, and information material and documents created by, utilized and/or distributed by Defendants at or in connection with the "Aon Consulting's E-Discovery Practice Group, event in Los Angeles, California", referred to in paragraph "31" of the Answer.

14.  All documents and communications concerning the advertising and marketing of Aon E-Docs for the period of January 1, 2006 through present.

15.  All license agreements concerning or relating to software utilized and branded by

6

Defendants under the "Aon E-Docs" trade name.

16. All documents and communications that Defendants will or may rely upon to prove that Defendants have developed or were in the process of developing Defendants own proprietary electronic discovery software during the period of January 1, 2006 to present.

17. All documents and communications that Defendants will or may rely upon to prove that Plaintiff violated "AON's Travel & Expense Policy", as alleged in paragraph "34" of the Answer.

18. All documents and communications that Defendants will or may rely upon to prove that Plaintiff was aware of "AON's Travel & Expense Policy".

19. All documents and communications between Plaintiff and Defendants concerning any reimbursements sought by Plaintiff pursuant to AON's Travel & Expense Policy.

20. All documents and communications that Defendants will or may rely upon to prove that plaintiff represented to Mr. Barbanel that "he had a book of business worth at least $10 million" as alleged in paragraph "51" of the Answer.

21. All documents and communications that Defendants will or may rely upon to prove that Defendants relied upon Plaintiff's representations that "he had a book of business worth at lease $10 million  and/or had worked for approximately seven years as an associate with the New York law firm of Simpson, Thacher & Bartlett", as alleged in paragraph "53" of the Answer.

22. All documents and communications that Defendants will or may rely upon to prove that "Plaintiff's representation that he had a book of business worth at least $10 million was false", as alleged in paragraph "54" of the Answer.

23. All documents and communications that Defendants will or may rely upon to prove that Plaintiff represented that he was an associate with the New York law firm of Simpson, Thacher & Bartlett for approximately seven years.

24. All documents and communications that Defendants will or may rely upon to prove that Plaintiff's representation that he was an associate with the New York law firm of Simpson, Thacher & Bartlett for approximately seven years was false as alleged in paragraph "55" of the Answer.

25. All documents and communications that Defendants will or may rely upon to prove that "As a direct and proximate result of Plaintiff's breach of the Non-Solicitation Agreement, Aon has suffered and continues to suffer harm for which it is entitled to an award of

damages in an amount to be determined at trial", as alleged in paragraph "66" of the

Answer.

26.    All documents and communications that Defendants will or may rely upon to prove that Plaintiff breached the Non-Solicitation Agreement, as alleged in paragraph "66" of the Answer.

27.    All documents and communications that Defendants will or may rely upon to prove that Plaintiff failed to return a laptop as alleged in paragraph "68" of the Answer.

28.    All documents and communications that Defendants will or may rely upon to prove that Defendants' damages resulting from "Plaintiff's breaches of the Confidentiality Agreement", as alleged in paragraph "78" of the Answer.

29.    All documents and communications that Defendants will or may rely upon to prove that Plaintiff breached the confidentiality agreement referred to in paragraph "78" of the Answer.

30.    All documents and communications that Defendants will or may rely upon to prove "Aon Consulting's request", as referred to in paragraph "82" of the Answer.

31.    All documents and/or communications for the period of January 1, 2006 through present, between Defendants and File Control Partners respecting the Defendants license, use and/or sale of software.

32.    All documents and communications from customers concerning dissatisfaction with Defendants "Aon E-Docs" software.

33.    All documents and communications from Defendants employees concerning potential client misrepresentations involving Defendants technology solutions and/or the "Aon E-Docs" software

34.    All documents and communications between Defendants and Ms. Anne Kemp, for the period of January 1, 2006 to present, concerning Aon E-Docs, File Control and any other electronic discovery software and services offered, sold or contracted for Defendants.

35.    All documents and communications between Defendants and Bill Cunningham for the period of January 1, 2006 to present, concerning Aon E-Docs, File Control and any other


software associated with Defendants electronic discovery products and services.

8

Dated:      Staten Island, New York
             April 2, 2008

                    Decker Decker Dito & Internicola, LLP

                    By:
                        Charles N. Internicola (CI 4059)
                        1610 Richmond Road
                        Staten Island, NY 10304
                        (718)979-4300

TO:     Lori Van Auken, Esq.
        200 Park Ave
        New York, NY 10166
        Counsel for:
        AON CORP., AON SERVICE CORPORATION
        and AON CONSULTING, INC.

# **EXHIBIT 16**

DECKER DECKER DITO & INTERNICOLA, LLP
1610 Richmond Road
Staten Island, New York 10304
T. 718. 979. 4300
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL JUNK

                    Plaintiff,

         - against -

AON CORP., AON SERVICE CORPORATION
and AON CONSULTING, INC.

                    Defendants.

---

Case No.: 07-CIV-4640

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Plaintiff, Daniel Junk by his attorneys Decker Decker Dito & Internicola, LLP, hereby serves the following interrogatories on defendant Aon Corp. pursuant to Fed.R.Civ.P. 33, and hereby demands sworn answers under oath to be served upon the undersigned counsel within thirty (30) days of service hereof.

## DEFINITIONS AND INSTRUCTIONS

1.    **Communication**.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.    **Document**.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed.R.Civ.P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term. Without limitation of the foregoing, the term document shall further include magnetic or optical storage media as an "active" file or files

1

(readily readable by one or more computer applications or forensics software); any "deleted" but recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from random access memory on a hard drive during the normal operation of a computer or residual data left on the hard drive after new data has overwritten some but not all of previously stored data).

3.    **Identify (With Respect to Persons)**.  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4.    **Identify (With Respect to Documents)**.    When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

5.    **Identify (With Respect to Conversations)**.  When referring to conversations, "to identify" means to give, to the extent known, the (i) participants; (ii) general subject matter; (iii) date or approximate date of conversation; and (iv) place of conversation.

6.    **Parties**.

*Plaintiff.*      The term "Plaintiff" refers to plaintiff Daniel Junk.

*Defendants.*    The term "Defendants" or "Defendant" refers to defendants AON Corp., AON Service Corporation and AON Consulting, Inc., both individually and jointly. If an interrogatory refers to "Defendants" and the applicable response relates to only one or two of the named defendants, then identify the particular defendant to which interrogatory response relates.  If an interrogatory response does not relate to a particular defendant, then indicate so.

2

7.    **Person**.    The term "person" is defined as any natural person or any business, legal or governmental entity or association.

8.    **Concerning**.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

9.    **All/Each**.    The term "all" and "each" shall be construed as all and each.

10.    **And/Or**.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

11.    **A/Any**.    When used herein, the term "a" shall mean "any" and *vice versa*.

12.    **Any/All**.    When used herein, the term "any" shall mean any and all.

13.    **Number**.    The use of the singular form of any word includes the plural and *vice versa*.

14.    **Objections**.    Where an objection is made to any document request, state with specificity all grounds for said objection.

15.    **Privilege**.    Where a claim of privilege is asserted in objecting to any document demanded, or sub-part thereof, and an answer is not provided on the basis of such assertion, identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked, and provide in the objection, unless indulgence of such information would cause disclosure of the allegedly privileged information:  (1) the type of document; (2) general subject matter of the document; (3) the date of the document; (4) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the

author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other.

16.  **Including**.    "Including" means including but not limited to.

17.  **Cumulative**.    To the extent that no single document exists, or is in the party's possession custody or control, which contains all of the information sought in any particular specification herein, the party is to provide such other documents in his possession, custody or control which are sufficient to show or compile all of the information requested in such specification, or as much thereof as is available.

18.  **Continuing Request**. This Request is continuing and thus should any document identified in any of the specifications below come into the party's possession or under his custody or control after he has produced the documents presently within his possession, custody or control, the party shall promptly make available for inspection and copying such additional materials.

19.  **Destruction**.  In the event that any matter called for in this Request has been destroyed, that item is to be identified in the manner set forth in paragraph 14, *supra*.  The response shall in addition set forth the date and manner of destruction, the reason for destruction, the person authorizing destruction and the person destroying said item(s).

20.  **Possession**.    If any matter covered by this Request is no longer in the possession, custody or control of the responding party, the respondent is requested to describe the matter in detail and to indicate its present custodian.

21.  **Lawsuit**. "Lawsuit" refers to the legal action commenced under the caption Daniel Junk v. Aon Corp., AON Service Corporation and AON Consulting, Inc., filed in the United States District Court for the Southern District of New York under case number 07-CV-4640.

22.  **Complaint.**    "Complaint" means the complaint filed by Plaintiff in this Lawsuit.

4

23.    **Answer.**    "Answer" means the answer and counterclaims filed by Defendants in this Lawsuit.

24.    **Reply.**    "Reply" means the Reply to Defendants Answer and counterclaims filed by the Plaintiff in this Lawsuit.

25.    **Defendants' Initial Disclosures.** "Defendants' Initial Disclosures" means "Defendants' Initial Disclosures Pursuant to Fed. R.Civ. P. 26(a)(1)" dated March 28, 2008 and served by Defendants.

26.    **Source Code.** "Source Code", in relation to software, means and refers to the base programming language and instructions upon which a software program operates.


## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all persons with knowledge or information concerning Defendants' employment of Plaintiff and, for each identified individual, state the individual's role and actions taken in evaluating the Plaintiff's credentials and employment qualifications.


**INTERROGATORY NO. 2:**

Identify all persons with knowledge or information concerning Defendants' termination of Plaintiff's employment and, for each identified individual, state the individual's role and actions taken in evaluating any alleged grounds for terminating Plaintiff's employment.


**INTERROGATORY NO. 3:**

In connection with the "license agreement with File Control Partners" and the "e-discovery software" alleged and referred to in paragraph "31" of the Answer, identify and describe:

    (a)    All written documents evidencing the license agreement;

    (b)    Whether the license agreement was in writing and/or verbal;

(c)     All individuals with knowledge and information concerning the license agreement;

(d)     The term of the license agreement, including the effective date, expiration or termination date, and any optional terms for renewal;

(e)     The representative(s) of "File Control Partners" that agreed to the license agreement;

(f)     The rights granted to the Defendants pursuant to the terms of the license agreement;

(g)     All products and/or services offered and sold by Defendants utilizing and/or relying upon (whether in whole or in part) the rights granted to Defendants pursuant to the license agreement;

(h)     All royalties, fees and other charges paid by Defendants pursuant to the terms of the license agreement;

(i)     All revenues and fees earned and/or generated by Defendants, from January 2006 to present, in connection with services and products offered, provided and/or sold by Defendants that utilize and/or rely upon (in whole or in part) the license agreement; and

(j)     All customers that, for the period of January 1, 2006 to Present, purchased, leased, contracted for and/or utilized Defendants' "e-discovery software".

## INTERROGATORY NO. 4:

In connection with the Defendants allegation that the Defendants licensed and sold e-discovery software "...created for AON by File Control under the Name Aon E-Docs...", as alleged in paragraph "31" of the Answer, identify and describe:

(a)     What portion or portions, if any, of the branded "AON E-Docs" software was created exclusively for Defendants; and

(b)     What differentiated – in terms of software functionality - the branded "AON E-Docs" software from other software marketed and/or sold by File Control separately;

## INTERROGATORY NO. 5:

In connection with Defendants use and understanding of the term "e-discovery software", as referred to in paragraph "31" of the Answer (irrespective of whether or not such software was

licensed from File Control Partners, any third party or owned by Defendants), identify and describe:

    (a)    All "e-discovery" software utilized by Defendants and/or offered for sale, license and/or use by Defendants within or during the period of January 1, 2006 to present;

    (b)    For all software identified in response to interrogatory "4(a)", above, identify and describe the owner and/or copyright holder of the software;

    (c)    For all software identified in response to interrogatory "4(a)", above, identify whether or not Defendants possess access to the Source Code; and

    (d)    For all software identified in response to interrogatory "4(a)", above, identify and describe all license agreements to which Defendants are a party.

**INTERROGATORY NO. 6:**

In connection with the May 22, 2006 press release referred to in paragraph "21" of the Complaint and admitted to in paragraph "21" of the Answer wherein Mr. Jerry Barbanel is quoted, in part, as stating that "... *To broaden [AON's] capabilities, AON is in the process of developing proprietary E-Discovery solutions that will further enhance our value-added service offerings...* ", identify and describe:

    (a)    The "proprietary E-Discovery solutions" that AON was developing at the time of Mr. Barbanel's statement;

    (b)    The individuals and software programmers, if any, responsible for planning and developing Defendants proprietary E-Discovery Solutions at the time of Mr. Barbanel's press release; and

    (c)    What differentiated or attributed to the referred to E-Discovery solutions as being "proprietary".

**INTERROGATORY NO. 7:**

In connection with Defendants use and understanding of the term "e-discovery software", as referred to in paragraph "31" of the Answer, identify and describe:

    (a)    All proprietary e-discovery software that was developed and in the process of being developed by Defendants during the period of September 1, 2006 through December 15, 2006;

(b)    All software programmers and developers engaged by Defendants during the period of September 1, 2006 through December 15, 2006 to develop proprietary e-discovery software on behalf of Defendants; and

(c)    All employees of Defendants with knowledge concerning Defendants efforts to develop proprietary e-discovery software during the period of September 1, 2006 through December 15, 2006;

## INTERROGATORY NO. 8:

Identify all employees terminated and/or reprimanded by Defendants during the period of January 1, 2006 to present for or as a result of violating "Aon's Travel & Expense Policy", as such term is used in paragraph "34" of the Answer.

Dated: March 25, 2008

Decker Decker Dito & Internicola, LLP.

By

Charles N. Internicola (CI 4059)
1610 Richmond Road
Staten Island, NY 10304
(718) 979-4300
Attorneys for Plaintiff

TO:    Lori J. Van Auken, Esq.
Winston & Strawn, LLP
200 Park Avenue
New York, NY 10166
Counsel for:
AON CORP., AON SERVICE CORPORATION
and AON CONSULTING, INC.