UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |  |
|---|---|---|
| DANIEL JUNK, | : | No. 07-CIV-4640 (LMM) (GWG) |
|  | : |  |
| Plaintiff, | : | ECF CASE |
|  | : |  |
| - against - | : |  |
|  | : |  |
|  | : |  |
| AON CORP., AON SERVICE CORPORATION | : |  |
| and AON CONSULTING, INC., | : |  |
|  | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
SEEKING THE ENTRY OF A PROTECTIVE ORDER, THE RETURN
OF DEFENDANTS' PROPERTY AND AN AWARD OF SANCTIONS**

WINSTON & STRAWN LLP
200 PARK AVENUE
NEW YORK, NEW YORK  10166

*Attorneys for Defendants*
*Aon Corp., Aon Service Corporation*
*and Aon Consulting, Inc.*

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Shell Oil Co.*
  *(In re Shell Oil Refinery)*, 143 F.R.D. 105, 108 (E.D.La. 1992).....................................24, 30

*Anacomp, Inc. v. Shell Knob Servs., Inc*,
  No. 93 CIV. 4003 (PKL), 1994 WL 9681 ......................................................... 26

*Carrion v. The City of New York*,
  No. 01 Civ. 02255, 2002 WL 31093620 (S.D.N.Y. Sept. 18, 2002)................................... 29

*Carter-Wallace, Inc. v. Hartz Mountain Inds., Inc.*,
  553 F. Supp. 45, 50-51 (S.D.N.Y. 1982) ............................................................ 22

*Data Capture Solutions-Repair & Remarketing, Inc. v. Symbol Technologies, Inc.*,
  No. 07 Civ. 238, 2008 WL 501410 (D. Conn. Feb. 21, 2008)............................................ 15

*Fayemi v. Hambrecht & Quist, Inc.*,
  174 F.R.D. 319, 324 (S.D.N.Y. 1997) ..............................................................21, 23, 27, 29

*Giardina v. Ruth U. Fertel, Inc.*,
  No.Civ.A. 00-1674, 2001 WL 1628597 (E.D.La. Dec. 17, 2001) ...................................21, 30

*Gibson v. Ford Motor Co.*,
  510 F. Supp.2d 1116, 1123 (N.D.Ga. 2007) ......................................................... 22

*Herrera v. The Clipper Group*,
  1999 WL 229499 at *3 ............................................................................ 30

*Herrera v. The Clipper Group, L.P.*,
  Nos. 97-CIV-560, 97-CIV-561, 1998 WL 229499 (S.D.N.Y. May 6, 1998)..................24, 27

*Hodgson v. Texaco Inc.*,
  440 F.2d 662 (5th Cir. 1971) ...................................................................... 20

*IBP, Inc. v. Bagley (In re IBP Confidential Business Documents Litig.)*,
  754 F.2d 787 (8th Cir. 1985) ...................................................................... 21

*In re Linerboard Antitrust Litig.*,
  237 F.R.D. 373, 381 (E.D.Pa. 2006)................................................................ 22

*In re Zyprexia Injunction*,
  474 F. Supp.2d 385, 415 (E.D.N.Y. 2007) .....................................................14, 17

*Int'l Bhd. of Elec. Workers v. Acme Elec. Co.*,
  652 F. Supp. 182, 185 (E.D.Mo. 1985) ............................................................ 30

*International Products Corp. v. Koons,*
   325 F.2d 403 (2d Cir. 1963) ................................................................... 21

*Jackson v. Microsoft Corp.,*
   211 F.R.D. 423, 431 (W.D. Wash. 2002) ...........................................23, 27, 28

*JDSUniphase Corp. v. Jennings,*
   473 F. Supp. 2d 697 (E.D.Va. 2007) ................................................19, 20, 24

*Kingsway Fin. Servs., Inc. v. PricewaterhouseCoopers LLP,*
   No. 03 Civ. 5560, 2006 WL 1520227 ................................................... 22

*Knitting Fever, Inc. v. Coats Holding Ltd.,*
   No. 05CV1065(DRH)(MLO), 2005 WL 3050299 (E.D.N.Y. Nov. 14, 2005) ..................... 24

*Lahr v. Fulbright & Jaworski, L.L.P.,*
   No. 03-94-CV-0981-D, 1995 WL 17816334 at *3 (N.D.Tex. July 10, 1996) .................21, 22

*Lahr v. Fulbright & Jaworski, L.L.P.,*
   No. 3:94-CV-0981-D, 1996 WL 34393321 at *3 (N.D.Tex. July 10, 1996) ...................23, 30

*Lipin v. Bender,*
   *84 N.Y.2d 562 (1994)* ................................................................24, 27, 28

*Maldonado v. New Jersey,*
   225 F.R.D. 120 (D.N.J. 2004) .............................................................. 29

*Marques v. Gabriel, Inc.,*
   136 F.R.D. 137, 139 (S.D.Ohio 1991) ....................................................22, 30

*McMunn v. Memorial Sloan-Kettering Cancer Center,*
   191 F.Supp.2d 440, 461 (S.D.N.Y. 2002) ................................................... 27

*Pansy v. Borough of Stroudsburg,*
   23 F.3d 772, 782 (3d Cir. 1994) ........................................................... 17

*Paz Systems, Inc. v. The Dakota Group,*
   514 F. Supp.2d 402, 408 (E.D.N.Y. 2007) ................................................. 26

*Perna v. Electronic Data Systems, Corp.,*
   916 F. Supp. 388 (D.N.J. 1995) ......................................................passim

*Pillsbury, Madison & Sutro v. Schectman,*
   64 Cal.App.4th 1279, 1289 (Cal. Ct. App. 1997) ............................................ 22

*Quotron Sys., Inc. v. Automatic Data Processing, Inc.,*
   141 F.R.D. 37, 40 (S.D.N.Y. 1992) .....................................................15, 16

*S.E.C. v. TheStreet.com,*
   273 F.3d 222, 223 (2d Cir. 2001) ......................................................... 17

*Speckman v. Minnesota Mining and Mfg. Co.*,
   7 F. Supp.2d 1030, 1034 (D. Neb. 1997) ............................................................. 30

*Stephen Slesinger, Inc. v. The Walt Disney Co.*,
   No. BC 022365, 2004 WL 612818 (Cal. Super. 2004) ................................... 27, 29

*Upjohn Co. v. United States*,
   449 U.S. 383, 394 (1981) ....................................................................................... 22

*Vesta Corset Co., Inc. v. Carmen Foundations, Inc.*,
   No. 97 CIV. 5139, 1999 WL 13257 ....................................................................... 14

## STATUTES

18 U.S.C. § 1514A ........................................................................................................ 5

## OTHER AUTHORITIES

Fed. R. Civ. P. 6(b)(1) ................................................................................................. 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 4

Fed. R. Civ. P. 26(c)(1) ........................................................................................ passim

Fed.R.Civ.P. 37(a)(5)(A) ............................................................................. 1, 17, 18, 30

Local Rule 83.12(k) ...................................................................................................... 8

**TABLE OF CONTENTS**

                                                                                                    **Page**

TABLE OF AUTHORITIES ...........................................................................................i-iii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

        A.    Plaintiff's Employment With Aon Consulting .......................................... 3

        B.    Plaintiff's Claims Against The Defendants................................................ 4

        C.    Plaintiff's Initial Disclosure Of  Defendants' Documents ......................... 6

        D.    Plaintiff's Discovery Demands.................................................................. 6

        E.    Plaintiff's Production of Defendants' Documents..................................... 8

        F.    Plaintiff's Refusal To Return The Documents Or Sign
             A Protective Order .................................................................................. 10

ARGUMENT ................................................................................................................. 14

     I.    THE PROPOSED PROTECTIVE ORDER SHOULD BE ENTERED ............. 14

        A.    A Protective Order Is Necessary To Protect Defendants' Trade
             Secrets And Other Confidential And Proprietary Information ................ 14

        B.    The Proposed Protective Order Should Be Entered ................................ 16

        C.    Plaintiff and His Counsel Should Reimburse Defendants For All
             Reasonable Expenses And Attorney's Fees Incurred In Connection
             With This Motion .................................................................................. 17

     II.    PLAINTIFF AND HIS COUNSEL SHOULD RETURN DEFENDANTS'
         DOCUMENTS AND OTHER CONFIDENTIAL INFORMATION................. 21

        A.    Plaintiff's Acquisition of Defendants' Confidential Information
             Outside The Discovery Process Was Improper....................................... 22

        B.    Plaintiff's Conduct Violates His Non-Solicitation and
             Confidentiality Agreements .................................................................... 25

     III.    PLAINTIFF AND HIS COUNSEL SHOULD BE SANCTIONED
         FOR THEIR GROSSLY IMPROPER AND WRONGFUL CONDUCT........... 26

        A.    Plaintiff's Conduct Warrants Dismissal of His Claims .......................... 27

        B.    Alternatively, Plaintiff Should Be Precluded From Relying Upon
             Any Information He Acquired Outside the Discovery Process............... 29

        C.    Plaintiff Should Pay All Of Defendants' Costs and Attorney's Fees
             Associated With This Motion.................................................................. 30

CONCLUSION ............................................................................................................. 30

Defendants Aon Corporation, Aon Service Corporation and Aon Consulting, Inc. (collectively, "Defendants"), by their attorneys Winston & Strawn LLP, respectfully submit this memorandum of law in support of their motion for: (1) an order pursuant to Fed. R. Civ. P. 26(c)(1) limiting the disclosure and production of trade secrets and other confidential information in the manner set forth in the proposed protective order attached hereto; (2) an order pursuant to Fed. R. Civ. P. 37(a)(5)(A) directing Plaintiff to pay all costs and attorney's fees incurred by Defendants in connection with their Rule 26(c)(1) motion; (3) an order pursuant to this Court's inherent powers directing the Plaintiff, Daniel Junk ("Plaintiff"), his attorneys at the law firm of Decker Decker Dito & Internicola, LLP, and all others assisting or acting on their behalf ("Plaintiff's Counsel") to return all of Defendants' documents and other materials they obtained outside the discovery process; and (4) as a sanction for their misconduct, a further order pursuant to this Court's inherent powers, dismissing Plaintiff's Complaint and Reply to Defendants' Counterclaims and directing Plaintiff and his Counsel to reimburse Defendants for all costs and attorney's fees incurred in connection with this motion; and (5) for such other and further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

Plaintiff, a former employee of Defendant Aon Consulting, Inc. ("ACI"), was terminated less than six months after he was hired for committing acts of employee dishonesty and falsifying expense reports in direct violation of company policy. The conduct of Plaintiff which necessitates this motion is but a further example of his apparent penchant for deception.

As a condition of his employment with ACI, Plaintiff executed two documents—a Non-Solicitation Agreement and a Confidentiality Agreement—pursuant to which he vowed to protect and not to disclose to third parties any of Defendants' trade secrets and other confidential

and proprietary information. Plaintiff also agreed that his obligations to safeguard Defendants' trade secrets and confidential information would continue beyond his termination.

These obligations, however, apparently mean nothing to Plaintiff. Through what appears to have been a calculated plan designed to exact revenge for his termination, Plaintiff has amassed and produced in this litigation, a large volume of Defendants' proprietary, trade secret and other confidential business information including several attorney client privileged and work product communications. Moreover, Plaintiff obtained this information furtively, outside the discovery process, and with full knowledge of Defendants' position that such information should be kept confidential.

Since these events unfolded in early June 2008, Defendants' counsel has requested the return of Defendants' privileged, confidential and/or proprietary information on multiple occasions, but Plaintiff steadfastly and unconditionally refuses to do so. Moreover, despite his representations to this Court that he would sign a protective order, Plaintiff now says he will not do so unless it gives him the unfettered right to give Defendants' documents to OSHA so he can pursue a baseless whistleblower claim.

In the meantime, however, discovery has come to a standstill, as Plaintiff's obstructionist efforts have effectively precluded the production of relevant information that would lay bare the falsity of Plaintiff's allegations. The purpose of Plaintiff's scheme, however, is plain. As Plaintiff bragged in an email to other ACI employees earlier this year, "They talk the talk but when I get thru with them it will be apparent that they don't walk the walk."[1] It is the Plaintiff, however, who should be stopped in his tracks.

---

[1] *See* Declaration of Lori J. Van Auken, dated September 12, 2008 ("Van Auken Decl.") ¶ 57, Ex. 40.

As set forth more fully below and in the accompanying Van Auken Declaration, the lengths to which Plaintiff and his counsel have gone to disguise Plaintiff's true intentions, circumvent the orderly discovery process and mislead the Court and opposing counsel are reprehensible. To allow the Plaintiff to use documents obtained in this manner vitiates the Federal Rules, deprives Defendants of their protections and makes a mockery of our judicial system. As such, the Court should issue an order directing the entry of the proposed protective order, instructing Plaintiff, his Counsel and all others within their control to return Defendants' information and imposing appropriate sanctions upon Plaintiff and his Counsel to punish them for their conduct and compensate Defendants for the prejudice they have sustained as a result.

## STATEMENT OF FACTS

### A.      Plaintiff's Employment With Aon Consulting

Plaintiff, a former employee of Defendant, Aon Consulting Inc. ("ACI"), was hired in November 2006, as a business developer for ACI's Financial Advisory and Litigation Consulting practice group. Van Auken Decl. ¶ 2, Ex. 1A. As a condition of his employment, Plaintiff executed Non-Solicitation and Confidentiality Agreements pursuant to which he agreed to protect and not to disclose "any trade secrets or confidential or proprietary information relating to [Defendants'] business" of which he "became aware" or "gained access" by reason of his employment with ACI. *Id.* ¶ 2, Ex. 1B. Plaintiff also agreed that all records and other materials reflecting any confidential information would remain Defendants' "sole property" and that, upon his termination, would be "promptly" and "immediately" returned to Defendants. *Id.*

The phrase "Confidential Information" is defined broadly in the Agreements. In Plaintiff's Non-Solicitation Agreement, it includes "client and customer lists, data, records, computer programs, manuals, processes, methods and intangible rights." Van Auken Decl., Ex. 1 at 10. In his Confidentiality Agreement, the phrase encompasses information regarding ACI's:

3

·     Internal records, systems, and methods of operating its business;
·     Internal policies, practices, and procedures;
·     Personnel, and their compensation and benefits;
·     Financial, pricing, and cost information;
·     Management structure and management development plans;
·     Sales and client development plans;
·     Client lists;
·     Client relationships and services provided;
·     Client personnel, compensation, and financial information;
·     Prospect lists and proposals . . . .
·     Materials developed [by Plaintiff] during the course of [his] employment with [ACI];
·     Any other proprietary business data; and
·     Any other material designated by [ACI] as confidential or proprietary.

*Id.* ¶ 2, Ex. 1B.

In April 2007—five months after Plaintiff was hired—ACI discovered that he had submitted for payment as business expenses, several personal expenses incurred by his wife and, when questioned, lied to his superiors about it. Van Auken Decl. ¶ 3. Accordingly, on April 19, 2007, Plaintiff was terminated for employee dishonesty and violating Defendants' Travel and Expense Policy. *Id.* Plaintiff was asked to return his laptop and sent the packing materials and mailing labels with which to do so. Van Auken Decl. ¶ 4.

### B.    Plaintiff's Claims Against The Defendants

On or about June 1, 2007, Plaintiff commenced this action against Defendants. Van Auken Decl. ¶ 6. In his complaint, Plaintiff alleges that he was wrongfully terminated and asserted claims for damages based on breach of contract, fraudulent inducement and promissory fraud. *Id.* On August 6, 2007, Defendants filed a motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* In a Memorandum and Order dated November 30, 2007, the Court granted Defendants' motion to dismiss Plaintiff's breach of contract and

fraudulent inducement claims, but denied the motion as to Plaintiff's claim for promissory fraud.[2]  *Id.*

        On December 11, 2007, a conference was held with the Court.  Van Auken Decl. ¶ 7.  During the conference, Defendants' counsel inquired about Plaintiff's failure to return Defendants' laptop.  *Id.*  Plaintiff's Counsel said he knew nothing about it, but promised to discuss the matter with his client.  *Id.*

        Two days later, having received no response, Defendants' counsel sent a letter to Plaintiff's Counsel, inquiring about the laptop and demanding its immediate return.  Van Auken Decl. ¶ 8, Ex. 4.  Plaintiff's Counsel responded, advising that the laptop had been returned to Defendant Aon Corp. by "regular mail" "several months ago."  *Id.* ¶ 9, Ex. 5.  In a follow up letter, Defendants' counsel demanded detailed information concerning the manner in which the laptop had been returned, including the date upon which it was sent and the person to whom the package was addressed.  *Id.* ¶ 10, Ex. 6.  Plaintiff's Counsel did not respond.  *Id.* ¶ 10.

        On January 16, 2008, Defendants filed and served their Answer, denying the remaining allegations of the Complaint and asserting eight counterclaims.  Van Auken Decl. ¶ 11.  Among other things, Defendants asserted claims for damages and injunctive relief based upon Plaintiff's violation of the Non-Solicitation and Confidentiality Agreements.  *Id.*  On March 30, 2008, the Court granted Plaintiff's motion pursuant to Fed. R. Civ. P. 6(b)(1), for leave to file a Reply *nunc pro tunc* as of February 20, 2008.[3]  *Id.* ¶ 12.

---

[2]      Shortly after this action was commenced, on or about July 5, 2007, Plaintiff also filed a complaint with OSHA pursuant to 18 U.S.C. § 1514A.  Van Auken Decl. ¶ 13.

[3]      Plaintiff's time to respond to Defendants' Counterclaims actually expired on February 5, 2008, but he did not file a Reply until February 20, 2008.  He then waited several more weeks, until March 13, 2008, to file the requisite motion pursuant to Fed. R. Civ. P. 6(b)(1).  Van Auken Decl. ¶ 12.

**C.    Plaintiff's Initial Disclosure Of Defendants' Documents**

On March 12, 2008—notwithstanding the fact that he had received no permission to file a Reply and no Rule 26(f) conference had taken place—Plaintiff's Counsel served his Rule 26 Initial Disclosures. Van Auken Decl. ¶ 19, Ex. 11. With his disclosures, Plaintiff produced what he described as "copies of documents in Plaintiff's possession, custody or control that Plaintiff may use to support his claims or defenses." Such documents, he further explained, "include 'AON E-Docs' literature and print-outs of extensive communications between defendants' employees and officers." *Id.*

Upon review of these documents, it appeared that most, if not all, had come from Defendants' files and contained Defendants' trade secrets and other privileged, confidential and proprietary information. Van Auken Decl. ¶ 20. Indeed, buried in the pile were several emails reflecting discussions between Defendants' in-house counsel and ACI employees concerning this action as well as an internal investigation. *Id.* Other emails had been manipulated in such a way so as to conceal their source. *Id.* Accordingly, Defendants undertook an investigation to ascertain when, how and from whom Plaintiff may have obtained these documents.[4]

**D.    Plaintiff's Discovery Demands**

Shortly thereafter, on April 2, 2008, Plaintiff served each Defendant with a Request for the Production of Documents and a First Set of Interrogatories. Van Auken Decl. ¶ 22, Exs. 15, 16. In his discovery demands, Plaintiff sought disclosure of an extensive amount of Defendants' trade secret, confidential and proprietary information. For example, Plaintiff asked

---

[4]    As part of this investigation, Defendants served Plaintiff with discovery demands seeking all documents concerning Plaintiff's communications with a number of former employees following his termination (Van Auken Decl., Ex. 14 ¶¶ 48-51), the identity all persons with knowledge or information concerning the "manner in which Plaintiff acquired possession of the documents" (*Id.*, Ex. 13, Interrogatory No. 14), and an admission that Plaintiff obtained the documents enclosed with his Initial Disclosures from a former employee, Anne Kemp. *Id.*, Ex. 12 ¶ 31. Defendants also sought information concerning Plaintiff's use and handling of the laptop computer provided to him by ACI. *Id.*, Ex. 13, Interrogatory No. 15.

for all documents concerning Defendants' development of proprietary, e-discovery software (*Id.*, Ex. 15 ¶¶ 16, 34 and 35; Ex. 16, Interrogatories Nos. 4-7), and negotiation of various software licensing agreements.  *Id.*, Ex. 15 ¶¶ 11, 12, 15, 31, 34 and 35; Ex. 16, Interrogatories No. 3. Plaintiff also sought the production of communications between ACI and its clients (*Id.*, Ex. 15 ¶¶ 32, 33), as well as information concerning Defendants' sales and marketing practices.  *Id.*, Ex. 15 ¶¶ 13, 14, 32, 33.  In his Interrogatories, Plaintiff asked Defendants to identify, by name, all other employees terminated and/or reprimanded for violating Defendants' T&E Policy.  *Id.*, Ex. 16 at Interrogatory No. 8.

On multiple occasions during the weeks that followed, Defendants' counsel objected to the disclosure of Defendants' privileged, confidential and/or proprietary information, advised Plaintiff's Counsel of their intention to seek a protective order and reserved all of their rights.[5]  Van Auken Decl. ¶¶ 25-27, Exs. 17-19.  Defendants also made their position perfectly clear in their written responses to Plaintiff's discovery demands where they asserted objections to the production of all attorney-client privileged communications, attorney work product and information protected by a "right of privacy."  *Id.*, Ex. 17, ¶ 1; Ex. 18 ¶ 1.  Defendants also objected to Plaintiff's discovery demands to the extent they sought the production of any

---

[5]    This was not the first time, however, that Defendants had raised the need for confidentiality.  In early October 2007, OSHA asked the parties to enter into a confidentiality agreement in order to protect the trade secrets and other sensitive business information that might be disclosed during the course of the OSHA proceeding.  On October 19, 2007, Defendants' counsel sent a draft agreement to Plaintiff's Counsel and, after receiving no response, sent it again on November 8, 2007. Van Auken Decl. Ex. 7.   On November 19, 2007, after Plaintiff's Counsel claimed he had not received the initial draft, Defendants' counsel sent him another copy, along with the facsimile confirmation reflecting his receipt of the initial October 19, 2007, fax.  *Id.*, Ex. 9.  Again, no response was received.  Defendants' counsel next raised the issue at the December 11, 2007 conference but Plaintiff's Counsel continued to ignore the matter.   Thus, by the time Plaintiff produced Defendants' documents with his Initial Disclosures on March 14, 2008, he and his Counsel were fully aware of the sensitive nature of the documents at issue and Defendants' desire to maintain them in the strictest confidence.  When Plaintiff's Counsel finally did respond, on March 19, 2008—one week after he produced Defendants' documents with his Initial Disclosures— Plaintiff's Counsel advised that he and his client would agree to a confidentiality agreement but only if it did not apply to information disclosed during the course of the litigation.  *Id.*, Ex. 10.  It is plain, thus, that Plaintiff deliberately waited to respond to Defendants' request for confidentiality until after he had produced Defendants' documents in the litigation so he could argue that Defendants' documents should be exempt from confidential treatment.

"confidential business, trade secret and/or proprietary information," or information "subject to a confidentiality, non-disclosure or similar agreement." *Id.* at ¶ 2. At all times, Plaintiff's Counsel voiced no objection and expressed his willingness to proceed in accordance with this approach. *Id*. ¶ 27.

On June 1, 2008, Defendants' counsel sent a draft protective order to Plaintiff's Counsel, with an email requesting that the proposed order be submitted to the Court along with a joint letter then being prepared. Van Auken Decl. ¶ 28, Ex. 20. Plaintiff's Counsel did not respond. On June 2, 2008, Defendants' counsel sent another copy of the proposed protective order but, again, received no response. *Id.* On June 3, 2008, Defendants' counsel sent an email to Plaintiff's Counsel, reiterating Defendants' intention to submit the proposed protective order to the Court. *Id.* Plaintiff's Counsel finally replied, but only to say that he was still reviewing the proposed protective order with his client. *Id.*

### E.     Plaintiff's Production of Defendants' Documents

Several business days later, in complete disregard of Defendants' request, Plaintiff produced a large volume of documents (1,835 pages), along with the Blackberry and Dell computer monitor that had been provided to him during the course of his employment. Van Auken Decl. ¶ 29, Ex. 21. Plaintiff also provided written responses to Defendants' First Set of Interrogatories and Requests for Admission. *Id.* ¶ 30, Exs. 22 and 23.

Counsel's review of Plaintiff's production raised several troubling issues. Van Auken Decl. ¶ 31. Once again, it appeared that the vast majority of documents had been taken from Defendants' files. *Id.* Several of the documents produced are highly sensitive, privileged attorney-client communications exchanged among Defendants' in-house and employees and

clearly marked as such.[6]  *Id.*  Some of these communications concern an internal investigation, while others discuss this litigation.  *Id.* ¶ 31-32.  Indeed, the subject line of one of these emails reads "Dan Junk v. Aon Consulting," and both Winston & Strawn LLP lawyers, Tim Rooney and Lori Van Auken, are mentioned by name in the text.[7]  *Id.*

In addition, a large volume of the documents Plaintiff produced contain highly sensitive and confidential information concerning ACI's development of proprietary software, including internal analyses of the costs and benefits of the features being considered; several even refer to the project by its code name.  Van Auken Decl. ¶ 33.  Other documents reflect Defendants' negotiation of software licensing agreements, many of which discuss the parties' agreement to preserve the confidentiality of their negotiations. *Id.*

Plaintiff's production also included copies of some (but not all) of the emails he previously produced with the forwarding addresses cut-off.  Van Auken Decl. ¶ 34.  This time, however, Plaintiff produced these emails with their forwarding addresses intact, which revealed that they had been sent to Plaintiff by two, now former ACI employees, Anne Kemp and William Cunningham.  *Id.*  Indeed, in one such email, Ms. Kemp advises Plaintiff that she has just sent him "the emails" and promises that she "will speak with [him] tomorrow."  *Id.* ¶ 35, Ex. 24.  Plaintiff responds, "Great. Thx" and Ms. Kemp replies, "You are welcome – I will look for additional info on one of my other computers.  Best, AK."  *Id.*  Other documents, however,

---

[6]     Defendants have not attached the privileged, proprietary and confidential documents to this motion, but are prepared to provide the documents to the Court for *in camera* review, should the Court so desire.

[7]     The manner in which these privileged documents were produced by Plaintiff also raises concerns.  Van Auken Decl. ¶ 32.  The email concerning this lawsuit which specifically mentions Defendants' counsel, Winston & Strawn LLP, was Bates-stamped 000001, and placed at the top of Plaintiff's production.  *Id.*  An identical copy, bearing Bates-number 001796, was buried deeper in the stack.  *Id.*  The other privileged communications, each of which had been duplicated multiple times, were interspersed throughout the 1,835 page production.  *Id.*  Plaintiff's obvious intention was to obscure the extent of his misconduct.

appear to have been supplied to Plaintiff by another former ACI employee, Cliff Shnier, and a third party, Steven Fried. *Id.* ¶ 34.

Finally, a review of Plaintiff's production also showed that Plaintiff obtained many of these documents over an extended period of time beginning in late April 2007 or May 2007, shortly after his termination. Van Auken Decl. ¶ 36. By mid-November 2007, he had a privileged communication relating to this action. *Id.* The documents also show that Plaintiff received several emails and additional information from Ms. Kemp on December 14, 2007—the same day Defendants' counsel inquired as to the whereabouts of Plaintiff's laptop—and again, on January 16, 2008—the very day Defendants served and filed Counterclaims seeking the return of their property. *Id.* ¶ 37. Other emails show that Plaintiff was still collecting confidential, documents from third parties through early May of this year. *Id.* ¶ 36.

**F.    Plaintiff's Refusal To Return The Documents Or Sign A Protective Order**

On June 13, 2008, Defendants' counsel sent a letter to Plaintiff's Counsel demanding the immediate return of Defendants' privileged, confidential and/or proprietary information. Van Auken Decl. ¶ 38, Ex. 25. Defendants' counsel also asked for the names and addresses of any and all persons to whom such information may have been disclosed and requested that steps be taken by Plaintiff and his Counsel to ensure its return. *Id.* Defendants' counsel also noted Plaintiff's failure to respond to the draft protective order and urged him to do so right away. *Id.*

When Plaintiff's Counsel finally responded, three days later, he ignored Defendants' demand for the return of their documents. Van Auken Decl., Ex. ¶ 39, Ex. 26. Instead, he complained that he could not evaluate the proposed protective order because, so he claimed, it failed to specify the types of confidential information requiring protection. *Id.*

Accordingly, Plaintiff's Counsel asked Defendants to provide him with additional information concerning the documents at issue so he could better assess the proposal. *Id.*

The proposed protective order, however, already contained a detailed list of the types of information that would be subject to it, a fact that Defendants' counsel explained to Plaintiff's Counsel in a letter the following day.[8]  Van Auken Decl. ¶ 40, Ex. 27.  Receiving no further response, Defendants' counsel attempted to contact Plaintiff's Counsel on June 18, 2008, and again, throughout the day on June 19, 2008. *Id.*  ¶ 41, Ex. 28.  Later in the evening on June 19, 2008, Plaintiff's Counsel responded, but only to say that he would not be available to discuss the matter until the following week.  *Id.*  Defendants' counsel repeatedly requested that Plaintiff's Counsel call her that evening to discuss the matter, but he declined to do so.  *Id.* Accordingly, on June 20, 2008,  Defendants sent a letter to the Court requesting a pre-motion conference to address the instant motion. *Id.* ¶ 42, Ex. 29.  Plaintiff's Counsel did not respond to the letter and declined to discuss the matter further.  *Id.* ¶ 42.

The pre-motion conference was held on July 2, 2008. Van Auken Decl. ¶ 43, Ex. 30.  In response to questions on the subject of the proposed protective order, Plaintiff's Counsel advised the Court that he had no substantive problem with it and led the Court to believe that it would be signed by the end of the following week.

| | |
|---|---|
| *The Court:* | . . . I'm wondering what's the problem substantively with the protective order. |
| *Mr. Internicola*: | I don't believe there is one. |
| *The Court*: | Oh. |

---

[8]    Section 2 of the proposed protective order allows parties to designate as confidential, all information concerning: (1) trade secrets; (2) current, prior or prospective customers; (3) business development, sales and marketing activities; (4) confidential or proprietary research and development information; (5) information that is covered by pre-existing confidentiality or non-disclosure agreements; (6) financial and accounting information; (7) business projections, negotiations and strategies; (8) pricing; and (9) other sensitive information for which companies customarily take steps to limit and/or prevent disclosure.

> *Mr. Internicola*:     I don't, Your Honor.
>
> *The Court*:     Good.  So we'll have this all solved next week.  Wonderful.

*Id.* at 12.

Notwithstanding his representations to the Court, Plaintiff did not sign the protective order by the end of the following week.  Instead, on July 9, 2008, Plaintiff's Counsel advised that he and his client would not agree to any order unless it contained a provision allowing Plaintiff to disclose Defendants' confidential information to the United States Department of Labor ("DOL") in connection with Plaintiff's OSHA whistleblower claim.  Van Auken Decl. ¶ 47, Ex. 32.  According to Plaintiff's Counsel, he and his client have an "obligation" to disclose this information to OSHA.  *Id.*

In response, Defendants' counsel pointed out that Section 15 of the proposed protective order, entitled "Compelled Disclosure," fully addressed Plaintiff's concerns.[9]  Van Auken Decl. ¶ 47, Ex. 32.  Moreover, Defendants' counsel advised, it was unaware of any "obligation" Plaintiff and his Counsel might have to provide the DOL with information purloined from Defendants' files and obtained outside the discovery process.  *Id.*  Accordingly, Defendants' counsel urged Plaintiff to execute the proposed protective order as soon as possible, so that it could be entered with the Court by the anticipated deadline.  *Id.*  Plaintiff, however, did not do so.  *Id.*

At the same time, Plaintiff and his Counsel continued to ignore demands to return Defendants documents.  Shortly after the July 2, 2008 conference in which the Court granted Defendants' request to make this motion, Plaintiff's Counsel offered to have his client "divest

---

[9]    Pursuant to Section 15, any person who receives a subpoena, order or request to produce information deemed to be confidential, or who may be compelled by law, rule or regulation to produce such information to a government agency, would be permitted to do so, provided that such person gives prior notice to the party whose confidential information has been requested, and then takes steps to ensure that such information will be treated as confidential.  Van Auken Decl. ¶ 28, Ex. 27A at 12.

himself of Defendants' documents" but only until he received a list, by Bates number, of the documents to be returned. Van Auken Decl. ¶ 45, Ex. 31. Pointing out that Plaintiff's offer fell far short of his obligations, Defendants' counsel, once again, demanded that the documents be returned.[10] *Id.* Plaintiff's Counsel then took another tack and asked Defendants to substantiate their claim that the documents at issue actually reflect Defendants' privileged, confidential and/or proprietary information. In the event he and his client were to agree with Defendants' position, Plaintiff's Counsel offered to "consider" entering into a "confidentiality agreement." *Id.* ¶ 50, Ex. 35. He also reiterated his position regarding the proposed protective order, but failed to provide any support for his position, as Defendants' counsel had requested. *Id.*

The following week, Defendants' counsel responded. First, counsel declined to modify the proposed protective order, having found no authority that would give Plaintiff the right to turn over Defendants' documents to OSHA or otherwise to continue to hold and dispose of Defendants' property as if it were his own. Van Auken Decl. ¶ 51, Ex. 36. Second, Defendants' counsel also declined Plaintiff's invitation to negotiate the merits of Defendants' confidentiality claims. In fact, as Defendants' counsel explained, the case law was clear that Plaintiff is obligated to return Defendants' documents, regardless of his pending OSHA claim and regardless of whether he agreed with Defendants' position on confidentiality. *Id.*

Plaintiff's Counsel responded on July 29, 2008. Van Auken Decl. ¶ 52. In his email, Plaintiff's Counsel offered to return Defendants' privileged documents but only if he were supplied with the corresponding Bates numbers (which, of course, he already had). *Id.* In all other respects, however, his position remained the same—he would not sign the proposed

---

[10] In an attempt to facilitate the matter, Defendants' counsel did provide Plaintiff's Counsel with a list of the Bates numbers of the documents to be returned. Van Auken Decl. ¶ 49, Ex. 34. Plaintiff and his Counsel, however, still did not return them.

protective order and would not return Defendants' confidential and proprietary information. On Tuesday, August 5, 2008, and Thursday, August 7, 2008, at the Court's request, counsel discussed these issues again, at length, but failed to reach agreement. *Id.* ¶ 53.

## ARGUMENT

## I.    THE PROPOSED PROTECTIVE ORDER SHOULD BE ENTERED

### A.    A Protective Order Is Necessary To Protect Defendants' Trade Secrets And Other Confidential And Proprietary Information

Rule 26(c)(1) empowers courts to issue orders when, for good cause, they may be necessary to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such orders include those forbidding the disclosure of certain matters (Fed. R. Civ. P. 26(c)(1)(D)), and those "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed R. Civ. P. 26(c)(1)(G).

Protective orders are "commonly entered in litigation involving trade secrets and other confidential commercial information." *Vesta Corset Co., Inc. v. Carmen Foundations, Inc.*, No. 97 CIV. 5139, 1999 WL 13257, at *1-3 (S.D.N.Y. Jan. 13, 1999). S*ee also In re Zyprexia Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (documents "'commonly sealed are those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information and the like'"). Indeed, the "propriety and desirability of protective orders securing the confidentiality of documents containing sensitive commercial information" is "well established." *Id.* at 416.

Good cause plainly exists for entry of a protective order here. In his discovery demands, Plaintiff seeks an extensive amount of confidential, proprietary and trade secret information involving Defendants' products and services as well as their research and development activities. Plaintiff has asked for all information concerning Defendants'

development of proprietary software (Van Auken Decl., Ex. 15 ¶¶ 3, 16; Ex. 16 Interrogatories Nos. 5, 6 and 7) and negotiation of various software licensing agreements with third parties. *Id*., Ex. 15 at ¶¶11, 12, 15, 31, 34 and 35; and Ex. 16 Interrogatories Nos. 3-5. Many of these negotiations were conducted pursuant to non-disclosure agreements which prohibit the disclosure of all information relating to the trade secrets and proprietary business information at issue. *Id*. ¶ 23. The license agreements themselves also contain strict confidentiality and non-disclosure provisions. *Id*.

Plaintiff also has requested extensive information concerning Defendants' customers, sales and marketing activities, including communications with its clients. *See, e.g.,* Van Auken Decl., Ex. 15 at ¶¶ 13, 14, 32, and 33. Because most of Defendants' customers are attorneys who have retained ACI to assist them with litigation-related matters, much of the information sought by Plaintiff in these requests is privileged material typically protected from disclosure. The information Plaintiff seeks regarding other termination and disciplinary actions is also highly sensitive and protected by laws of privacy. *Id*., Ex. 16 at Interrogatory No. 8.

The need for a protective order in this case is all the more compelling because Plaintiff is currently employed by a competitor of ACI. Van Auken Decl. ¶ 5. Courts routinely recognize the need for protective orders in such situations. *See, e.g., Data Capture Solutions-Repair & Remarketing, Inc. v. Symbol Tech., Inc.,* No. 07 Civ. 238, 2008 WL 501410 (D. Conn. Feb. 21, 2008)(protective order entered where potential competitive advantage might be gained from review of documents revealing pricing strategies, price lists, sales projections and forecasts); *Asch/Grossbardt, Inc. v. Asher Jewelry Co., Inc.,* 02 Civ. 5914, 2003 WL 660833 at *3 (S.D.N.Y. Feb. 28, 2003)(disclosure limited to attorneys and experts where risk exists that "party might use the information or disseminate it to others who might employ it to gain a competitive advantage"); *Quotron Sys., Inc. v. Automatic Data Processing, Inc.,* 141 F.R.D. 37,

40 (S.D.N.Y. 1992)(protective order entered to limit competitors' access to proprietary information).  The rationale of these decisions is entirely applicable here.

**B.    The Proposed Protective Order Should Be Entered**

   The protective order proposed by Defendants fairly balances Plaintiff's request for information with Defendants' interest in protecting its trade secrets and other confidential and proprietary information.  The proposed order allows the parties to designate as "Confidential" all material produced during the course of this litigation that involves (1) trade secrets; (2) current, prior or prospective customers; (3) business development, sales and marketing activities; (4) confidential or proprietary research and development information; (5) information that is covered by pre-existing confidentiality or non-disclosure agreements; (6) financial and accounting information; (7) business projections, negotiations and strategies; (8) pricing; and (9) other sensitive information for which steps are customarily taken to limit and/or prevent disclosure.[11] Van Auken Decl., Ex. 27 at ¶¶ 2.1-2.9.

   The proposed protective order, however, is not a blanket order that protects everything produced in this litigation.  Rather, the proposed order does not allow the parties to designate as "Confidential" any information that has been published previously or is otherwise freely available to the general public, unless such publication is unauthorized or results from a violation of the proposed protective order.  Van Auken Decl., Ex. 27, ¶ 5.  It also excludes from protection any information the parties agree or the Court determines should not be designated confidential.  *Id.*  Moreover, if one of the parties disagrees with a designation made by the other, the proposed order gives such party the right to challenge it.  *Id.* at ¶ 13.

---

[11] If the material at issue is especially sensitive, the proposed protective order allows any party to designate such information as "Highly Confidential—Attorney's Eyes Only" so that it may be disclosed only to counsel for the parties, the Court and certain witnesses who agree in writing to protect its confidentiality.  Van Auken Decl., Ex. 27, ¶ 3.2.  This provision is common in protective orders entered in cases, such as this one, involving competitors. *See, e.g., Asch/Grossbardt,* 2003 WL 660833 at *3.

The proposed order also contains an expansive list of persons to whom "Confidential Information" may be disclosed, and the manner in which such information may be disclosed to them. Van Auken Decl., Ex. 27 at ¶¶ 7, 8 and 9. It also allows "Confidential Information" to be disclosed in response to a subpoena, order or request from a government agency or where the disclosure is otherwise required by applicable law, rule or regulation. *Id.* at ¶ 15. In such situations, the proposed protective order requires the person being compelled to produce such "Confidential Information" to notify the party whose "Confidential Information" has been requested and to cooperate in any efforts to ensure that it continues to receive confidential treatment. *Id.*

Protective orders similar to the one proposed here are routinely entered in cases such as this in order to permit examination of a party's valuable trade secrets and other commercial information without exposing such data to the public and the parties' competitors. *In re Zyprexia Injunction*, 474 F. Supp. 2d at 415-16. *See also S.E.C. v. TheStreet.com*, 273 F.3d 222 (2d Cir. 2001); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 782 (3d Cir. 1994). Defendants, thus, respectfully request that their proposed protective order be entered here.

### C. Plaintiff and His Counsel Should Reimburse Defendants For All Reasonable Expenses And Attorney's Fees Incurred In Connection With This Motion

In the event a motion for a protective order is granted, Fed. R. Civ. P. 37(a)(5)(A) provides that the party whose conduct necessitated the motion and/or his attorney shall be required to pay the movant's reasonable expenses and attorney's fees unless:

    (i)    the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

    (ii)    the opposing party's nondisclosure, response or objection was substantially justified; or

    (iii)    other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).  The entry of an order compelling Plaintiff to reimburse Defendants for their costs and attorney's fees is more than warranted here.

> 1.     Defendants Have Attempted In Good Faith To Negotiate A Protective Order Without Court Intervention.

There can be little doubt about Defendants' good faith efforts to negotiate a protective order with the Plaintiff.  These efforts began in early April of this year, when Defendants' counsel made it clear that Defendants intended to seek a protective order.[12]  Van Auken Decl. ¶ 26.  In the weeks that followed, Defendants' counsel reiterated its position on multiple occasions and made it explicit in their written responses to Plaintiff's discovery demands.  *Id.* ¶¶ 26-27.  At no time throughout this period, did Plaintiff's Counsel raise any concerns with this approach.  *Id.*

Notwithstanding Plaintiff's tacit agreement, Defendants have spent the last three months attempting to negotiate the terms of a proposed order with Plaintiff, to no avail.  On June 1, 2008, Defendants' counsel sent Plaintiff's Counsel a draft requesting that it be submitted to the Court that week.  Van Auken Decl. ¶ 28.  Plaintiff's Counsel rejected this idea, claiming he needed more time to review the proposed order with his client.  *Id.* ¶ 28.  With the benefit of hindsight, however, this plainly was a ruse, for three days later, Plaintiff produced more than 1800 pages of Defendants' documents, the vast majority of which would have been covered by the proposed protective order had it been in place.  *Id.* ¶ 29.

In the days that followed, Plaintiff's Counsel did not respond to numerous emails sent to him by Defendants' counsel, encouraging him to discuss the matter.  Van Auken Decl. ¶ 28.  When he finally did, he made excuses and claimed he needed additional information to

---

[12]     As noted above, Defendants also have been attempting, since October 2007, to negotiate a confidentiality agreement that would have covered much of the same information at issue in this litigation.  *See supra,* n. 5.

18

evaluate the proposal, but that information was already spelled out in detail in the proposed protective order. *Id.* ¶ 39. Moreover, even after he advised this Court that he had no substantive problem with the proposed order, Plaintiff's Counsel did an about-face and now insists that the protective order be modified so as to give Plaintiff the unfettered right to turn over Defendants' confidential information to the DOL. *Id.* ¶¶ 47, 50.

> 2.    Plaintiff's Objection To The Proposed Protective Order Is Not
>        Substantially Justified.

Contrary to his assertions, Plaintiff has no obligation to turn over Defendants' privileged, confidential and/or proprietary information to the DOL to help him pursue a whistleblower claim. The court's decision in *JDSUniphase Corp. v. Jennings,* 473 F. Supp. 2d 697 (E.D.Va. 2007), is on point. There, the plaintiff, a former employee of JDSU, had numerous privileged and confidential documents in his possession at the time of his termination, including emails and communications with company counsel regarding various sensitive tax issues. Although the plaintiff had signed a confidentiality agreement requiring him to return those documents upon his termination, he refused to do so claiming that he was entitled to use JDSU's proprietary documents to pursue his Sarbanes-Oxley whistleblower claim. The court, however, rejected the plaintiff's claim, and reasoned:

> By no means can [public] policy fairly be said to authorize disgruntled employees to pilfer a wheelbarrow full of an employer's proprietary documents in violation of their contract merely because it might help them blow the whistle on an employer's violations of law, real or imagined. Endorsing such theft or conversion would effectively invalidate most confidentiality agreements, as employees would feel free to haul away proprietary documents, computers, or hard drives, in contravention of their confidentiality agreements, knowing they could later argue they needed the documents to pursue suits against employers under a variety of statutes protecting employees from retaliation for publicly reporting wrongdoing, such as Sarbanes-Oxley . . . . Indeed, were courts to adopt [plaintiff's] argument, litigation would likely blossom like weeds in spring: for every legitimate whistleblower aided by this rule, many more disgruntled

19

employees would help themselves to company files, computers, disks or hard drives on their way out the door to use for litigation leverage or for mere spite.  Nor would enforcing contracts like the [confidentiality agreement] burden legitimate whistleblower activity, as putative whistleblowers would still be free to consult lawyers, pursue and exhaust administrative remedies, and file their whistleblower claims, in the course of which pertinent documents could be obtained via legal process . . . .  In sum, while it is understandable and appropriate for [a state] to adopt a policy encouraging whistleblowers to report their employers' violations of law, it does not follow from this that [the state] meant by this declaration to invalidate confidentiality agreements and to authorize whistleblowers to steal or convert their employers' proprietary documents.  Succinctly put, Sarbanes-Oxley is not a license to steal documents and break contracts.

473 F. Supp. 2d at 702-03.  *See also Hodgson v. Texaco Inc.,* 440 F.2d 662 (5th Cir. 1971).  The same rationale is entirely applicable here.  Plaintiff's refusal to enter into a protective order unless he be given the right to unfettered use of Defendants' documents is baseless.

3.    The Circumstances At Issue Justify An Award of Expenses.

The circumstances at issue here more than adequately justify an award in Defendants' favor.  Plaintiff's refusal to agree to the proposed protective order plainly appears to be part of a calculated strategy—unrelated to the substantive merit of the claims—to harass, embarrass and annoy Defendants and give Plaintiff some perceived leverage in the litigation and OSHA proceedings.  There simply is no justification for Plaintiff's conduct in this respect.

At the same time, however, Plaintiff's actions have caused Defendants substantial prejudice.  During the past several months, Defendants have gone to great lengths to protect their trade secrets and confidential business information.  In the meantime, discovery has come to a virtual standstill, as Defendants have been essentially barred from producing documents which will expose the falsity of Plaintiff's claims.

Plaintiff's refusal to agree to the proposed protective order also has delayed Defendants' efforts to obtain discovery of third parties.  On May 19, 2008, and again, on

June 26, 2008, Defendants served subpoenas upon one of Plaintiff's former employers, Renew Data Corp., seeking information to rebut Plaintiff's damages claim. Van Auken Decl., Exs. 38 and 39.  Although Renew produced certain information in response to the subpoenas, it has declined to produce other highly confidential information or produce a witness for a Rule 30(b)(6) deposition, unless and until the proposed protective order is in place.  *Id.* ¶ 56.

In order to protect Defendants from further harassment, punish Plaintiff and his Counsel for asserting baseless objections and compensate Defendants for the costs incurred in connection with this Rule 26(c)(1) motion, Defendants respectfully request that this Court issue an order awarding Defendants their costs and attorney's fees.

## II. PLAINTIFF AND HIS COUNSEL SHOULD RETURN DEFENDANTS' DOCUMENTS AND OTHER CONFIDENTIAL INFORMATION

It is well-established that federal courts have the inherent equitable power over their own process "'to prevent against abuse, oppression and injustice.'"  *See Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997)(citing *Gumbel v. Pitkin,* 124 U.S. 131 (1888)); *Int'l Products Corp. v. Koons*, 325 F.2d 403, 407-08 (2d Cir. 1963). *See also Perna v. Elec. Data Sys., Corp.,* 916 F. Supp. 388 (D.N.J. 1995)(courts have inherent powers to protect the sanctity of the judicial process); *Giardina v. Ruth U. Fertel, Inc.*, No.Civ.A. 00-1674, 2001 WL 1628597 (E.D.La. Dec. 17, 2001)("'Federal courts have authority to remedy litigation practices that threaten judicial integrity and the adversary processes'") (citing *Adams v. Shell Oil Co. (In re Shell Oil Refinery*), 143 F.R.D. 105, 108 (E.D.La. 1992)).

This inherent power includes the ability to require a party who has wrongfully obtained documents outside the discovery process to return them to their rightful owner.  *See Lahr v. Fulbright & Jaworski, L.L.P.*, No. 03-94-CV-0981-D, 1995 WL 17816334 at *3 (N.D.Tex. Oct. 25, 1995)(*Lahr I*)(citing *Shell Oil*, 143 F.R.D. at 107-08).  *See also IBP, Inc. v. Bagley (In re IBP Confidential Bus. Documents Litig.)*, 754 F.2d 787 (8th Cir. 1985)(compelling

return of privileged and confidential documents former employee took following his termination); *Marques v. Gabriel, Inc.*, 136 F.R.D. 137, 139 (S.D.Ohio 1991)(requiring return of interview transcripts obtained from stenographer); *Pillsbury, Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279, 1289 (Cal. Ct. App. 1997)(requiring return of documents former employee removed from employer's office without consent). The entry of such an order is not only equitable, it ensures the integrity of the litigation process. *See Lahr I*, 1995 WL 17816334 at *3.

In this case, Plaintiff has produced documents containing Defendants' trade secrets, privileged, confidential and/or proprietary information. Plaintiff obtained this information outside the discovery process and in violation of his contractual and common law obligations. Despite repeated requests, Plaintiff and his Counsel refuse to return such documents to Defendants. An order should be entered compelling them to do so immediately.

A.    **Plaintiff's Acquisition of Defendants' Confidential Information Outside The Discovery Process Was Improper**

Plaintiff concedes that he obtained documents outside the discovery process from several former ACI employees. Van Auken Decl., Ex. 23, Response to Request No. 31. The documents he produced consist of attorney-client privileged and work product communications concerning this very litigation[13] as well as an internal investigation.[14] They also include many

---

[13]    These documents include a copy of the litigation hold notice sent by Defendants' in-house counsel to one of ACI's employees and an email from Defendants' in-house counsel to this same employee, showing a copy to Defendants' outside counsel, Winston & Strawn LLP. The subject line of the email is "Daniel Junk v. Aon Consulting," and it contains the legend: "The information contained in this e-mail, and any attachments thereto, is confidential and may be legally privileged." Van Auken Decl., ¶ 31. These documents are clearly privileged. *See, e.g.*, *Kingsway Fin. Servs., Inc. v. PricewaterhouseCoopers LLP*, No. 03 Civ. 5560, 2006 WL 1520227 at * 2 (S.D.N.Y. Jun. 1, 2006)(document retention notice privileged); *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123 (N.D.Ga. 2007)(litigation hold notice not subject to production).

[14]    These communications also identify the author as Defendants' in-house counsel and contain the same confidentiality legend. Several of the email attachments also say: "Confidential For Distribution By Aon Legal Only." These documents also are clearly privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981)(communications between employees and general counsel relating to internal investigation are privileged); *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D.Pa. 2006)(privilege applies when corporate employee, acting at the direction of his corporate superiors, provides information to in-house counsel); *Carter-Wallace, Inc. v.*

confidential business, proprietary and trade secret communications, such as those concerning ACI's (a) acquisition of licenses to use and sell various computer software programs; (b) development of its own proprietary e-discovery computer software; (c) marketing and sales activities; (d) prices; and (e) clients. *Id.* They also include copies of Defendants' corporate policy manuals and communications regarding Plaintiff's expense reports and the issues which led to Plaintiff's termination.

Moreover, it appears as if these documents did not come into Plaintiff's possession innocently but, rather, through his own, persistent efforts to obtain Defendants' confidential information. These efforts continued over the course of several months, beginning shortly after his termination in late April 2007 and continued through May of this year. Van Auken Decl., ¶ 36. Indeed, in several instances, Plaintiff obtained this information shortly after Defendants requested the return of their property. *Id.*

Courts repeatedly have found improper a litigant's attempts to obtain privileged, confidential and/or proprietary information outside the discovery process, and should do so here. *See, e.g., Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 431 (W.D. Wash. 2002)(plaintiff's procurement of two CDs containing confidential attorney-client, personnel, financial and business information from one of defendant's employees "egregious in the extreme"); *Fayemi*, 174 F.R.D. at 325 (plaintiff's removal of confidential information from his supervisor's office shortly after his termination "clearly wrongful" and "an appropriate subject for sanctions"); *Lahr v. Fulbright & Jaworski, L.L.P.*, No. 3:94-CV-0981-D, 1996 WL 34393321 at *3 (N.D.Tex. July 10, 1996)(*Lahr II*)(employee's taking of personal and privileged documents prepared by her

---

*Hartz Mountain Inds., Inc.*, 553 F. Supp. 45, 50-51 (S.D.N.Y. 1982)(interviews conducted during in-house investigation protected by attorney-client privilege and investigation's factual findings and legal conclusions constitute work-product).

superior during her employment "wrongful"); *Perna*, 916 F. Supp. at 400 (plaintiff's unauthorized viewing and copying of documents that had fallen out of opposing counsel's brief case the "type of scandalous behavior that must not be condoned"); *In re Shell Oil Refinery*, 143 F.R.D. at 108 (E.D.La. 1992)(plaintiff's receipt of confidential documents from one of defendant's employees "inappropriate and contrary to fair play").[15]

The discovery process is not intended to be supplemented by "conversion of an adversary's proprietary information," *Herrera v. The Clipper Group, L.P.*, Nos. 97-CIV-560, 97-CIV-561, 1998 WL 2294993 at *2 (S.D.N.Y. May 6, 1998), or a party's use of self-help measures in an attempt to secure a litigation advantage. *JDSUniphase,* 473 F. Supp. 2d at 704. This proscription applies regardless of whether the information improperly procured is protected by a privilege, reflects confidential, proprietary business communications or is relevant to the litigation. *See Perna,* 916 F. Supp. at 400-01 (the actual content of the documents is irrelevant; it is the unauthorized viewing of the documents and abuse of the discovery process that cannot be condoned); *Lipin,* 84 N.Y.2d at 570 (complaint should be dismissed regardless of whether the documents at issue are actually privileged). As these cases more than amply demonstrate, Plaintiff's acquisition of Defendants' confidential information from third parties outside the discovery process, plainly, was improper.

---

[15]     *See also Knitting Fever, Inc. v. Coats Holding Ltd.*, No. 05CV1065(DRH)(MLO), 2005 WL 3050299 (E.D.N.Y. Nov. 14, 2005)(upholding magistrate's order requiring investigation into plaintiff's receipt of privileged and confidential documents from one of defendant's employees prior to and perhaps during pending litigation); *Lipin v. Bender*, 84 N.Y.2d 562, 563 (1994)(plaintiff's review and copying of privileged and confidential documents left on counsel's table in open court "a breach of the orderly disclosure scheme").

**B.**    **Plaintiff's Conduct Violates His Non-Solicitation and Confidentiality Agreements**

Plaintiff's acquisition, possession and use of Defendants' confidential information also violates the plain and unambiguous terms of his Non-Solicitation and Confidentiality Agreements.  As Plaintiff's Non-Solicitation Agreement clearly states:

Section 3.  **Trade Secrets and Confidential Information.**

(a)   The Employee acknowledges that [ACI'S] and Aon Group's business depend to a significant degree upon the possession of information which is not generally known to others, and that the profitability of the business of [ACI] and Aon Group requires that this information remain proprietary to [ACI] and Aon Group.

(b)   The Employee shall not, except as required in the course of employment by [ACI], disclose or use during or subsequent to the course of employment, any trade secret or confidential or proprietary information relating to the business of [ACI] or Aon Group of which the Employee becomes aware by reason of being employed by [ACI] or to which Employee gains access to during his employment by [ACI] and which has not been publicly disclosed (other than by Employee in breach of this provision).  Such information includes client and customer lists, data, records, computer programs, manuals, processes, methods . . . All records or equipment and other materials relating in any way to any confidential information relating to the clients or to the business of [ACI] or Aon shall be and remain the sole property of [ACI] and Aon Group during and after the end of employment.

(c)   Upon termination of employment, the Employee shall promptly return to [ACI] all materials and all copies or tangible embodiments of materials involving any confidential information in the Employee's possession or control.

Van Auken Decl. Ex. 1B.  Plaintiff's Confidentiality Agreement is in accord:

Unless required by my job or by law, I will not disclose any of this [i]nformation to third parties nor permit any third party access to such [i]nformation.  I also agree that I will not remove any documents from the office or premises of Aon Consulting for any purpose other than for a purpose directly related to the business of Aon Consulting and within the scope of my employment with Aon Consulting . . .

> I understand and agree that all materials and things embodying or reflecting this [i]nformation are the sole property of Aon Consulting and its affiliates.  Upon the termination of my employment with Aon Consulting, I agree to immediately deliver to Aon Consulting all the materials and things embodying any of the Information disclosed to me in the course of my employment with Aon Consulting.  I will not retain any copies or reproductions thereof nor shall I dispose of any such materials and things or copies or reproductions thereof to any third party . . .

> I understand that this Confidentiality Agreement shall survive the termination of my employment of Aon Consulting.

*Id.,* Ex. 1B at 5.

There can be little doubt but that Plaintiff has repeatedly and deliberately violated his Non-Solicitation and Confidentiality Agreements.  First, he failed to return his laptop and retained it for several months before sending it to someone, somewhere, in a manner that virtually guaranteed it could not be traced.  Van Auken Decl. ¶ 9, Ex. 5.  With the help of others, he then procured a large volume of Defendants' trade secrets and other privileged, confidential and proprietary information, read it and shared it with his Counsel who, in turn, has used it to advance Plaintiff's claims in this action.  *Id.* ¶ 34.  When asked to return all of these materials and execute a protective order that would preserve their confidentiality, Plaintiff refused.  *Id.* ¶¶ 38-52.  Plaintiff and his Counsel should be ordered to return all such information at once.[16]

## III.    PLAINTIFF AND HIS COUNSEL SHOULD BE SANCTIONED FOR THEIR GROSSLY IMPROPER AND WRONGFUL CONDUCT

As a corollary of their inherent power to control the litigation process, federal courts also are imbued with the inherent power to sanction parties "'who attempt[ ]to use in litigation material improperly obtained outside the discovery process.'"  *Herrara*, 1998 WL

---

[16]    In addition to his contractual obligations, Plaintiff also has common law duties to protect Defendants' confidential information and trade secrets.  *See, e.g., Paz Sys., Inc. v. The Dakota Group*, 514 F. Supp. 2d 402, 408 (E.D.N.Y. 2007)(common law duty of good faith and fair dealing to employers preventing disclosure to third parties); *Anacomp, Inc. v. Shell Knob Servs., Inc*, No. 93 CIV. 4003 (PKL), 1994 WL 9681 at * 12-13 (S.D.N.Y. Jan. 10, 1994) (noting common law duty of good faith and fair dealing prohibited former employees from taking trade secrets).

229499 at *1, quoting *Fayemi,* 174 F.R.D. at 323. This is especially true in cases where the conduct at issue is "not the product of a momentary lapse of judgment, but of a calculated strategy, carried out over an extended period." *Herrera*, 1998 WL 229499 at *2. Indeed, a court "must be able to sanction a party that seeks to introduce improperly obtained evidence; otherwise the court, by allowing the wrongdoers to utilize the information in the litigation before it, becomes complicit in the misconduct." *Fayemi*, 174 F.R.D. at 324.

### A.    Plaintiff's Conduct Warrants Dismissal of His Claims

Numerous courts have found—in circumstances nearly identical to those at issue here—that an employee's misappropriation of a former employer's privileged, confidential and/or proprietary information for use in litigation merits the ultimate sanction of dismissal. *See, e.g., Jackson*, 211 F.R.D. at 432-33; *Perna*, 916 F. Supp. at 402; *Lipin*, 84 N.Y.2d at 573; *Stephen Slesinger, Inc. v. The Walt Disney Co.*, No. BC 022365, 2004 WL 612818 (Cal. Super. March 29, 2004).[17] The same conclusion is warranted here.

In *Jackson*, the plaintiff, a former employee of Microsoft, sued the company for violations of the Civil Rights Act. During discovery, he produced two CDs containing thousands of emails and other hard copy documents from Microsoft's files that he had obtained from another Microsoft employee. 211 F.R.D. at 425. The documents contained sensitive information concerning Microsoft's trade secrets, proprietary business strategy, attorney-client communications and personnel data regarding other employees. *Id.* at 426. As in the instant case, the top portion of several documents had been removed in order to conceal the identity of the person from whom the documents had been obtained. *Id.* During discovery, the plaintiff

---

[17]    *See also McMunn v. Memorial Sloan-Kettering Cancer Center*, 191 F. Supp. 2d 440, 461 (S.D.N.Y. 2002) (dismissing action where plaintiff impeded discovery and then forced defendant to spend significant amounts proving plaintiff engaged in unfair litigation practices and pattern of misbehavior).

admitted that he had reviewed the documents, shared the contents with others and sent hard copies to his counsel.  Clearly disturbed by the plaintiff's conduct, the court dismissed his complaint.  As the court explained:

> [Plaintiff's] conduct in obtaining (and in some cases altering) this vast quantity of Microsoft's data was egregious in the extreme.  A theft on this scale would be sufficient reason to justify dismissal . . .  Plaintiff's secretive behavior and clear reliance on the stolen documents in the preparation of his case only makes dismissal more appropriate. . . .  'It is well-settled that dismissal is warranted where. . . . a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings:  [C]ourts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'  (citation omitted.)

*Jackson,* 211 F.R.D. at 431-32.  (Citations omitted.)

The court's decision in *Perna* is also compelling.  There, the plaintiff photocopied and read several documents that had fallen out of opposing counsel's briefcase when he left the room. 916 F. Supp. at 392-93.  The court dismissed the plaintiff's claims, explaining:

> [Plaintiff] saw this as an opportunity to gain an advantage in this litigation by obtaining information that he would not have otherwise been entitled. . . .  [His] unauthorized access to the documents was a calculated scheme designed to subvert the litigation process. . . .  Accordingly, dismissal is the only form of discipline that will insure the orderly administration of justice and the integrity of the courts.  It is the only remedy that will punish the perpetration of fraud upon the court.  It is [plaintiff's] conduct which offends the basic notions of fair play that must be sanctioned. . . .  Dismissal of [plaintiff's] personal claim and the award of fees and costs to the defendant are the only sanction that will rectify the wrong and demonstrate that reckless indifference to the rules will not be tolerated.

*Perna,* 916 F. Supp. at 400-01.[18]   *See also Lipin*, 84 N.Y.2d at 573 (dismissing plaintiff's complaint as sanction for copying privileged documents and attempting to use them to extract a

---

[18]     Unlike the instant case, the plaintiffs' attorney, after discovering his client's misdeeds, actually sought an opinion from the New Jersey Supreme Court Advisory Committee on Professional Ethics and ultimately disclosed

settlement; finding dismissal "the only practicable remedy here, [given] the persistence of plaintiff's misconduct"); *Slesinger,* 2004 WL 612818 at *13 (complaint dismissed where plaintiff hired private investigator to gather defendants' privileged and confidential documents and then altered them).

Plaintiff's conduct in this case warrants dismissal.  In complete disregard of his contractual and common law obligations, Plaintiff obtained Defendants' confidential information from third parties outside the discovery process.  He obtained this information willingly, with clear knowledge that he was doing so improperly, and, at least initially, took steps to conceal his sources.  He obviously read the documents and shared them with his Counsel who, in turn, used them to advance Plaintiff's claims.  The privileged, confidential and proprietary information in these documents cannot be purged from Plaintiff's mind—it forms the basis of his entire misguided strategy here.  Given the circumstances, the dismissal of Plaintiff's claims is plainly warranted.

**B.    Alternatively, Plaintiff Should Be Precluded From Relying Upon Any Information He Acquired Outside the Discovery Process**

Defendants alternatively request that the Court issue an order precluding Plaintiff and his Counsel from using in this litigation any of the information they acquired as a result of Plaintiff's misconduct.  Courts, in similar situations, have entered orders precluding the use of information improperly obtained outside the discovery process. *See Carrion v. The City of New York*, No. 01 Civ. 02255, 2002 WL 31093620 (S.D.N.Y. Sept. 18, 2002)(precluding use of improperly obtained privileged information); *Fayemi*, 174 F.R.D. at 326 (preclusion "the proper remedy" when plaintiff removed documents from his employer's offices after his termination);

---

that his client had obtained improper access to the privileged and confidential materials. *Id.* at 393.  Here, however, Plaintiff's Counsel appears to have done nothing of the sort. *See Maldonado v. New Jersey*, 225 F.R.D. 120 (D.N.J. 2004) (disqualifying counsel who failed to notify opposing counsel that his client had obtained clearly identifiable privileged communication outside the discovery process and used such document in conducting the litigation).

*Lahr II*, 1996 WL 34393321 at *3-4 (precluding use of notes improperly taken by defendant's employee and given to plaintiff); *Giardina*, 2001 WL 1628597 (precluding use of privileged document obtained without authorization outside discovery); *In re Shell Oil Refinery*, 143 F.R.D. at 108-09 (precluding use of proprietary documents obtained by employee and given to plaintiff after employee left the firm).

### C.    Plaintiff Should Pay All Of Defendants' Costs and Attorney's Fees Associated With This Motion

At a minimum, Plaintiff and his Counsel should be ordered to reimburse Defendants for the costs and attorney's fees they have incurred attempting, in good faith, to negotiate the return of their trade secrets and other confidential information, without Court intervention, as well as their costs and attorney's fees in connection with this motion. Monetary sanctions have been awarded in similar cases and are clearly justified here. *See Herrera*, 1999 WL 229499 at *3; *Speckman v. Minnesota Mining and Mfg. Co.*, 7 F. Supp. 2d 1030, 1034 (D. Neb. 1997); *Marques*, 136 F.R.D. at 139; *Int'l Bd. of Elec. Workers v. Acme Elec. Co.*, 652 F. Supp. 182, 185 (E.D.Mo. 1985).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court: (1) enter an order pursuant to Fed. R. Civ. P. 26(c)(1) in the form attached hereto; (2) an order pursuant to Fed. R. Civ. P. 37(a)(5)(A) directing Plaintiff to pay all costs and attorney's fees incurred by Defendants in connection with their Rule 26(c)(1) motion; (3) an order, pursuant to the Court's inherent powers, directing the Plaintiff and his Counsel to return all documents and other materials belonging to Defendants that they obtained outside the discovery process; (4) an order, pursuant to the Court's inherent powers, dismissing Plaintiff's Complaint and Reply to Defendants' Counterclaims and directing Plaintiff and his Counsel to reimburse Defendants for

their costs and attorney's fees; and (5) for such other and further relief as this Court deems just and proper.

Respectfully submitted,

WINSTON & STRAWN LLP

By:   _s/ Lori J. Van Auken_____
          Lori J. Van Auken
          Christopher C. Costello
          200 Park Avenue
          New York, New York  10166
          T:  (212) 294-6700
          lvanauken@winston.com

Of Counsel:
Timothy J. Rooney
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
T:  (312) 558-5600
F:  (312) 558-5700